William C. Miranda
CDC# V-63893
CSATF/SP
P.O. Box 5242
Corcoran, CA  93212-5242

In propria persona



FILED

2008 MAR 24  PM 4: 15

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY_____DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**'08 CV 0550 BEN WMc**

William C. Miranda,
            Plaintiff,

            v.

G.J. Giurbino, Warden, et al.,
            Defendants.

Civil Case No. _____

SUPPLEMENTAL BRIEF IN SUPPORT OF
COMPLAINT UNDER THE CIVIL RIGHTS ACT
42 U.S.C. §1983

TO THE HONORABLE MAGISTRATE JUDGE OF THE U.S. DISTRICT COURT, SOUTHERN DISTRICT

OF CALIFORNIA:

     Plaintiff, William C. Miranda, appears before this Court as a state prisoner,

incarcerated at California Substance Abuse Treatment Facility, and State Prison

(CSATF/SP), a California Department of Corrections and Rehabilitation (CDCR)

institution, is untrained in law, indigent, and proceeding without friends or family

to act on his behalf.  Plaintiff submits the following causes of action in

chronological order, and complaint against prison officials in their individual

and official capacities.

(1)

## I. PRELIMINARY STATEMENT

1. Plaintiff alleges that Centinela State Prison's policy, CEN O.P.
#(4)006, which allows SNY (Infra) inmates to be escorted across a main-line yard
is inherently dangerous to the safety of both inmates and staff, and to the security
of the institution.  In particular, plaintiff was threatened with death by fellow
Hispanic inmate gang members (18th Street), on Facility "A" yard.  The policy in
question allowed for Plaintiff to be escorted across this yard, thus exposing him
to an attempt on his life by two assailants.  Even though Plaintiff had warned the
escorting officers this would happen, they chose to ignore the imminent danger,
did not seek an alternate route to their destination, and thus led Plaintiff into
an ambush and attempted murder on his life.


## II. STATEMENT OF THE FACTS

**A. Chronology of events that lead to 'Incident.'**

2. On 04/19/06, while at Centinela State Prison, Plaintiff received death
threats from fellow prison gang members on Facility "A" main-line yard.  Plaintiff
made this know to the prison officials, who in turn placed him in the Administrative
Segregation Unit (ASU) -- also located as (1) of (5) Housing units on Facility "A."
A confidential investigation, by Sergeant Quiroz, ensued to discover the source
and extent of Plaintiff's safety concerns  [see EXHIBIT "A"].

3. On 05/25/06, upon completion of the investigation, it was decided by the
Institutional Classification Committee (ICC), to place Plaintiff in a Sensitive
Needs Yard (SNY), apart from the main-line or general population, because, "...to
release "S" from ASU to the general population at this time would pose a threat
to the safety and security of the institution" [see EXHIBIT "A"].  Thus, Plaintiff
stayed in ASU Housing on Facility "A" until he was transferred to California

Substance Abuse Treatment Facility/State Prison (CSATF/SP), an SNY prison, on
10/26/06.

4. On 09/16/06, Plaintiff received a visit from his family, and was escorted
from ASU Housing through the Facility "A" main-line yard, where he had previously
received death threats and from which yard he sought asylum in ASU. Plaintiff had
notified Officer M. Lopez (Infra) prior to crossing "A" Yard, that he feared for
his life on that yard, and to find another way to the Visiting Room. This officer
scoffed at Plaintiff's concerns. As Plaintiff passed through this yard under escort,
several inmates indicated through hand signs that he would "get stuck" (stabbed) –– one
hand held flat-palmed close to the body, while the other hand points the index finger
at it, motioning a back and forth action, poking the open palm with the extended
finger several times.

5. Approximately one hour later, while being escorted from the Visiting room
back to ASU Housing, Plaintiff passed this observation on to the escorting prison
officials, Correctional Officers M. Lopez, and J. Trujillo. Both officers made
light of the situation, and said not to worry. As Plaintiff was being escorted
through Facility "A" to reach ASU Housing, he was attacked by the same inmates who
had made the death threat earlier that day. These two inmates were subsequently
charged with "Attempted murder' [see EXHIBIT "B," pgs. 8 - 10, 33 - 46].

6. The results of this attack, or 'Incident,' indicate that Plaintiff suffered
numerous puncture and slash cuts, on torso, arm and wrist, by a prison-fashioned
metal shiv [see EXHIBIT "B," pgs. 9, 11, 49, 50].

B. Response of CDCR to Administrative Appeal.

7. On 09/23/07, Plaintiff filed a timely Administrative Appeal through the
highest level, the Director's Level. There is no mention of SNY inmates in their
decision to dismiss Plaintiff's Appeal. Their unswerving response is that the

escorting officers (Lopez and Trujillo) were following, "in compliance with CEN-ASU [Centinela Administrative Segregation Unit] escort policy." The Use of Force Committee [purportedly] reviewed the 'Incident,' and made no recommendations to amend their policy (Infra). At the Second Level Review (SLR), CDCR admits that this policy is set by the Warden, and is responsible as Chief Executive Officer [see EXHIBIT "C," pgs. 9 - 13, and 14 - 15].

### III. CAUSES OF ACTION

#### COUNT I

8. Plaintiff alleges that his constitutional right to be free from cruel and unusual punishment, as guaranteed by the 8th Amendment to the Constitution of the United States, was violated when prison officials failed to protect him from an attempted murder upon his life. From top to bottom, from the Warden to the escorting officers, a conscious disregard for Plaintiff's safety is established in that for over (7) years CDCR has recognized a "special" or distinct category of inmate, SNY, requiring entire prison yards to house them apart from main-line inmates, due to a substantial risk of serious harm if left together on same yard. The prison officials at Centinela State Prison (CSP), and at Sacramento have disregarded this intolerable risk of harm to Plaintiff, which led to a violation of his civil right to be protected from injury.

#### COUNT II

9. Plaintiff further alleges that his constitutional right to substantive and procedural due process, as guaranteed by the 14th Amendment to the Constitution of the United States, was violated when prison officials classified him as SNY, but failed to provide an adequate policy which recognizes the "special" or distinct category of inmate, when transporting him outside the ASU and into a main-line prison

(4)

yard population, where a substantial risk of serious harm had been established for SNY inmates over (7) years earlier.

## COUNT III

**10.** Plaintiff further alleges that his constitutional right to the equal protection clause of the 14th Amendment to the Constitution of the United States, was violated when prison officials classified him as SNY, but neglected to afford the same protection that other SNY inmates receive at designated SNY prison yards. While prison officials at CSP do recognize a "special" or distinct category of inmate requiring separate prison yards, these same prison officials failed to take reasonable protective measures in response to this known risk of assault.

## IV. LIABILITY OF PRISON OFFICIALS

**11.** Each and every name on Complaint is retrieved from the various reports included in: the Institutional Classification Committee (ICC) report [see EXHIBIT "A"]; the CDC-837, Crime/Incident Report (CEN-FAY-06-09-0308) [see EXHIBIT "B"]; and the Inmate Appeal Responses (Log# CEN A-06-00976) [see EXHIBIT "C"]. All defendants named below, acting under color of law, were employed by the CDCR, at Centinela State Prison (CSP), residence unknown, are being sued in both their individual and official capacities as follows:

**A. For setting the defective policy, CEN #(4)006:**

**12.** While CDCR, statewide and for over (7) years, has recognized the "special" or distinct needs of SNY inmates, the warden at CSP disregarded CDCR's assessment of substantial risk of serious harm to SNY inmates, thus failed to revise this particular policy accordingly. Further, this failure caused a lack of training for Staff in ASU handling SNY transports between main-line yards:

- G.J. Giurbino,* Warden.

(5)

**B. For propagating the policy:**

### 1. Institutional Classification Committee (ICC):

13.  This Committee classified Plaintiff as SNY pursuant to some type of guideline which identifies a real threat to the, "safety and security of the institution," then neglected to be aware of CEN O.P. #(4)006, that it is inherently dangerous to both staff and Plaintiff, while being escorted through a hostile environment – the very yard where his enemies resided, origin of death threats, and from which yard he sought asylum:

- G. Giurbino,* Warden, Chairperson       - P. Johnson, C&PR

- S. Valenzuela, CC-II, Recorder          - D. Capellino, Associate Warden (A)

- S. Swift, LPT                            - S. Davis, ASU Lieutenant

- J. Reyes, Correctional Officer, IGI.  [see EXHIBIT "A"]

**C. For actively concurring with said policy:**

### 1. Escorting Staff:

14.  Since both officers were assigned to ASU, they should have reasonably been aware of Plaintiff's SNY status for the previous (5) months he was housed in ASU. Thus, these officers failed to acknowledge SNY status of Plaintiff, that he had sworn enemies on facility "A" Yard, and failed to respond to Plaintiff's pleas for protection on separate occasions: once before being escorted to the Visiting Room, and again before being escorted back to ASU Housing:

- J. Trujillo, Correctional Officer       - M. Lopez, Correctional Officer.

[see EXHIBIT "B," pgs. 7 – 8]

### 2. Facility "A" Observation Tower Officer:

15.  According to CEN O.P. #(4)006, "Prior to the departure of an escort from ASU, the facility "A" Yard Observation Post...will be informed via interinstitutional radio or telephone...Staff must remain alert to potential violence during the

(6)

escorts..." [emphasis added]  This officer reports in the CDC-837 Report that he

first became aware of the 'Incident' when he heard over the radio, "...to put the

yard down." [1]    Either **(a)** he ignored the mandated warning of an escort in progress,

which would have him armed with a long-barrel firearm at the ready, and keeping

eye contact with the escort party from start to finish, or **(b)** he was never notified

per their own policy [see EXHIBITS "B" pg. 17; and "C" pg. 13]:

- G. Vasquez, Correctional Officer, Facility "A" Observation Tower.

### 3. Facility "A" S & E:

**16.** According to CEN O.P. #(4)006, "Prior to the departure of an escort from

ASU...the Facility "A" Yard Officer will be informed via inter-institutional radio

or telephone....Staff must remain alert to potential violence during the escorts..."

[emphasis added].  This Officer reports in the CDC-837 Report that, "...While inside

the Law Library, I heard, 'Get down!'"  Thereafter, he ran outside only to see

assailants running away from the completed assault on Plaintiff.  Either **(a)** he

ignored the mandated warning of an escort, which would have him assisting in the

escort, or at the very least, keeping eye contact with the escort party from start

---

[1] This radio transmission was for the Observation Tower Officer to act!  This
officer has access to the P.A. system for the Yard, which he eventually used to
"put the yard down."  (see next paragraph, where the Yard Officer testifies hearing
this order over the P.A. system while he was inside the Law Library)  This request
would not have been necessary, had this officer been vigilant to the escort in
progress, per their own policy.  Had this officer been at his alerted post, from
his vantage point on the tower, he would have seen the assailants approaching, and
would have announced over the P.A. system, "Get down, Get down!" instead of receiving
pleas for help from his fellow officers under attack.  Escorting Officer Trujillo
reports that his exact words were, "Alpha 10, put the yard down." (Alpha 10 is code
for the Observation Tower Officer)  [see EXHIBIT "B" pg. 22].

to finish, or **(b)** he was never notified per their own policy [see EXHIBITS "B" pgs. 15, 16; and "C" pg. 13]:

- D. Sanchez, Correctional Officer, Facility "A" S & E [2/].

### 4. Facility "A" Yard Officer #3:

17. According to CEN O.P. #(4)006, "Prior to the departure of an escort from ASU... the Facility "A" Yard Officer will be informed via inter-institutional radio or telephone....Staff must remain alert to potential violence during the escorts...." [emphasis added]. This Officer reports in the CDC-837 Report that, "...While performing my duties as "A" Yard #3, I responded to the yard alarm and saw I/M Leon, F-27377, who was later identified, running across the yard from "A" Voc. area to the front of 'A-3'...." Thereafter, the only "protection" this Officer provided, was in escorting, "...Inmate Leon to the MTA office to have a 7219 done on I/M Leon by MTA Beltran. I then escorted I/M Leon to A5 ASU." Either **(a)** he ignored the mandated warning of an escort, which would have him assisting in the escort, or at the very least, keeping eye contact with the escort party from start to finish, or **(b)** he was never notified per their own policy [see EXHIBITS "B" pgs. 26, 27; and "C" pg. 13]:

18. It is significant to note that while Sergeant C. Horne, answers the First level Administrative Appeal by stating that both the, "Yard Observation Tower [and] Yard Staff," were notified about an ASU escort adding, "...I would definitely consider that protecting you." [see EXHIBIT "C" pg. 2], the evidence above indicates that only (3) officers responded, "to an alarm" –– after the fact! These officers,

---

[2/] "S &E " is Search & Escort. By definition and post assignment, he is responsible for assisting in any escort – especially when ASU inmates traverse the main-line yard under escort.

according to CEN O.P. #(4)006, were to be at a heightened alert of vigilance, either observing or assisting with the escort in progress. Instead, by their own testimony, there is absolutely no evidence that these officers were even minutely aware of an escort in progress!

19. Further, it is also significant to note that only (3) Yard Staff Officers reported knowledge of this 'Incident.' On "A" Yard, there are (4) main-line housing units, with capacities of (196) inmates each, totaling (784) inmates, and including another (150+) living in the Gym, brings this yard's capacity to over (900) inmates. Based on information and belief, there must be more than (3) Yard Staff Officers assigned, who should have been aware of this escort, and who's reports are missing. There are (9) officers who submitted reports in the CDC-837, Crime/Incident Report, but only (3) of these officers were actually assigned to the prison yard!

20. Also, not one report from these (9) officers mentions an "escort in progress." Virtually every report was of a response after the fact, to a radio message or alarm calling for assistance. It appears that nobody was even aware that an ASU escort was in progress. It's easy to see why Plaintiff would feel that prison officials had a part in his assault. After notifying both escort officers several times of an impending assault on himself, they proceeded to lead him towards an ambush, not even giving advance warning of an "escort in progress." The officers stepped aside, allowed the assault to proceed, then gave chase afterwards.

### 5. Facility "A" Yard Officers:

21. While only (3) yard officers reported their knowledge of this 'Incident,' Plaintiff has reason to believe that an unknown number of other yard officers equally failed to respond. Either (a) they ignored the mandated warning of an escort, which would have them assisting in the escort, or at the very least, keeping eye contact with the escort party from start to finish, or (b) they were never notified per

(9)

their own policy [see EXHIBITS "B" pgs. 26, 27; and "C" pg. 13]. Whichever is true, they, too, failed to protect Plaintiff from an attempted murder on his life:

- unknown number of John Does (includes all Yard Staff, and S & E, assigned to work Facility "A" on 09/16/06).

### 6. Supervisors:

**22.** The Supervisors, similarly, failed to acknowledge the substantial risk of serious harm to Plaintiff, an SNY inmate, in allowing him to cut across a main-line yard from which he had received death threats, as confirmed by the ICC. Plaintiff was thus placed in ASU to be protected from inmates on Facility "A" Yard, while awaiting transfer to an SNY prison yard because of safety concerns. However, these supervisors made a conscious choice to disregard this danger upon his life, a danger assessed as credible by a state-wide mandate and the ICC. They also failed to advise or train the escort officers in responding to imminent threats made by main-line inmates to SNY inmates under their supervision:

- H.A. Mendez, ASU Sergeant       - B. Clark, ASU Sergeant

- C. Horne,* ASU Sergeant         - G.N. Granish,* ASU Lieutenant

- K. Thompson, Lieutenant, Watch Commander - M. Sanders,* Captain, Facility "A"

- V.M. Almager,* Associate Warden   - D. Paramo,* Associate Warden

- D.C. Johnson, ASU Sergeant  [see EXHIBIT "B"].

**D. For reviewing this 'Incident' and not identifying inherent danger to SNY inmates:**

**23.** There were three levels of administrative review. Except for the final level of review, each reviewer had more than one opportunity to identify the inherent danger of the policy which allowed Petitioner to be attacked; and also had opportunity to discover what went wrong. They chose to summarily deny that the policy in question is defective, and that there was nothing wrong with the way prison guards operated on date of 'Incident.' The reviewing procedures denied Plaintiff

(10)

due process, in violation of both state and federal constitutions [see EXHIBIT "C"
pgs. 2, 9 - 13, 14 - 15]:

### 1. First Level Administrative Reviewers (FLR):

- C. Horne,* ASU Sergeant         - D. Paramo,* Associate Warden

- D.C. Johnson, ASU Sergeant.

### 2. Second Level Reviewers (SLR):

- D. Paramo,* Associate Warden       - V.M. Almager,* Warden (A).

### 3. Director's Level Administrative Reviewers (DLR):

- P. Enriquez, Appeals Coordinator      N. Grannis, Chief, Administrative Reviewer

(N. Grannis, is employed by CDCR, but not by CSP, and works out of the CDCR offices
in Sacramento)

### 4. Use of Force Committee:

24. At Exhibit "B." the first (5) pages appear to be the Use of Force Assessment,
referred to by the SLR, and DLR [see EXHIBIT "C" pgs. 9 - 13, and 14 - 15].  This
is a report prepared to "thoroughly" review this 'Incident,' and make appropriate
findings and recommendations (Ibid., at pgs. 13 & 14).  The following discrepancies
exist: **(a)** All (3) Committee members agree that, "Staff's actions prior to the use
of force were in compliance with policy, procedures and training." But, as shown
above, there is doubt whether the Tower or Yard Officers received warning of an
ASU escort, based on their own testimony and belated response to the 'Incident'
(Supra, at ¶¶15 - 20);  **(b)** There was no proper, "assessment of the threat before
utilizing force," because the escort officers chose to ignore the threat when
Plaintiff notified them twice, prior to the attack on himself (Supra, at ¶¶3 - 5);
**(c)** Mr. Granish reports on the fifth page that, "The injuries to Inmate HERNANDEZ
were due to Use of Force [i.e., baton strikes]." But, as shown above, this is
inconsistent with evidence of a "fall" [see EXHIBIT "B" pgs. 8, 9, 11, 18, 47].

Further, this Committee is liable in that they did not discover why the officers posted at the Observation Tower, and S & E Yard, did <u>not</u> respond effectively.  Had the Observation Tower Officer been following procedure, he would have seen the assailants approaching Plaintiff, <u>and his own officers</u>, with a metal shiv in his hand!  This Officer is the one who should have sounded the alarm, "Yard down!"  Similarly, had the S & E Yard Officer followed escort procedures, he would have accompanied the escort party also, and <u>not</u> be sitting in the Law Library!  (Note: the Law Library is the common room for officers to eat their lunch and to relax, and the 'Incident' occurred at 1305 hours [see EXHIBIT "B" pg. 8]):

- D. Paramo,* Associate Warden          - M.C. Sanders,* Captain

- G.N. Granish,* Lieutenant


                                        Respectfully submitted,


2-22-08                                 _Miranda William_
Date                                    William C. Miranda
                                        Plaintiff pro se


---

* All names with asterisks in this Supplemental Brief had several opportunities to reivew this 'Incident,' the policy in question, and to make an informed conclusion that CEN O.P. #(4)006, is inherently dangerous when applied to SNY inmates.  As such, they are twice as culpable and liable for Plaintiff's injuries.  D. Paramo had (4) opportunities to review.

William C. Miranda
CDC# V-63893
CSATF/SP
P.O. Box 5242
Corcoran, CA  93212-5242

In propria persona

## UNITED STATES DISTRICT COURT

### SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| William C. Miranda,<br>          Plaintiff | Civil Case No. _____ |
| **v.** | |
| G.J. Giurbino, Warden, et al.,<br>          Defendants. | VERIFICATION |

Plaintiff, William C. Miranda, presents the Supplemental Brief in Support of his federal claims against Defendants.

Pursuant to 28 U.S.C. §1746, I declare and verify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

2-22-08
Date executed

William C. Miranda
Plaintiff/Declarant

# INDEX TO EXHIBITS

### EXHIBIT "A"

CDC-128G, (1) Page.

Results of Institutional Classification Committee hearing of 10/25/06, which resulted in classifying Plaintiff as Special Needs Yard (SNY) inmate.

### EXHIBIT "B"

CDC-837, Crime/Incident Report, (50) pages.

Pages 1 - 5:     Use of Force Committee's review of 'Incident.'

Pages 6 - 50:   Includes cover page, summary of 'Incident,' numerous reports by prison officials, including the CDC-7219's, Medical Reports of all three inmates involved, and photograph of weapon used in attack on Plaintiff.

### EXHIBIT "C"

CDC-602, Inmate/Parolee Appeal Form, (15) pages.

Pages 1 - 8:    Plaintiff's allegations for administrative appeal.

Page 2:         First Level Reviewer's Answer.

Pages 9 - 12:   Second Level Reviewer's Answer.

Pages 13 - 15:  Director's Level Reviewer's Answer.



# EXHIBIT A



STATE OF CALIFORNIA DEPARTMENT OF CORRECTIONS
CDC-128G (Rev. 12/91)

**NO.** V63893                     **NAME** MIRANDA                  C6-166L
Custody: MAX    PS: 40    WG/PG: D1D  EFF 4/19/06    Assignment: ASU
RelDate: 10/30/19  EPRD    Reclass: 7/6/06
Action:

**SUBSEQUENT/VIO REVIEW: RETAIN ASU PENDING TRANSFER, REFER TO CSR RX TX PVSP III (SNY)
ALTERNATE SATF III (SNY). CONTINUE MAX CUSTODY AND WG/PG D1D EFF. 4/19/06, CONTINUE
SMALL MANAGEMENT YARD AND D/C COMPATIBLE HOUSING. CASE-BY-CASE REVIEW CONDUCTED
FOR THE ADMINISTRATIVE DETERMINANT OF VIO AND AFFIX. REFER TO CSR FOR VIO REVIEW AND
TO AFFIX "P" CODE, CCI S. MCCLAIN, STAFF ASSISTANT (A).**

Inmate Miranda, appeared before CEN ASU ICC on this date for a Subsequent/VIO Review. "S" was placed in
ASU on 4/19/06 from Facility A for Self-Expressed Enemy Concerns. An investigation was assigned to Sgt.
Richard's and then reassigned to Sgt. Quiroz. The investigation was completed on 5/12/06 (note confidential
memo dated 5/12/06 located in C-file). "S" stated he has problems with the Surenos and has indicated a desire
to disassociate from them. He has requested to be considered for sensitive needs placement. "S" indicated
during the committee that he cannot read nor write; therefore, CCI S. McClain was present as Staff Assistant.
After careful consideration and review of all available documents, committee elects to retain "S" in ASU pending
transfer, refer to the CSR RX TX PVSP III (SNY), Alt SATF III (SNY), continue MAX Custody and WG/PG D1D
effective 4/19/06. "S" stated he currently has a cellmate and is not experiencing any problems; therefore,
committee elects to continue Small Management Yard and D/C Compatible housing. This transfer is considered
non-adverse; "S" will be eligible for Close A Custody and WG/PG A2B effective 4/8/05 for review by receiving
Institution. Additionally, committee notes "S" instant offense of Robbery 2nd requires a case-by-case review for
the Administrative Determinant of VIO. The circumstances per the POR are as follows: The victim indicated that
the "S" went up to him and stated, "Give me cigarettes", the victim replied that he did not have any and that is
when "S" produced a large black semi-automatic handgun. He pointed it at the victim and stated, "Give me your
money, I am not playing". "S" repeated again, "I am not playing, give me your money". The co-defendant then
approached the victim from the side and pressed a sharp object up against the right side of his rib cage. The
victim never got a good look at the object, believed it was a knife or a sharpened screwdriver. The co-defendant
presses the object into his rib hard enough to make him bleed a little. "S" stated again, "I am not playing give me
your money, I am coming from jail, I have got 15 years in jail", the co-defendant moved in front of the victim and
both he and "S" put their weapons underneath their shirts so that passer byes could not see them. The victim
finally stated, "Take my money". He gave his wallet to the defendant who opened it and took out all the cash and
then gave the wallet back. He took $90 in cash and all of his silver. He also took the victim's cell phone and a
14-karat gold ring. "S" stated, "don't say anything because I will be coming back". "S" and the co-defendant then
walked away. Based upon the circumstances of the offense noting that there was no hesitation by the co-
defendant to cause injury as noted by the placement of the object in the victim's side causing him to bleed.
Committee elects to affix the administrative determinant for VIO. Due to "S" use of force and fear to take the
property. Committee noted there was no hesitation to cause injury and believe "S" would present a threat to the
public if placed in an unsecured environment. Committee elects to refer to the CSR for a review and to affix "P"
Code. Case factors are noted per CDC 128-G dated 4/8/05 with the following updates: "S" is 24 years old.
Disciplinary history is clear. TBAC is 22 per CDC 128-C dated 5/12/05 and has been designated as NSF per
128C2 dated 1/10/05. It is the belief of this committee that to release "S" from ASU to the general population at
this time would pose a threat to the safety and security of the institution. "S" stated that he had no mental health
or medical concerns. "S" participated in committee, stated he understood committee's actions, was in agreement
with those actions and had no further questions at this time. "S" was advised of his right and method to appeal
this committee's decision.


_____        _____        _____
G. GIURBINO, WARDEN                    P. JOHNSON, C&PR                     (4) R. Valenzuela
CHAIRPERSON                                                                 S. VALENZUELA, CCII
                                                                            RECORDER

**COMMITTEE MEMBERS:** D. CAPELLINO, AW (A); S. SWIFT, LPT; LT. S. DAVIS, ASU; C/O REYES, IGI

**DATE:** 5/25/06 (SV/nq)        **Classification:** UCC        **FAC** A        **INST:** CEN  Pg. 1
52506anq





# EXHIBIT B

**Manager's Review-Second Level**
**Use of Force Incidents**

| INCIDENT SITE/LOCATION | INCIDENT DATE | **INCIDENT LOG #** |
|---|---|---|
| FACILITY 'A' RECREATIONAL YARD | 09/16/06 | **CEN-FAY-06-09-0308** |
| DESCRIPTION OF THE INCIDENT | | DATE REPORTED |
| ATTEMPTED MURDER | | 09/16/06 |

The following review is to be conducted by the Associate Warden, Assistant Deputy Director-P&CSD, Assistant Director LEIU or OIA of the affected area. Unless otherwise specified, any questions checked "No," require an explanation in the Comments section of this review.

| *(Check all that apply).* | Yes | No |
|---|---|---|
| 1. Based on the information received, I concur with the Unit/Facility Manager's Review? | ☒ | ☐ |
| 2. Does the CDC 837 package meet expected standards for overall quality (i.e., clear, concise and answers who, what, where, how and if known, why)? | ☒ | ☐ |
| 3. Were staff's actions prior to the use of force in compliance with policy, procedures and training? | ☒ | ☐ |
| 4. Were staff's actions during the use of force in compliance with policy, procedures and training? | ☒ | ☐ |
| 5. Were staff's actions following the use of force in compliance with policy, procedure and training? | ☒ | ☐ |
| 6. Does it appear that any follow-up action is necessary to correct policy, procedure or training violations? | ☐ | ☒ |
|    • If yes describe the actions taken by you to correct the apparent policy, procedural or training violations in the Comments section. Check all that apply. | | |
|    ☐ Return to_____(specify)for clarification/additional information Date returned to area_____ | | |
|    ☐ Other. Explain in Comments section. | | |
| 7. Was there a threat present? If so, did staff properly assess the threat before utilizing force? | ☒ | ☐ |
| 8. Were all appropriate steps taken to utilize the lowest level of force necessary to overcome the resistance encountered? | ☒ | ☐ |

Comments: *(Use additional pages if necessary).*

NOTE: Both assailants refused staff's orders to stop and get down. Staff utilized the necessary amount of force to quell the incident and to prevent injury of the escorted inmate. Staff's actions prior, during and following the use of force was in compliance.

| Reviewer's Name (Printed Name and Signature) | Title | Date |
|---|---|---|
| D. PARAMO | AW-COMPLEX I | 09/26/06 |

B

Pg. 1

**Manager's Review – First Level**
**Use of Force Incidents**

| INCIDENT SITE/LOCATION | INCIDENT DATE | INCIDENT LOG # |
|---|---|---|
| | 9/16/06 | CEN-FAY-06-09-0308 |
| FACILITY "A" | | DATE REPORTED |
| DESCRIPTION OF THE INCIDENT | | 9/16/06 |
| Attempted Murder | | |

The following review is to be conducted by the Unit/Facility Manager of the affected area as a means to ensure that staff's actions and non-deadly use of force were in compliance with Department/Institution policy, procedures and training. Unless otherwise specified, any questions checked "No" require an explanation in the Comments section of this review.

| *(Check all that apply).* | Yes | No |
|---|---|---|
| 1.  Based on the information received, I concur with the Incident Commander's Review? | ☒ | ☐ |
| 2.  Was this a calculated use of force?  If no, go on to #3. | ☐ | ☒ |
|    a.  Were staff's actions prior to the application of force within policy, training and procedures? (e.g., prior approval, presence of a 2nd line supervisor and manager, afforded a cool-down period, applicable medical consultation, videotape of the incident, documentation requirements, etc.) | ☐ | ☐ |
|    b.  Did you review the videotape of the extraction (i.e., calculated Use of Force)? | ☐ | ☐ |
| 3.  Was a videotaped interview conducted with the affected inmate due to one of the following conditions: | ☐ | ☒ |
|    ○  Significant Injury. | | |
|    ○  Blow to the head. | | |
|    ○  Allegation of unnecessary or excessive force. | ☐ | ☒ |
|    a.  Did the Incident Commander conduct a tape recorded interview with the effected inmate(s)? | ☐ | ☒ |
|    b.  Did you review this videotape? | ☒ | ☐ |
| 4.  Was all applicable documentation completed and received in a timely manner? | ☒ | ☐ |
|    •  Requests for additional information or clarification completed and received in a timely manner? | ☒ | ☐ |
|    •  Did reports received appear consistent in the need for and description of force used? | ☒ | ☐ |
| 5.  Does the CDC 837 package meet expected standards for overall quality (i.e., clear, concise and answers who, what, where, how and if known, why)? | ☒ | ☐ |
| 6.  Were staff's actions prior to the use of force in compliance with policy, procedures and training? | ☒ | ☐ |
| 7.  Were staff's actions during the use of force in compliance with policy, procedures and training? | ☒ | ☐ |
| 8.  Were staff's actions following the use of force in compliance with policy, procedure and training? | ☒ | ☐ |

| Reviewer's Name (Printed Name and Signature) | Title | Date |
|---|---|---|
| M. C. SANDERS | CAPTAIN | 9/19/06 |

B
Pg. 2

**Manager's Review - First Level Co...**
**Use of Force Incidents**

| | | ☐ | ☒ |
|---|---|---|---|
| 9. | Does it appear that any follow-up action is necessary to correct policy, procedure or training violations? | | |
| | • If yes, describe the actions taken by you to correct the apparent policy, procedural or training violations in the Comments section. | | |
| | ☐ Return to _____ (specify) for clarification/additional information.  Date returned to area: _____ | | |
| | ☐ Other.  Explain in Comments section | ☒ | ☐ |
| 10. | Did the Incident Commander's review properly capture and describe the need for force? | ☒ | ☐ |
| 11. | Were all reasonable steps taken to minimize the need for/level of force used? | | |

Comments: *(Use additional pages if necessary)*

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

| Reviewer's Name (Printed Name and Signature) | Title | Date |
|---|---|---|
| M. C. SANDERS | CAPTAIN | 9/19/06 |


Pg. 3

| INCIDENT SITE/LOCATION | INCIDENT DATE | INCIDENT LOG # |
|---|---|---|
| | 9-16-06 | CEN-FAY-06-09-0308 |
| Facility A, Recreation Yard | | DATE REPORTED |
| DESCRIPTION OF THE INCIDENT | | 9/16/06 |
| Attempt Murder | | |

This check-off list is to be completed by the Incident Commander or second-line supervisor or higher in preparing the package for administrative review and as a means to ensure that the Use of Force Policy and its related procedures/training were adhered to. Unless otherwise specified, any questions checked "No," require an explanation in the Comments section of this review.

*(Check all that apply.)*

1. Identify basis for the application of force?

   ☐ Overcome resistance.
   ☒ Subdue an attacker.    ☒ Effect custody.
   ☒ Gain Compliance with a *lawful* order. Describe the lawful order:  During the Attempted Murder of inmate MIRANDA, V63893, inmate HERNANDEZ, V83124 refused to obey the order to "Get Down" and stop his aggressions towards MIRANDA.

2. Identify the Force option(s) utilized?    ☐ Physical strength and holds.    ☒ Handheld batons.
   ☐ Less-lethal weapons. *Model and # rounds fired:*_____    ☐ Firearms. *Model and rounds # fired:*_____
   ☐ Chemical agents and/or other immobilization devices. *Specify type:*_____

|  |  | Yes | No |
|---|---|---|---|
| 3. | Identify the manner in which force was applied?<br>☐ Calculated. Go to #4. If not calculated, then proceed to #7 to determine if staff's actions prior, during, and following the use of force were in compliance with policy, procedures and training. |  |  |
| 4. | Prior Manager/Administrative-Officer of-the-Day (AOD) approval obtained and AOD present? | ☐ | ☐ |
| a. | Inmate afforded a cooling-off period? | ☐ | ☐ |
| b. | Was the inmate designated Seriously Mentally Disordered and housed in a departmental hospital, infirmary, Enhanced Outpatient Program Units, Mental Health Crisis Bed or Psychiatric Services Unit? If not housed in such units go on to #4c. | ☐ | ☐ |
| • | Were the results of health care's consultation and the basis for the health care staff's final method of extraction documented on the CDC 837 and in the Unit Health Record on a CDC 128B? | ☐ | ☐ |
| c. | If not housed in a departmental hospital, infirmary, Enhanced Outpatient Program Units, Mental Health Crisis Bed or Psychiatric Services Unit, did time and circumstances allow for a health care consultation? If yes, Name/Title of Clinician: | ☐ | ☐ |
| • | Did custody staff authorize the use of OC? If not, what was the alternate method of extraction as determined by custody staff? Specify: | ☐ | ☐ |
| 5. | Tactical Team assembled and briefed? | ☐ | ☐ |
| 6. | Incident videotape recorded? | ☐ | ☒ |
| 7. | If chemical agents used, were decontamination procedures adhered to? | ☒ | ☐ |
| 8. | Inmate(s) medically evaluated prior to re-housing? | | |

| Incident Commander's (Printed Name and Signature) | Assignment | Date |
|---|---|---|
| G.N. GRANISH | Lieutenant | 9/16/06 |

Incident Community's Review Summary
## Use of Force Incidents

| | Yes | No |
|---|---|---|
| 9. If one of the following conditions exists, a videotape recorded interview with the effected inmate(s) is required.  Was an interview conducted?  If yes, check the applicable condition(s).  If an interview was not conducted, explain in Comments section.<br>☐ Significant Injury<br>☐ Blow to the head<br>☐ Allegation of unnecessary or excessive force. | ☐ | ☒ |
| 10. Have you received applicable reports (e.g., CDC 837 Part C, CDC 7219, CDC 115, CDC 128B, CDC 114D etc.), from all identified staff involved in this incident prior to the end of his/her shift? | ☒ | ☐ |
| 11. Based on the information/documentation received, staff's actions prior to the use of force were in compliance with policy, procedures and training? | ☒ | ☐ |
| 12. Based on the information/documentation received, staff's actions during the use of force were in compliance with policy, procedures and training? | ☒ | ☐ |
| 13. Based on the information/documentation received, staff's actions following the use of force in compliance with policy, procedures and training? | ☒ | ☐ |

1. Describe inmate injuries due to force used.

The injuries to inmate HERNANDEZ were due to Use of Force (Baton strikes)

Why was force needed?  Describe the threat that required force to be used.

Inmate HERNANDEZ would not comply with a direct order to "Get Down" while holding an inmate manufactured weapon while first stabbing an inmate, then running away from staff while still holding the weapon.

2.  What steps were taken to minimize the need for/level of force used?

Direct orders were given before the Use of Force was used. After the initial Use of Force was applied, the Baton strike., the involved inmate still maintained control of the weapon, numerous orders were still given with negative results, only after being struck three separate times, HERNANDEZ stopped his actions and assumed a prone position on the ground.

Comments:  *(Use additional pages if necessary)*

There are no comments to be placed in this section of this report..

| Reviewer's Name (Printed Name and Signature) | Title | Da |
|---|---|---|
| G.N. GRANISH | Lieutenant | 9  6/06 |

Incident Title _Attempted Murder_ Log Number: CEN-FA- 06 - 09 - 0808

Date Incident Occurred: 9/16/06  Time: 1305  Location: A Yard

CDC-115 Log Number(s):

| | | | | | |
|---|---|---|---|---|---|
| FA 06 09 032 | I/M | Hernandez | CDC# | ✓ 83124 | Suspect/Victim |
| FA 06 09 033 | I/M | Leon | CDC# | T-27377 | Suspect/Victim |
| N/A | I/M | Miranda | CDC# | V83893 | Suspect/Victim |
| | I/M | | CDC# | | I/m manufactured |

| | | | | |
|---|---|---|---|---|
| Shots Fired? | Yes/**No** | How Many? N/A | Type of Weapon? | |
| Inmates Mirandize? | **Yes**/No | Evidence Marked/Processed? | **Yes**/No  Placed in Locker # 7 | |
| Voltox Tested? | **Yes**/No | Lab Analysis? Yes/**No** | Date Lab Report Received: N/A | |

HAND CARRY    837 A/B CHECK OFF/SIGN-OFF LIST (DUE WITHIN 24 HOURS)

Prepared By: _Granich_        Date: 9/16/06    Time: 1305
        Correctional Lieutenant
Reviewed By: _M. Simmons_     Date: 9/18/06    Time: 0725
        Correctional /Facility Captain
Reviewed By: _D. Paramo_      Date: 9/20/06    Time: 1300
        Associate Warden/AOD

To: AOD/Watch Commander:          Date: _____    Time: _____
Faxed By: Watch Commander: T.D.   Date: 9/16/06   Time: 1430
[ ] Copy to Warden              Date: _____    Time: _____
[ ] Copy to CDW                 Date: _____    Time: _____
[ ] Copy to ISU                 Date: _____    Time: _____
[ ] Original 837 to Division Head   Date: _____    Time: _____
[ ] Original Use of Force Critique   Date: _____    Time: _____
    Form to Warden

HAND CARRY    INCIDENT PA[...]
[ ] Original Draft of 837 A/B        _ Use of Force        5pgs       [ ] Copy of NOU
[ ] All Supplemental Reports                                          [ ] Photo/Facsimile
[ ] Copy of Signed 837 A/B          _ 837 - CI's           25 pgs     [ ] Copy of Mod Pgm Schdle
[ ] Original Miranda Rights          NOUO                 + p8        [ ] CDC Form 1030's
[ ] Copies of CDC 115's issued                            19 ps       [ ] Incident Site Diagram
[ ] Original Use of Firearms                                          [ ] Sobriety Report
[ ] Copies of Voltox Results        _ NO I.E, Reports      50        Report (Visitor/Non-Inmate)
                                    _ No "RVR Hearing"
[ ] Copy to AW's OT for Distribution    on I/M HERNANDEZ            Time:_____
[ ] Returned for Corrections:                                      Time:_____
[ ] Back to AW's OT:                                               Time:_____
[ ] Original to ISU                                                Time:_____
[ ] Copies Distributed:                                            Time:_____

INCIDENT PACKAGE MUST BE FAXED WITHIN 24 HOURS

INCIDENT PACKAGE MUST BE COMPLETED AND ROUTED TO ISU WITHIN 72 HOURS

B
B - 6

STATE OF CALIFORNIA — Case 3:09-cv-00550-BEN-WMC    Document 1-2    Filed 09/29/2008    Page 24 of 84

# CRIME / INCIDENT REPORT
## PART A - COVER SHEET
CDC 837-A (Rev. 09/03)

PAGE 1 OF ___

| INCIDENT LOG NUMBER | INCIDENT DATE | INCIDENT TIME |
|---|---|---|
| CEN-FAY-06-09-0305 | 09/16/06 | 13:05 |

| INSTITUTION | FACILITY | FACILITY LEVEL | INCIDENT SITE | LOCATION | USE OF FORCE |
|---|---|---|---|---|---|
| CEN | A | ☐ I  ☐ II  ☒ III  ☐ IV | A YARD | BY YARD MISTERS AREA | ☒ YES  ☐ NO |

☐ ASU  ☐ SHU  ☐ PSU  ☐ PHU
☐ SNY  ☒ GP  ☐ CTC  ☐ RC
SEG. YARD:  ☐ CC  ☐ WA  ☐ RM

☒ CCR  ☐ PC  ☐ N/A
NUMBER/SUBSECTION: 3005 (C)

**SPECIFIC CRIME / INCIDENT**
Attempted Murder

| D. A. REFERRAL ELIGIBLE | SERT ACTIVATED | NMT ACTIVATED | MUTUAL AID REQUEST | PIO/AA NOTIFIED |
|---|---|---|---|---|
| ☒ YES ☐ NO | ☐ YES ☒ NO | ☐ YES ☒ NO | ☐ YES ☒ NO | ☐ YES ☒ NO |

## RELATED INFORMATION (CHECK ALL THAT APPLY)

| DEATH | CAUSE OF DEATH | ASSAULT / BATTERY | TYPE OF ASSAULT / BATTERY |
|---|---|---|---|
| ☐ INMATE | ☐ ACCIDENTAL ☐ SUICIDE | ☐ ON INMATE | ☐ BEATING ☐ SPEARING |
| ☐ STAFF | ☐ EXECUTION ☐ NATURAL | ☐ ON STAFF | ☐ GASSING ☒ STABBING |
| ☐ VISITOR | ☐ HOMICIDE | ☐ ON VISITOR | ☐ POISONING ☐ STRANGLING |
| ☐ OTHER: | ☐ OVERDOSE | ☐ OTHER: | ☐ SEXUAL ☐ OTHER: |
| | ☐ UNKNOWN | | ☐ SHOOTING |
| ☒ N/A | ☒ N/A | ☐ N/A | ☐ SLASHING ☐ N/A |

### SERIOUS INJURY

| | INMATE WEAPONS | | SHOTS FIRED / TYPE WEAPON / FORCE |
|---|---|---|---|
| ☒ INMATE | ☐ CHEMICAL SUBSTANCE | **TYPE:** | **WEAPON:** WARNING # EFFECT # **TYPE:** **NO:** |
| ☐ STAFF | ☐ CLUB / BLUDGEON | ☐ COMMERCIAL WEAPON | ☐ MINI 14 — BATON ROUND: WOOD |
| ☐ VISITOR | ☐ EXPLOSIVE | | ☐ 38 CAL. RUBBER |
| ☐ OTHER: | ☐ FIREARM | ☒ INMATE MANUFACTURED WEAPON | ☐ 9MM FOAM |
| | ☐ HANDS / FEET | | ☐ SHOTGUN STINGER: |
| ☐ N/A | ☐ KNIFE | | **LAUNCHER:** .32 (A) |
| | ☐ SAP/SLUNG SHOT | | ☐ 37MM .60 (B) |
| | ☐ PROJECTILE | | ☐ L8 EXACT IMPACT |
| | | | ☐ 40MM CTS 4557 |

### ESCAPES

| | | | |
|---|---|---|---|
| | ☐ SPEAR | | ☐ 40MM MULTI XM 1006 |
| ☐ W / FORCE | ☐ SLASHING INSTRUMENT | | ☐ HFWRS CHEMICAL: |
| ☐ W/O FORCE | ☐ STABBING INSTRUMENT | | **FORCE:** ☐ OC |
| ☐ ATTEMPTED | ☐ OTHER: | | ☐ SIDE-HANDLE BATON ☐ CN |
| | ☐ BODILY FLUID ☐ OTHER FLUID: | | ☐ PHYSICAL FORCE ☐ CS |
| ☒ N/A | ☐ UNKNOWN LIQUID | | ☐ X10 ☐ N/A |
| | ☐ N/A | | ☒ OTHER: MONADNOCK BATON (MEB) |

| CONTROLLED SUBSTANCE / WEIGHT | PROGRAM STATUS | EXCEPTIONAL ACTIVITY |
|---|---|---|
| ☐ POSITIVE UA  ☐ CONTROLLED MEDS | ☒ MODIFIED PROGRAM | ☐ EMPLOYEE JOB ACTION ☐ WEATHER |
| ☐ WITH PACKAGING  ☐ WITHOUT PACKAGING | ☐ LOCKDOWN | ☐ ENVIRONMENTAL HAZARD ☐ SEARCH WARRANT |
| PRELIMINARY    LAB | ☐ STATE OF EMERGENCY | ☐ EXPLOSION ☐ ARREST |
| ☐ AMPHETAMINE | | ☐ FIRE ☐ OTHER: |
| ☐ BARBITURATES | IF YES, LIST AFFECTED PROGRAMS: | ☐ GANG/DISRUPTIVE GROUP |
| ☐ COCAINE | ALL HISPANIC INMATES PLACED ON MODIFIED PROGRAM | ☐ HOSTAGE EXTRACTION: |
| ☐ CODEINE | | ☐ INMATE STRIKE ☐ CONTROLLED |
| ☐ HEROIN | | ☐ MAJOR DISTURBANCE ☐ IMMEDIATE |
| ☐ MARIJUANA/THC | | ☐ MAJOR POWER OUTAGE |
| ☐ METHAMPHETAMINE | | ☐ NATURAL DISASTER |
| ☐ MORPHINE | | ☐ PUBLIC DEMONSTRATION |
| ☐ OTHER: | ☐ N/A | ☒ N/A |
| ☒ N/A | | ☐ SPECIAL INTEREST I/M |

**BRIEF DESCRIPTION OF INCIDENT (ONE OR TWO SENTENCES):**
On Saturday, September 16, 2006, at approximately 1305 hours, two Hispanic inmates attacked inmate MIRANDA, V63893, while being escorted from A Visiting to ASU. The two inmates, HERNANDEZ, V83124, A3-001 and LEON, F27377, A3-016, Attempted to Murder inmate MIRANDA by stabbing him numerous times.

COMPLETE SYNOPSIS / SUMMARY ON PART A1

| NAME OF REPORTING STAFF (PRINT/TYPE) | TITLE | ID # | BADGE # |
|---|---|---|---|
| G.N. GRANISH | LIEUTENANT | 1712010 | 45809 |

| SIGNATURE OF REPORTING STAFF | PHONE EXT. (INCIDENT SITE) | DATE |
|---|---|---|
| | 6103 | 09/16/06 |

| NAME OF WARDEN / AOD (PRINT/SIGN) | TITLE |
|---|---|
| V.M. ALMAGER | WARDEN (A) |

B  9/18/0_

CRIME / INCIDENT REPORT
PART A1 - SUPPLEMENT
CDC 837-A1 (09/03)

| | | INCIDENT LOG NUMBER |
|---|---|---|
| | | CEN-FAY-06-09-0308 |
| PAGE ___ OF ___ | | |

| INSTITUTION | FACILITY | | DATE OF INCIDENT | TIME OF INCIDENT |
|---|---|---|---|---|
| CEN | A | | 09/16/06 | 13:05 |

TYPE OF INFORMATION:

☒ SYNOPSIS/SUMMARY OF INCIDENT  ☐ SUPPLEMENTAL INFORMATION  ☐ AMENDED INFORMATION  ☐ CLOSURE REPORT

**NARRATIVE:**

On Saturday, September 16, 2006, at approximately 1305 hours, two Hispanic inmates attacked inmate MIRANDA, V63893, while being escorted from A Visiting to ASU. The two inmates, HERNANDEZ, V83124, A3-001 and LEON, F27377, A3-016, Attempted to Murder inmate MIRANDA by stabbing him numerous times.

The details of the incident are as follows:

On Saturday, September 16, 2006, at approximately 1305 hours, inmate MIRANDA, V63893, A5-136L, was being escorted from A Visiting to A5 Administrative Segregation (ASU). It should be noted that all ASU inmates are only allotted a one-hour time slot for non-contact visits, MIRANDA was escorted to A Visiting for a 1200 hours visit during AM Yard (the inmates knew what time MIRANDA went to his visit and knew when he would be returning). At about the same time (1305 hours), all of the general population housing units on Facility A were releasing general population inmates to the Chapel. Two Hispanic inmates, HERNANDEZ, V83124, A3-001 and LEON, F27377, A3-016, (assigned to the Emergency Beds-E Beds) left Housing Unit A3 along with the other inmates that were released for Chapel. As the two inmates left the building, MIRANDA was being escorted by Officer J. Trujillo, A5 S&E, and Officer M. Lopez, A5 Infirmary Escort Officer, from A Visiting on the roadway in front of the A Culinary area. As both officers escorted MIRANDA passed the yard misters toward the Volleyball area, Officer Trujillo heard what appeared to be someone running behind him. Officer Trujillo turned around and observed HERNANDEZ running towards the three of them. Officer Trujillo immediately extended his Monadnock Expandable Baton (MEB) and ordered HERNANDEZ to "Get Down!" Officer Lopez heard Officer Trujillo ordering HERANADEZ to "Get Down" and turned around towards HERNANDEZ. HERNANDEZ ran around both officers to reach MIRANDA. Upon reaching MIRANDA, he started swinging what appeared to be an inmate manufactured weapon in his right hand towards MIRANDA's head and torso area. Officer Trujillo utilized his MEB, striking HERNANDEZ in his upper right arm with a forward strike of his baton, while giving orders to "Get Down" with negative results. The point of aim was the right hand of HERNANDEZ, where he was holding the weapon. Officer Trujillo again ordered HERNANDEZ to "Get Down" with negative results. At that point, HERNANDEZ started running from the area in a direction towards the east end of the soccer field goal with the weapon still in his hand. Officer Trujillo utilized his radio and ordered the "Yard Down!" Hearing this transmission, Officer Vasquez, A Observation Officer, utilized the Public Address System to order all inmates on the yard to "Get Down!" After hearing the orders to "Get Down," all inmates on the yard assumed an emergency down position on the yard, except HERNANDEZ and one other inmate, LEON, F27377, A3-001U. As Officer Trujillo ran and caught up with HERNANDEZ, still ordering him to "Get Down," Officer Trujillo utilized a forward spin of his MEB and struck HERNANDEZ on his right thigh area with negative results, he was still carrying the weapon. Officer Trujillo, again, utilized a forward spin of his MEB and struck HERNANDEZ on his right thigh area. Still trying to run, HERNANDEZ fell to the ground, throwing the weapon to another inmate, later identified as LEON, F27377, A3-001U. As HERNANDEZ fell to the ground with Officer Trujillo, Officer Trujillo stuck his right knee on the ground. LEON grabbed the weapon, ran with the weapon towards buildings A3/A4, threw it towards the roof top of building A3. As this was happening, Officer Trujillo placed HERNANDEZ in handcuffs while watching LEON's actions. Officer Trujillo then conducted an clothed body search of HERNANDEZ with negative results. Officer Lopez stayed with MIRANDA during this occurrence. As LEON was running towards buildings A3/A4, Officer D. Sanchez, A S&E, and Officer O. Martin, A Yard #3 Officer, observed LEON trailed him giving him numerous orders to "Get Down" with negative results. As LEON reached the roadway between Housing Units A3/A4, Officer M. Townsend, A5 Control Officer, and Office J. Vega, A4 Control Officer, observed LEON throw an object over the fence between both buildings. After throwing the object, LEON assumed a prone position on the roadway in front of Building 3. Officer Sanchez placed handcuffs on LEON and conducted a clothed body search with negative results. As both inmates were placed in handcuffs, MIRANDA was placed on the Emergency Medical

☒ CHECK IF NARRATIVE IS CONTINUED ON ADDITIONAL A1

| NAME OF REPORTING STAFF (PRINT/TYPE) | TITLE | ID # | BADGE # |
|---|---|---|---|
| G.N. GRANISH | LIEUTENANT | 1712010 | 45809 |

| SIGNATURE OF REPORTING STAFF | | PHONE EXT. (INCIDENT SITE) | DATE |
|---|---|---|---|
| | | 6102 | 09/16/06 |

| NAME OF WARDEN / AOD (PRINT/SIGN) | TITLE | | DATE |
|---|---|---|---|
| V.M. ALMAGER | WARDEN (A) | | |

# CRIME / INCIDENT REPORT
## PART A1 - SUPPLEMENT

CDC 837-A1 (09/03)

| | | | INCIDENT LOG NUMBER |
|---|---|---|---|
| | PAGE ____ OF ____ | | CEN-FA1-06-09-0308 |

| INSTITUTION | FACILITY | DATE OF INCIDENT | TIME OF INCIDENT |
|---|---|---|---|
| CEN | A | 09/16/06 | 13:05 |

TYPE OF INFORMATION:

[X] SYNOPSIS/SUMMARY OF INCIDENT  [ ] SUPPLEMENTAL INFORMATION  [ ] AMENDED INFORMATION  [ ] CLOSURE REPORT

**NARRATIVE:**

Cart and taken to the Correctional Treatment Center (CTC) for further evaluation by Registered Nurse M. Barron. LEON was escorted HERNANDEZ to the Facility A Program Office. Medical Technical Assistant (MTA) J. Beltran completed a medical turned over to Officer Martin who escorted him to the Facility A Clinic and placed in the Clinic Waiting Area. Officer Trujillo examination, documentation (CDC 7219) on each inmate and released each inmate back to custody for appropriate housing. HERNANDEZ and LEON received their paperwork for ASU placement and were subsequently escorted to C6 ASU. After his release from CTC, MIRANDA was escorted to his assigned cell in A5 ASU. As both inmates were being escorted to ASU, Sergeant H. Mendez, A5 ASU Sergeant, ordered Officer T. Hatch, A5 ASU Officer #1, to look for a possible weapon between Housing Units A3/A4. Officer Hatch found an inmate manufactured weapon, the weapon was about six (6) inches in length, about one quarter inch in diameter, made of round metal stock, sharpened to a point at one end with a handle at the other end of the weapon fashioned by torn bed sheets. The weapon was placed into evidence in Central Control, locker #7.

MTA J. Beltran, A MTA, medically evaluated inmate HERNANDEZ and a Medical Report of Injury or Unusual Occurrence (CDC 7219) was completed and noted the following: "Injuries noted, abrasion to R knee area" Inmate was subsequently cleared for housing placement.

MTA J. Beltran, A MTA, medically evaluated inmate MIRANDA and a Medical Report of Injury or Unusual Occurrence (CDC 7219) was completed and noted the following: "Injuries noted, cut/laceration/ slash to R wrist, R bicep area, Puncture to R lower back area" Inmate was subsequently cleared for housing placement.

MTA J. Beltran, A MTA, medically evaluated inmate LEON and a Medical Report of Injury or Unusual Occurrence (CDC 7219) was completed and noted the following: "No injuries noted." Inmate was subsequently cleared for housing placement.

Officer Hatch found an inmate manufactured weapon, the weapon was about six (6) inches in length, about one quarter inch in diameter, made of round metal stock, sharpened to a point at one end with a handle at the other end of the weapon fashioned by torn bed sheets. The weapon was placed into evidence in Central Control, locker #7.

Inmate HERNANDEZ was issued a Rules Violation Report, CDC-115 log # FA-06-09-032 for violation of California Code of Regulations, Title 15, Section 3005 (c), Force and Violence, specifically, "Attempted Murder."

Inmate LEON was issued a Rules Violation Report, CDC-115 log # FA-06-09-033 for violation of California Code of Regulations, Title 15, Section 3005 (c), Force and Violence, specifically, "Attempted Murder."

Inmate MIRANDA will not be issued a Rules Violation Report, as he was deemed to be the victim of this assault.

Officer Martin read HERNANDEZ and LEON their Rights Pursuant to the Miranda Decision.

None of the involved inmates made any allegations of Excessive or Unnecessary Use of Force by staff.

This incident will be referred to the Imperial County District Attorneys Office for felony prosecution.

This incident occurred non-during business hours. The following Administrative Staff were notified: Lt. K. Thompson, Watch Commander, D. Paramo, Administrative Officer of the Day (Associate Warden, Complex I). Facility A was placed on Modified Program.

[X] CHECK IF NARRATIVE IS CONTINUED ON ADDITIONAL A1

| NAME OF REPORTING STAFF (PRINT/TYPE) | TITLE | ID # | BADGE # |
|---|---|---|---|
| G.N. GRANISH | LIEUTENANT | 1712010 | 45809 |

| SIGNATURE OF REPORTING STAFF | PHONE EXT. (INCIDENT SITE) | DATE |
|---|---|---|
| | 6102 | 09/16/06 |

| NAME OF WARDEN / AOD (PRINT/SIGN) | TITLE | |
|---|---|---|
| V.M. ALMAGER | WARDEN (A) | |

# CRIME / INCIDENT REPORT
## PART A1 - SUPPLEMENT
CDC 837-A1 (09/03)

| | | INCIDENT LOG NUMBER |
|---|---|---|
| | | CEN-FAY-06-09-0308 |

PAGE _____ OF _____

| INSTITUTION | FACILITY | DATE OF INCIDENT | TIME OF INCIDENT |
|---|---|---|---|
| CEN | A | 09/16/06 | 13:05 |

TYPE OF INFORMATION:
☒ SYNOPSIS/SUMMARY OF INCIDENT  ☐ SUPPLEMENTAL INFORMATION  ☐ AMENDED INFORMATION  ☐ CLOSURE REPORT

**NARRATIVE:**

CCPOA President M. Kullander was notified of the injuries to Officer Trujillo.

There were no shots fired, no injuries to staff or other inmates, nor damage to State Property.

You will be apprised of any further developments as they occur via supplemental reports.

☐ CHECK IF NARRATIVE IS CONTINUED ON ADDITIONAL A1

| NAME OF REPORTING STAFF (PRINT/TYPE) | TITLE | ID # | BADGE # |
|---|---|---|---|
| G.N. GRANISH | LIEUTENANT | 1712010 | 45809 |

| SIGNATURE OF REPORTING STAFF | | PHONE EXT. (INCIDENT SITE) | DATE |
|---|---|---|---|
| | | 6102 | 09/16/06 |

| NAME OF WARDEN / AOD (PRINT/SIGN) | | TITLE | DATE |
|---|---|---|---|
| V.M. ALMAGER | | WARDEN (A) | |

B
B10

STATE OF CALIFORNIA
# CRIME / INCIDENT REPORT
## PART B1 - INMATE
CDC 837-B1 (09/03)

| INSTITUTION | FACILITY | INCIDENT LOG NUMBER |
|---|---|---|
| CENTINELA | A | CEN-FAY-06-09-0308 |

### INMATE (ENTIRE SHEET)

| NAME: LAST | FIRST | MI | CDC # | SEX | ETHNICITY | FBI # | CII # |
|---|---|---|---|---|---|---|---|
| MIRANDA | WILLIAM | C | V63893 | M | MEX | | |

| CHECK ONE | CLASS SCORE | PV RTC | DATE REC'D BY CDC | DATE REC'D BY INST | ANTICIPATED RELEASE DATE | EXTRACTION | DOB | HOUSING ASSIGN. |
|---|---|---|---|---|---|---|---|---|
| [X] VICTIM | 40 | [ ] YES [X] NO | | | | [ ] YES [X] NO | 3 / 14 / 62 | A5-136L |
| [ ] SUSPECT | | | | | COMMITMENT OFFENSE | | | COUNTY OF COMMITMENT |
| [ ] WITNESS | [ ] CCCMS [ ] EOP [ ] DPP [ ] DMH [ ] MHCB [ ] DDP [X] N/A | | | | N/A | | | LA |

PRISON GANG / DISRUPTIVE GROUP

DESCRIPTION OF INJURIES: Injuries noted, cut/laceration/ slash to R wrist, R bicep area, Puncture to R lower back area
[ ] VALIDATED [ ] ASSOCIATED [X] N/A

[ ] N/A
[ ] HOSPITALIZED [X] TREATED & RELEASED [ ] REFUSED TREATMENT [ ] N/A    NAME/LOCATION OF HOSP./TREAT. FACILITY    FACILITY A CLINIC    [ ] N/A
[ ] DECEASED DATE: _____

| NAME: LAST | FIRST | MI | CDC # | SEX | ETHNICITY | FBI # | CII # |
|---|---|---|---|---|---|---|---|
| HERNANDEZ | HOMER | - | V83124 | M | HIS | | |

| CHECK ONE | CLASS SCORE | PV RTC | DATE REC'D BY CDC | DATE REC'D BY INST | ANTICIPATED RELEASE DATE | EXTRACTION | DOB | HOUSING ASSIGN. |
|---|---|---|---|---|---|---|---|---|
| [ ] VICTIM | 44 | [ ] YES [X] NO | | | | [ ] YES [X] NO | 1 / 22 / 85 | A3-016U |
| [X] SUSPECT | | | | | COMMITMENT OFFENSE | | | COUNTY OF COMMITMENT |
| [ ] WITNESS | [ ] CCCMS [ ] EOP [ ] DPP [ ] DMH [ ] MHCB [ ] DDP [X] N/A | | | | N/A | | | LA |

PRISON GANG / DISRUPTIVE GROUP    18TH Street

DESCRIPTION OF INJURIES: Injuries noted, abrasion to R knee area
[ ] VALIDATED [X] ASSOCIATED [ ] N/A

[ ] N/A
[ ] HOSPITALIZED [X] TREATED & RELEASED [ ] REFUSED TREATMENT [ ] N/A    NAME/LOCATION OF HOSP./TREAT. FACILITY    FACILITY A CLINIC    [ ] N/A
[ ] DECEASED DATE: _____

| NAME: LAST | FIRST | MI | CDC # | SEX | ETHNICITY | FBI # | CII # |
|---|---|---|---|---|---|---|---|
| LEON | RAUL | - | F27377 | M | MEX | | |

| CHECK ONE | CLASS SCORE | PV RTC | DATE REC'D BY CDC | DATE REC'D BY INST | ANTICIPATED RELEASE DATE | EXTRACTION | DOB | HOUSING ASSIGN. |
|---|---|---|---|---|---|---|---|---|
| [X] VICTIM | 43 | [ ] YES [X] NO | | | | [ ] YES [X] NO | 12 / 07 / 84 | A3-001L |
| [ ] SUSPECT | | | | | COMMITMENT OFFENSE | | | COUNTY OF COMMITMENT |
| [ ] WITNESS | [ ] CCCMS [ ] EOP [ ] DPP [ ] DMH [ ] MHCB [ ] DDP [X] N/A | | | | N/A | | | LA |

PRISON GANG / DISRUPTIVE GROUP    18TH Street

DESCRIPTION OF INJURIES: No Injuries noted on CDC 7219
[ ] VALIDATED [X] ASSOCIATED [ ] N/A

[ ] N/A
[ ] HOSPITALIZED [X] TREATED & RELEASED [ ] REFUSED TREATMENT [ ] N/A    NAME/LOCATION OF HOSP./TREAT. FACILITY    FACILITY A CLINIC    [ ] N/A
[ ] DECEASED DATE: _____

| NAME: LAST | FIRST | MI | CDC # | SEX | ETHNICITY | FBI # | CII # |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

| CHECK ONE | CLASS SCORE | PV RTC | DATE REC'D BY CDC | DATE REC'D BY INST | ANTICIPATED RELEASE DATE | EXTRACTION | DOB | HOUSING ASSIGN. |
|---|---|---|---|---|---|---|---|---|
| [ ] VICTIM | | [ ] YES [ ] NO | / / | / / | / / | [ ] YES [ ] NO | / / | |
| [ ] SUSPECT | | | | | COMMITMENT OFFENSE | | | COUNTY OF COMMITMENT |
| [ ] WITNESS | [ ] CCCMS [ ] EOP [ ] DPP [ ] DMH [ ] MHCB [ ] DDP [ ] N/A | | | | | | | |

PRISON GANG / DISRUPTIVE GROUP

DESCRIPTION OF INJURIES:
[ ] VALIDATED [ ] ASSOCIATED [ ] N/A

[ ] N/A
[ ] HOSPITALIZED [ ] TREATED & RELEASED [ ] REFUSED TREATMENT [ ] N/A    NAME/LOCATION OF HOSP./TREAT. FACILITY    [ ] N/A
[ ] DECEASED DATE: _____

B
Pg 11

STATE OF CALIFORNIA
**CRIME / INCIDENT REPORT**
**PART C- STAFF REPORT**
CDC 837-C (Rev. 09/03)

DEPARTMENT OF CORRECTIONS

PAGE _/_ OF _/_

INCIDENT LOG NUMBER
*CEN FAY-06-09-03*

| NAME: LAST *MENDEZ* | FIRST | MI *P* | DATE OF INCIDENT *9-16-06* | TIME OF INCIDENT *1305* |
|---|---|---|---|---|

| POST # | POSITION *AS ADSEG Overflow SERGEANT* | YEARS OF SERVICE *13* YR. MO. | DATE OF REPORT *9-17-06* | LOCATION OF INCIDENT *A YARD* |
|---|---|---|---|---|

| RDO's *M/T* | DUTY HOURS *0600 1400* | DESCRIPTION OF CRIME / INCIDENT *ATTEMPTED MURDER* | CCR SECTION / RULE *3005 C* | ☐ N/A |
|---|---|---|---|---|

| YOUR ROLE | WITNESSES (PREFACE S-STAFF, V-VISITOR, O-OTHER) | INMATES (PREFACE S-SUSPECT, V-VICTIM, W-WITNESS) |
|---|---|---|
| ☐ PRIMARY | (S) T. HAIGH A.S.A.S.U #1 | |
| ☒ RESPONDER | | |
| ☐ WITNESS | | |
| ☐ VICTIM | | |
| ☐ CAMERA | | |

| FORCE USED BY YOU | WEAPONS USED BY YOU | | SHOTS FIRED BY YOU | | | |
|---|---|---|---|---|---|---|
| | | | | TYPE: | NO: | NO: |
| ☐ WEAPON | ☐ MINI-14 | CHEM. TYPE: | 37 MM | | | 9 MM |
| ☐ PHYSICAL | ☐ 9 MM | ☐ OC | L8 | | | 38 CAL |
| ☒ NONE | ☐ 38 CAL | ☐ CN | 40 MM | | | MINI-14 |
| FORCE OBSERVED BY YOU | ☐ SHOTGUN | ☐ CS | 40 MULTI | | ☒ N/A | |
| ☐ WEAPON | ☐ 37 MM ☐ L8 | ☐ OTHER: | SHOTGUN | | | |
| ☐ PHYSICAL | ☐ 40 MM ☐ 40 MULTI | ☒ N/A | | | | |
| ☒ NONE | ☐ HFWRS ☐ BATON | | | | | |

| EVIDENCE COLLECTED BY YOU | EVIDENCE DESCRIPTION | EVIDENCE DISPOSITION | BIO HAZARD | PPE |
|---|---|---|---|---|
| ☐ YES | | | ☐ YES | ☐ YES |
| ☒ NO | ☒ N/A | ☒ N/A | ☒ NO | ☒ NO |

| REPORTING STAFF INJURED | DESCRIPTION OF INJURY | LOCATION TREATED (HOSPITAL / CLINIC) | FLUID EXPOSURE | SCIF 3301 / 3067 COMPLETED |
|---|---|---|---|---|
| ☐ YES | | | ☐ BODILY ☒ N/A | ☐ YES |
| ☒ NO | ☒ N/A | ☒ N/A | ☐ UNKNOWN ☐ OTHER: | ☒ NO |

NARRATIVE: ON 9-16-06 AT APPROXIMATELY 1305
hours I heard over the state issue radio a
trasmission from (AREA 5) requesting that
a staff member go to the location between
Building A3 AND A4 to recover an
unknown contraband item that was throwN
by an inmate into that location. I
(immediately instructed (correctional) Off. T. H
Posh(A.S.A.S.U C/O #1) to go between building A3, A4
to try to locate the contraband.

☐ CHECK IF NARRATIVE IS CONTINUED ON PART C1

| SIGNATURE OF REPORTING STAFF | TITLE *ADSEG Overflow SERGeant* | BADGE # *47546* | ID # *171539* | DATE *9-17-06* |
|---|---|---|---|---|
| NAME AND TITLE OF REVIEWER (PRINT / SIGNATURE) | DATE RECEIVED | APPROVED ☐YES ☐NO | CLARIFICATION NEEDED ☐ YES ☐ NO | DATE |

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

**CRIME / INCIDENT REPORT**
**PART C- STAFF REPORT**
CDC 837-C (Rev. 09/03)

PAGE 1 OF 2

INCIDENT LOG NUMBER
CEN-FAY-06-09-0308

| NAME: LAST Hatch | FIRST ▓▓▓▓ | MI L | DATE OF INCIDENT 9-16-06 | TIME OF INCIDENT 1305 |
|---|---|---|---|---|

| POST # 2402 | POSITION A5 ASU C/O #1 | YEARS OF SERVICE 7 YR. 5 MO. | DATE OF REPORT 9-16-06 | LOCATION OF INCIDENT A-YARD |
|---|---|---|---|---|

| RDO's W/TH | DUTY HOURS 0600-1400 | DESCRIPTION OF CRIME / INCIDENT Attempted murder | CCR SECTION / RULE 3005 C  ☐ N/A |
|---|---|---|---|

| YOUR ROLE | WITNESSES (PREFACE V-STAFF, V-VISITOR, O-OTHER) | INMATES (PREFACE S-SUSPECT, V-VICTIM, W-WITNESS) |
|---|---|---|
| ☐ PRIMARY | Hatch (s) | Miranda (V-63893) (V) |
| ☒ RESPONDER | | Hernandez (V-83124) (s) |
| ☐ WITNESS | | Leon (F-27377) (s) |
| ☐ VICTIM | | |
| ☐ CAMERA | | |

**FORCE USED BY YOU**

WEAPONS USED BY YOU

SHOTS FIRED BY YOU

| | | | TYPE: | NO: | | NO: |
|---|---|---|---|---|---|---|
| ☐ WEAPON | ☐ MINI-14 | CHEM. TYPE: | 37 MM | | 9 MM | |
| ☐ PHYSICAL | ☐ 9 MM | ☐ OC | L8 | | 38 CAL | |
| ☒ NONE | ☐ 38 CAL | ☐ CN | 40 MM | | MINI-14 | |
| | ☐ SHOTGUN | ☐ CS | 40 MULTI | | | |
| **FORCE OBSERVED BY YOU** | ☐ 37 MM  ☐ L8 | ☐ OTHER: | 40 MULTI | ☒ N/A | | |
| ☐ WEAPON | ☐ 40 MM  ☐ 40 MULTI | ☒ N/A | SHOTGUN | | | |
| ☐ PHYSICAL | ☐ HFWRS  ☐ BATON | | | | | |
| ☒ NONE | | | | | | |

| EVIDENCE COLLECTED BY YOU | EVIDENCE DESCRIPTION | EVIDENCE DISPOSITION | BIO HAZARD | PPE |
|---|---|---|---|---|
| ☒ YES  ☐ NO | inmate manufactured weapon  ☐ N/A | # 7 ☐ N/A | ☐ YES  ☒ NO | ☐ YES  ☒ NO |

| REPORTING STAFF INJURED | DESCRIPTION OF INJURY | LOCATION TREATED (HOSPITAL / CLINIC) | FLUID EXPOSURE | SCIF 3301 / 3067 COMPLETED |
|---|---|---|---|---|
| ☐ YES  ☒ NO | ☒ N/A | ☒ N/A | ☐ BODILY  ☒ N/A  ☐ UNKNOWN  ☐ OTHER: | ☐ YES  ☐ NO |

**NARRATIVE:**

On September 16, 2006 at approximately 1305 hours while performing my duties A5 Floor Officer two I heard a personal alarm on A-yard. Over radio it was announced that a weapon was thrown over the fence between building 3 and 4. I was instructed by my Sgt Mendez to go look behind those buildings. After searching between the buildings I found and retrieved a inmate manufactured weapon. The weapon was between building #3 and #4 next to the curb Just past the generators. I took photos 13

☐ CHECK IF NARRATIVE IS CONTINUED ON PART C1

| SIGNATURE OF REPORTING STAFF | TITLE C/O | BADGE # 59775 | ID # 171451 | DATE 9-16-06 |
|---|---|---|---|---|
| NAME AND TITLE OF REVIEWER (PRINT / SIGNATURE) | DATE RECEIVED 9/16/06 | APPROVED ☐ YES ☐ NO | CLARIFICATION NEEDED ☐ YES ☐ NO | DATE 9/16/06 |

DEPARTMENT OF CORRECTIONS

STATE OF CALIFORNIA
**CRIME / INCIDENT REPORT**
**PART C1- SUPPLEMENT**
CDC 837-C1 (Rev. 09/03)

PAGE _2_ OF _2_

INCIDENT LOG NUMBER
cen-FAY-06-09-D308

NAME: LAST
Hatch

FIRST

MI
L

TYPE OF INFORMATION:
☒ CONTINUATION OF REPORT      ☐ CLARIFICATION OF REPORT      ☐ ADDITIONAL INFORMATION

NARRATIVE:

copys with the weapon and a ruler. I then placed the weapon in evidence locker # 7 in central control. The weapon is approximately 6 inches long and 1 quarter inch in diameter made of round metal stock, sharpened to a point at one end with a handle at the other end of the weapon fashioned by torn bed sheets.

☐ CHECK IF NARRATIVE IS CONTINUED ON ADDITIONAL C1

SIGNATURE OF REPORTING STAFF

TITLE
C/O

BADGE #
59775

ID #
17/451

DATE

NAME AND TITLE OF REVIEWER (PRINT / SIGNATURE)

DATE RECEIVED
9/16/06

APPROVED
☒ YES  ☐ NO

CLARIFICATION NEEDED
☐ YES  ☒ NO

DATE
9/16/06

DEPARTMENT OF CORRECTIONS

STATE OF CALIFORNIA
# CRIME / INCIDENT REPORT
## PART C- STAFF REPORT
CDC 837-C (Rev. 09/03)

PAGE _1_ OF _2_

INCIDENT LOG NUMBER: CEN-FAY-06-09-030

| NAME: LAST | FIRST | MI |
|---|---|---|
| Sanchez | D▓▓▓ | M |

DATE OF INCIDENT: 9-16-06    TIME OF INCIDENT:

| POST # | POSITION | YEARS OF SERVICE | DATE OF REPORT | LOCATION OF INCIDENT |
|---|---|---|---|---|
| 12425 | "A" SAE | 14 YR. 11 MO. | 9-16-06 | Facility "A" Yard |

CCR SECTION / RULE: 3005 (c)    ☐ N/A

| RDO's | DUTY HOURS | DESCRIPTION OF CRIME / INCIDENT |
|---|---|---|
| S-S | 0600-1400 | ATTEMPTED MURDER |

INMATES (PREFACE S-SUSPECT, V-VICTIM, W-WITNESS)

| YOUR ROLE | WITNESSES (PREFACE S-STAFF, V-VISITOR, O-OTHER) | |
|---|---|---|
| ☐ PRIMARY | (S) %O. Martin | (S) Leon |
| ☒ RESPONDER | | F-27377 |
| ☐ WITNESS | | |
| ☐ VICTIM | | |
| ☐ CAMERA | | |

| FORCE USED BY YOU | WEAPONS USED BY YOU | | SHOTS FIRED BY YOU | | |
|---|---|---|---|---|---|
| | | | TYPE: | NO: | NO: |
| ☐ WEAPON | ☐ MINI-14 | CHEM. TYPE: | 37 MM | | 9 MM |
| ☐ PHYSICAL | ☐ 9 MM | ☐ OC | L8 | | 38 CAL |
| ☒ NONE | ☐ 38 CAL | ☐ CN | 40 MM | | MINI-14 |
| | ☐ SHOTGUN | ☐ CS | 40 MULTI | ☒ N/A | |
| FORCE OBSERVED BY YOU | ☐ 37 MM   ☐ L8 | ☐ OTHER: | | | |
| ☐ WEAPON | ☐ 40 MM   ☐ 40 MULTI | ☒ N/A | SHOTGUN | | |
| ☐ PHYSICAL | ☐ HFWRS   ☐ BATON | | | | |
| ☒ NONE | | | | | |

| EVIDENCE COLLECTED BY YOU | EVIDENCE DESCRIPTION | EVIDENCE DISPOSITION | | BIO HAZARD | PPE |
|---|---|---|---|---|---|
| ☐ YES | | | | ☐ YES | ☐ YES |
| ☒ NO | ☒ N/A | ☒ N/A | | ☒ NO | ☒ NO |

| REPORTING STAFF INJURED | DESCRIPTION OF INJURY | LOCATION TREATED (HOSPITAL / CLINIC) | FLUID EXPOSURE | SCIF 3301 / 3067 COMPLETED |
|---|---|---|---|---|
| ☐ YES | | | ☐ BODILY    ☐ N/A | ☐ YES |
| ☒ NO | ☒ N/A | ☒ N/A | ☐ UNKNOWN | ☒ NO |
| | | | ☐ OTHER: | |

NARRATIVE: On Saturday, September 16, 2006 at approximate 1305 Hours, while inside the Law Library, I heard "get down" and observed an Inmate I Responded responded outside and observed an Inmate identified as Leon, F27377 A3-001, running from the Volleyball Court towards Building 3. I ordered the Leon to get down with negative Results. Continuing to give Leon orders to get down I ran towards him. Leon ran around the handball court inbetween building 3 and 4. Leon finally got down on the rock area in front of building 3. I placed handcuffs on Leon and conducted a clothed body search with negative results. I then began to

☐ CHECK IF NARRATIVE IS CONTINUED ON PART C1

| SIGNATURE OF REPORTING STAFF | TITLE | BADGE # | ID # | DATE |
|---|---|---|---|---|
| | C/O | 45870 | 171599 | 9-16-06 |

| NAME AND TITLE OF REVIEWER (PRINT / SIGNATURE) | DATE RECEIVED | APPROVED | CLARIFICATION NEEDED | DATE |
|---|---|---|---|---|
| | | ☐ YES  ☐ NO | ☐ YES  ☐ NO | |

B #5

STATE OF CALIFORNIA

**CRIME / INCIDENT REPORT**
**PART C1- SUPPLEMENT**
CDC 837-C1 (Rev. 09/03)

DEPARTMENT OF CORRECTIONS

PAGE 2 OF 2

INCIDENT LOG NUMBER
CEN-FA4-06-09-0308

NAME: LAST Sanchez    FIRST ▆▆▆    MI M

TYPE OF INFORMATION:
☒ CONTINUATION OF REPORT    ☐ CLARIFICATION OF REPORT    ☐ ADDITIONAL INFORMATION

NARRATIVE:

search around the area with negative results. Correctional OFFICER O. MARTIN escorted Leon to the Facility Clinic.

☐ CHECK IF NARRATIVE IS CONTINUED ON ADDITIONAL C1

SIGNATURE OF REPORTING STAFF    TITLE    BADGE # 45870    ID # 171599    DATE

NAME AND TITLE OF REVIEWER (PRINT / SIGNATURE)    DATE RECEIVED    APPROVED ☐YES ☐NO    CLARIFICATION NEEDED ☐YES ☐NO    DATE

B Pg. 16

DEPARTMENT OF CORRECTIONS

STATE OF CALIFORNIA
**CRIME / INCIDENT REPORT**
**PART C- STAFF REPORT**
CDC 837-C (Rev. 09/03)

PAGE 1 OF 1

INCIDENT LOG NUMBER
CEN-FAY-06-19-0308

| NAME: LAST | FIRST | MI | DATE OF INCIDENT | TIME OF INCIDENT |
|---|---|---|---|---|
| VASQUEZ | G. [redacted] | | 9-16-06 | 1305 |

| POST # | POSITION | YEARS OF SERVICE | DATE OF REPORT | LOCATION OF INCIDENT |
|---|---|---|---|---|
| 12420 | A-OBSERVATION | YR. 9 MO. | 9-16-06 | A-YARD |

| RDO's | DUTY HOURS | DESCRIPTION OF CRIME / INCIDENT | CCR SECTION / RULE | ☐ N/A |
|---|---|---|---|---|
| WTH | 0600-1400 | ATTEMPTED MURDER | 3005 (c) | |

| YOUR ROLE | WITNESSES (PREFACE S-STAFF, V-VISITOR, O-OTHER) | INMATES (PREFACE S-SUSPECT, V-VICTIM, W-WITNESS) |
|---|---|---|
| ☒ PRIMARY | G. VASQUEZ | (V) MIRANDA V-63893 |
| ☐ RESPONDER | | (S) LEON F-27377 |
| ☒ WITNESS | | (S) HERNANDEZ V-63124 |
| ☐ VICTIM | | |
| ☐ CAMERA | | |

| FORCE USED BY YOU | WEAPONS USED BY YOU | | SHOTS FIRED BY YOU | | |
|---|---|---|---|---|---|
| | | CHEM. TYPE: | TYPE: NO: | | NO: |
| ☐ WEAPON | ☐ MINI-14 | ☐ OC | 37 MM ___ | 9 MM ___ | |
| ☐ PHYSICAL | ☐ 9 MM | ☐ CN | L8 ___ | 38 CAL ___ | |
| ☒ NONE | ☐ 38 CAL | ☐ CS | 40 MM ___ | MINI-14 ___ | |
| | ☐ SHOTGUN | ☐ OTHER: | | | |
| FORCE OBSERVED BY YOU | ☐ 37 MM  ☐ L8 | | 40 MULTI ___ | ☒ N/A | |
| ☐ WEAPON | ☐ 40 MM  ☐ 40 MULTI | | SHOTGUN ___ | | |
| ☐ PHYSICAL | ☐ HFWRS  ☐ BATON | ☒ N/A | | | |
| ☒ NONE | | | | | |

| EVIDENCE COLLECTED BY YOU | EVIDENCE DESCRIPTION | EVIDENCE DISPOSITION | | BIO HAZARD | PPE |
|---|---|---|---|---|---|
| ☐ YES | | | | ☐ YES | ☐ YES |
| ☒ NO | ☒ N/A | ☒ N/A | | ☒ NO | ☒ NO |

| REPORTING STAFF INJURED | DESCRIPTION OF INJURY | LOCATION TREATED (HOSPITAL / CLINIC) | FLUID EXPOSURE | SCIF 3301 / 3067 COMPLETED |
|---|---|---|---|---|
| ☐ YES | | | ☐ BODILY  ☒ N/A | ☐ YES |
| ☒ NO | ☒ N/A | ☐ N/A | ☐ UNKNOWN | ☒ NO |
| | | | ☐ OTHER: | |

NARRATIVE: On 9-16-06, friday at approximately 1305 hours, While performing my duties as A observation officer. I heard over the radio to put the yard down. I yelled "Get Down" Via Pa System several times. I observed 2 Inmates running towards building A3. I immediately ordered both Inmates to get down. Inmates later Identify as LEON, F27377, A3-001 and Hernande: V63893 A V83124, A3-016U. Responding staff then escorted both Inmates with no further incident.

B
Bo 17

| ☐ CHECK IF NARRATIVE IS CONTINUED ON PART C1 | TITLE | BADGE # | ID # | DATE |
|---|---|---|---|---|
| SIGNATURE OF REPORTING STAFF | C/o | 70694 | 1712504 | 9-16-0 |
| NAME AND TITLE OF REVIEWER (PRINT / SIGNATURE) | DATE RECEIVED | APPROVED | CLARIFICATION NEEDED | DATE |
| | | ☐ YES ☐ NO | ☐ YES ☐ NO | |

DEPARTMENT OF CORRECTIONS

STATE OF CALIFORNIA
**CRIME / INCIDENT REPORT**
**PART C- STAFF REPORT**
CDC 837-C (Rev. 09/03)

PAGE _1_ OF _1_

INCIDENT LOG NUMBER
Cen-FAY-06-09-03

| NAME: LAST Beltran | FIRST J~~████~~ | MI — | DATE OF INCIDENT 09-16-06 | TIME OF INCIDENT 1305 |
|---|---|---|---|---|

| POST # MR02 | POSITION MTA | YEARS OF SERVICE 0 YR. 9 MO. | DATE OF REPORT 09/16/06 | LOCATION OF INCIDENT A yard |

| RDO's T/W. | DUTY HOURS 0600-1400 | DESCRIPTION OF CRIME / INCIDENT Attempted Murder. | CCR SECTION / RULE 3005(C) | ☐ N/A |

INMATES (PREFACE S-SUSPECT, V-VICTIM, W-WITNESS)

V- Miranda CDC# V-63893
S- Hernandez CDC# V-83124
S- Leon CDC# F-27377

| YOUR ROLE | WITNESSES (PREFACE S-STAFF, V-VISITOR, O-OTHER) |
|---|---|
| ☐ PRIMARY | |
| ☒ RESPONDER | |
| ☐ WITNESS | |
| ☐ VICTIM | |
| ☐ CAMERA | |

**FORCE USED BY YOU**

SHOTS FIRED BY YOU

| | WEAPONS USED BY YOU | CHEM. TYPE: | | TYPE: | NO: | | NO: |
|---|---|---|---|---|---|---|---|
| ☐ WEAPON | ☐ MINI-14 | ☐ OC | 37 MM | | | 9 MM | |
| ☐ PHYSICAL | ☐ 9 MM | ☐ CN | L8 | | | 38 CAL | |
| ☒ NONE | ☐ 38 CAL | ☐ CS | 40 MM | | | MINI-14 | |
| | ☐ SHOTGUN | ☐ OTHER: | 40 MULTI | | ☒ N/A | | |

**FORCE OBSERVED BY YOU**

| ☐ WEAPON | ☐ 37 MM | ☐ L8 | | SHOTGUN | | |
| ☐ PHYSICAL | ☐ 40 MM | ☒ 40 MULTI ☒ N/A | | | |
| ☒ NONE | ☐ HFWRS | ☐ BATON | | | |

| EVIDENCE COLLECTED BY YOU | EVIDENCE DESCRIPTION | EVIDENCE DISPOSITION | BIO HAZARD | PPE |
|---|---|---|---|---|
| ☐ YES ☒ NO | ☒ N/A | ☐ N/A | ☐ YES ☒ NO | ☐ YES ☒ NO |

| REPORTING STAFF INJURED | DESCRIPTION OF INJURY | LOCATION TREATED (HOSPITAL / CLINIC) | FLUID EXPOSURE | SCIF 3301 / 3067 COMPLETED |
|---|---|---|---|---|
| ☐ YES ☒ NO | ☒ N/A | ☒ N/A | ☐ BODILY ☒ N/A ☐ UNKNOWN ☐ OTHER: ____ ☒ NO | ☐ YES ☒ NO |

NARRATIVE: On Saturday September 16, 2006 while performing my duties as
A yard MTA, I responded to an alarm in A yard. I arrived to
scene and noticed an Ad-seg. Inmate Miranda CDC# V63893 had been
assaulted and I rendered first aid treatment of multiple minor lacerations
A medical cart was summoned and Inmate Miranda was transported to T
at Central Health for further evaluation and treatment escorted by c/o. Lopez
myself. Inmate Hernandez CDC# V-83124 sustained a minor Abrasion to h
right lower leg. Inmate Leon CDC# F-27377 had no Injuries. 7219's o
forms were completely on the three Inmates Involved. End thi.
report.

P9. 18

☐ CHECK IF NARRATIVE IS CONTINUED ON PART C1

| SIGNATURE OF REPORTING STAFF | TITLE MTA | BADGE # 70194 | ID # 1712420 | DATE 9/16/06 |
|---|---|---|---|---|

| NAME AND TITLE OF REVIEWER (PRINT / SIGNATURE) | DATE RECEIVED | APPROVED ☐ YES ☐ NO | CLARIFICATION NEEDED ☐ YES ☐ NO | DATE |

13

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

# CRIME / INCIDENT REPORT
## PART C- STAFF REPORT
CDC 837-C (Rev. 09/03)

| PAGE | 1 | OF | 2 | | INCIDENT LOG NUMBER CEN-FAY-06-09-0308 |
|---|---|---|---|---|---|

| NAME: LAST TRUJILLO | FIRST J_____ | MI | DATE OF INCIDENT 9-16-06 | TIME OF INCIDENT 1305 |
|---|---|---|---|---|

| POST # 12410 | POSITION AS S$E | YEARS OF SERVICE 3 YR. 2 MO. | DATE OF REPORT 9-16-06 | LOCATION OF INCIDENT A YARD |
|---|---|---|---|---|

| RDO's M/T | DUTY HOURS 0800-1600 | DESCRIPTION OF CRIME / INCIDENT ATTEMPTED MURDER | CCR SECTION / RULE 3005c ☐ N/A |
|---|---|---|---|

| YOUR ROLE | WITNESSES (PREFACE S-STAFF, V-VISITOR, O-OTHER) | INMATES (PREFACE S-SUSPECT, V-VICTIM, W-WITNESS) |
|---|---|---|
| ☒ PRIMARY | LOPEZ (S) | HERNANDEZ (S) |
| ☐ RESPONDER | | LEON (S) |
| ☐ WITNESS | | MIRANDA (V) |
| ☐ VICTIM | | |
| ☐ CAMERA | | |

| FORCE USED BY YOU | WEAPONS USED BY YOU | | SHOTS FIRED BY YOU | | | |
|---|---|---|---|---|---|---|
| | | | | TYPE: | NO: | NO: |
| ☒ WEAPON | ☐ MINI-14 | CHEM. TYPE: | 37 MM ___ | | 9 MM ___ | |
| ☐ PHYSICAL | ☐ 9 MM | ☐ OC ___ | L8 ___ | | 38 CAL ___ | |
| ☐ NONE | ☐ 38 CAL | ☐ CN ___ | 40 MM ___ | | MINI-14 ___ | |
| | ☐ SHOTGUN | ☐ CS ___ | 40 MULTI | | ☒ N/A | |
| FORCE OBSERVED BY YOU | ☐ 37 MM ☐ L8 | ☐ OTHER: ___ | | | | |
| ☐ WEAPON | ☐ 40 MM ☐ 40 MULTI | ☐ N/A | SHOTGUN ___ | | | |
| ☐ PHYSICAL | ☐ HFWRS ☒ BATON | | | | | |
| ☒ NONE | | | | | | |

| EVIDENCE COLLECTED BY YOU | EVIDENCE DESCRIPTION | EVIDENCE DISPOSITION | BIO HAZARD | PPE |
|---|---|---|---|---|
| ☐ YES | | | ☐ YES | ☐ YES |
| ☒ NO | ☒ N/A | ☒ N/A | ☒ NO | ☒ NO |

| REPORTING STAFF INJURED | DESCRIPTION OF INJURY | LOCATION TREATED (HOSPITAL / CLINIC) | FLUID EXPOSURE | | SCIF 3301 / 3067 COMPLETED |
|---|---|---|---|---|---|
| ☒ YES | SCRAPE ON RIGHT KNEE | | ☐ BODILY | ☒ N/A | ☐ YES |
| ☐ NO | ☐ N/A | ☐ N/A | ☐ UNKNOWN | | ☐ NO |
| | | | ☐ OTHER: ___ | | |

NARRATIVE: ON 9-16-06 AT APPROXIMATELY 1305 HRS WHILE CONDUCTING MY DUTIES AS AS S$E I OBSERVED INMATE HERNANDEZ V83124 A3-016U ATTACK INMATE MIRANDA V63893 AS 136L (AN ADSEG INMATE) WITH AN INMATE MANUFACTURED WEAPON. I WAS ASSISTING OFFICER LOPEZ ESCORT INMATE MIRANDA BACK TO BUILDING AS FROM FACILITY "A" VISITING. WHEN WE REACHED THE VOLLEY BALL COURT AREA ON THE TRACK I HEARD WHAT APPEARED TO BE SOMEONE RUNNING BEHIND ME. I TURNED AROUND AND I SAW INMATE HERNANDEZ RUNNING TOWAR US. I EXTENDED MY STATE ISSUED EXPANDABLE BATON WHILE ORDERING HERNANDEZ GET DOWN WITH NEGATIVE RESULTS. HE RAN AROUND MYSELF AND OFFICER _____ TO REACH MIRANDA AND HE STARTED SWINGING WHAT APPEARED TO BE AN INMATE MANUFAC

☒ CHECK IF NARRATIVE IS CONTINUED ON PART C1

| SIGNATURE OF REPORTING STAFF | TITLE C/O | BADGE # 66988 | ID # 1711971 IT7_ | DATE 9-16-06 |
|---|---|---|---|---|

| NAME AND TITLE OF REVIEWER (PRINT / SIGNATURE) | DATE RECEIVED | APPROVED ☐ YES ☐ NO | CLARIFICATION NEEDED ☐ YES ☐ NO | DATE |
|---|---|---|---|---|

B
PS. 19

STATE OF CALIFORNIA

**CRIME / INCIDENT REPORT**
**PART C1- SUPPLEMENT**
CDC 837-C1 (Rev. 09/03)

DEPARTMENT OF CORRECTIONS

PAGE _2_ OF _2_

INCIDENT LOG NUMBER
CEU-FAY-06-09-0308

MI

NAME: LAST
TRUJILLO

FIRST
J█████

TYPE OF INFORMATION:
☒ CONTINUATION OF REPORT   ☐ CLARIFICATION OF REPORT   ☐ ADDITIONAL INFORMATION

NARRATIVE:
WEAPON IN HIS RIGHT HAND, TOWARDS MIRANDA'S HEAD AND TORSO AREA. I THEN STRUCK HERNANDEZ ONCE IN HIS UPPER RIGHT ARM UTILIZING A FORWARD STRIKE SPIN?? I WAS AIMING FOR HIS RIGHT HAND BECAUSE HE WAS HOLDING THE WEAPON WITH HIS RIGHT HAND. I ORDERED HIM TO GET DOWN AGAIN AND HE REFUSED, AND STARTED RUNNING IN A DIRECTION TOWARDS THE EASTERN SOCCER FIELD GOAL. I RAN BEHIND HIM WHILE CONTINUING TO GIVE HIM ORDERS TO GET DOWN. I CAUGHT UP TO HIM WHILE YELLING ORDERS TO GET DOWN WITH NEGATIVE RESULTS, SO I STRUCK HIM IN HIS RIGHT THIGH AREA UTILIZING A FORWARD STRIKE WITH NEGATIVE RESULTS. I KEPT YELLING ORDERS TO GET DOWN WHICH HE REFUSED, SO I STRUCK HIM AGAIN IN HIS RIGHT THIGH AREA, UTILIZING A FORWARD STRIKE WHILE STILL RUNNING. HE FELL TO THE FLOOR WHILE THROWING THE WEAPON TO INMATE LEON F27377 A3-01L. INMATE LEON CAUGHT THE WEAPON AND RAN WITH IT TOWARDS BUILDING A3, WHERE HE THREW IT TOWARDS THE ROOF TOP OF A3. I PLACED INMATE HERNANDEZ IN RESTRAINTS WHILE WATCHING INMATE LEON'S ACTIONS. I CONDUCTED A CLOTHED BODY SEARCH ON HERNANDEZ AND THEN ESCORTED HIM TO "A" PROGRAM OFFICE. I THEN ESCORTED HERNAN... TO FACILITY MTA FOR MEDICAL EVALUATION. I READ INMATE HERNANDEZ AND INMATE LEON THEIR MIRANDA RIGHTS. NEITHER INMATE HAD ANY QUESTIONS OR COMMENTS.   NOTE: (WHEN INMATE HERNANDEZ FELL TO THE FLOOR I LOST MY BALANCE AND FELL ON MY RIGHT KNEE.)

B
B.20

☐ CHECK IF NARRATIVE IS CONTINUED ON ADDITIONAL C1

SIGNATURE OF REPORTING STAFF

TITLE
C/o

BADGE #
66988

ID #
171971

DATE
9/6 06

NAME AND TITLE OF REVIEWER (PRINT / SIGNATURE)

DATE RECEIVED

APPROVED
☐ YES  ☐ NO

CLARIFICATION NEEDED
☐ YES  ☐ NO

DATE

STATE OF CALIFORNIA

**CRIME / INCIDENT REPORT**
**PART C2- REVIEW NOTICE**
CDC 837-C2 (Rev. 09/03)

PAGE _____ OF _____

| REPORTING EMPLOYEE NAME (*PRINT/TYPE*) | | INCIDENT LOG NUMBER | DATE OF INCIDENT |
|---|---|---|---|
| | MI: | CEN-FAY-06-09-0308 | 09/16/06 |

LAST: TRUJILLO     FIRST: ▮▮▮▮

**Your report concerning the above referenced incident has been reviewed and the following information is required:**

☒ Prepare a CDC 837-C1 supplemental report clarifying the issues listed below:

☐ Prepare a CDC 837-C1 supplemental report providing additional information regarding the issues listed below:

DUE BY: _____09/18/06_____     RETURN TO: _LIEUTENANT GRANISH_____

PLEASE RESPOND TO THE FOLLOWING QUESTIONS:

1) YOU NEED INDICATE IN YOUR REPORT, WHEN YOU UNILIZED YOUR RADIO TO PLACE THE "YARD DOWN"?

PLEASE INDICATE HOW AND WHAT ACTIONS YOU TOOK TO ACCOMPLISH THIS TASK.

☐ CHECK IF CONTINUED ON ADDITIONAL PART C2

| NAME OF REVIEWER (PRINT) | TITLE | SIGNATURE | DATE |
|---|---|---|---|
| GRANISH, G.N. | LT. | | 09/17/06 |

Distribution:    Original: Incident Package    Canary: Reporting Employee    Pink: Reviewing Supervisor



# CRIME / INCIDENT REPORT
## PART C1- SUPPLEMENT
CDC 837-C1 (Rev. 09/03)

PAGE 1 OF 1

INCIDENT NUMBER
CEN-FAY-06-09-0308

M1
-

NAME: LAST
TRUJILLO

FIRST

TYPE OF INFORMATION:
☐ CONTINUATION OF REPORT   ☒ CLARIFICATION OF REPORT   ☐ ADDITIONAL INFORMATION

NARRATIVE:

_QUESTION ONE:

A1. I UTILIZED MY RADIO RIGHT AFTER I STRUCK INMATE HERNANDEZ WITH MY BATON THE FIRST TIME. MY EXACT WORDS WERE "ALPHA 10, PUT THE YARD DOWN." IMMEDIATELY AFTER I USED MY RADIO WAS WHEN I RAN AFTER INMATE HERNANDEZ.

☐ CHECK IF NARRATIVE IS CONTINUED ON ADDITIONAL C1

| SIGNATURE OF REPORTING STAFF | TITLE | BADGE # | ID # | DATE |
|---|---|---|---|---|
| | OFFICER | 66988 | 1711971 | 09/17/06 |
| NAME AND TITLE OF REVIEWER (PRINT / SIGNATURE) | DATE RECEIVED | APPROVED ☐ YES ☐ NO | CLARIFICATION NEEDED ☐ YES ☐ NO | DATE |

Distribution:   Original: Incident Package   Copy: Reporting Employee   Copy: Reviewing Supervisor

B  PS. 22

STATE OF CALIFORNIA                                                    DEPARTMENT OF CORRECTIONS

**CRIME / INCIDENT REPORT**
**PART C- STAFF REPORT**
CDC 837-C (Rev. 09/03)

| PAGE ____ OF ____ | INCIDENT LOG NUMBER CEN-FAY-06-09-0308 |

| NAME: LAST TOWNSEND | FIRST M[redacted] | MI D | DATE OF INCIDENT 9/16/06 | TIME OF INCIDENT 1305 |

| POST # 13400 | POSITION A5 Control | YEARS OF SERVICE 1 YR. 11 MO. | DATE OF REPORT 9/16/06 | LOCATION OF INCIDENT A YARD |

| RDO's Tues/Wed | DUTY HOURS 1400-2200 | DESCRIPTION OF CRIME / INCIDENT Attempted Murder | CCR SECTION / RULE 3005 | ☐ N/A |

INMATES (PREFACE S-SUSPECT, V-VICTIM, W-WITNESS)
Leon F 27377 (S)
Hernandez V83124 (S)
Miranda V63893 (V)

| YOUR ROLE | WITNESSES (PREFACE S-STAFF, V-VISITOR, O-OTHER) |
| ☐ PRIMARY | M. TOWNSEND (S) |
| ☐ RESPONDER | |
| ☒ WITNESS | |
| ☐ VICTIM | |
| ☐ CAMERA | |

| FORCE USED BY YOU | WEAPONS USED BY YOU | | SHOTS FIRED BY YOU |
| | | CHEM. TYPE: | TYPE: | NO: | | NO: |
| ☐ WEAPON | ☐ MINI-14 | ☐ OC | 37 MM | | 9 MM | |
| ☐ PHYSICAL | ☐ 9 MM | ☐ CN | L8 | | 38 CAL | |
| ☒ NONE | ☐ 38 CAL | ☐ CS | 40 MM | | MINI-14 | |
| FORCE OBSERVED BY YOU | ☐ SHOTGUN | ☐ OTHER: | 40 MULTI | ☒ N/A | | |
| ☐ WEAPON | ☐ 37 MM  ☐ L8 | ☒ N/A | SHOTGUN | | | |
| ☐ PHYSICAL | ☐ 40 MM  ☐ 40 MULTI | | | | |
| ☐ NONE | ☐ HFWRS  ☐ BATON | | | | |

| EVIDENCE COLLECTED BY YOU | EVIDENCE DESCRIPTION | EVIDENCE DISPOSITION | BIO HAZARD | PPE |
| ☐ YES | | | ☐ YES | ☐ YES |
| ☐ NO  N/A | ☒ N/A | ☒ N/A | ☒ NO | ☒ NO |
| | | | SCIF 3301 / 3067 COMPLETED |

| REPORTING STAFF INJURED | DESCRIPTION OF INJURY | LOCATION TREATED (HOSPITAL / CLINIC) | FLUID EXPOSURE | |
| | | | ☐ BODILY | ☒ N/A | ☐ YES |
| ☐ YES | | | ☐ UNKNOWN | | ☒ NO |
| ☒ NO | ☒ N/A | ☒ N/A | ☐ OTHER: | |

NARRATIVE: ON OR ABOUT 1305 WHILE ASSIGNED AS A5 Control booth officer I heard the yard put down by radio. I proceeded to the back windo and observed an inmate running across the yard from the vicinity of work change in the direction of BLOS's A3 + A4 with yard staff also running and ordering him to stop and get down. Inmate disregarded the orders and kept running. Once in the vicinity of the handball courts nearest the track I observed the inmate throw an object over the fence between BLOS's A3 and A4, once the inmate did that he got down. Responding staff took him into custody.

☐ CHECK IF NARRATIVE IS CONTINUED ON PART C1

| SIGNATURE OF REPORTING STAFF Michael D. Townsend | TITLE C/O | BADGE # 59320 | ID # 171463 | DATE |
| NAME AND TITLE OF REVIEWER (PRINT / SIGNATURE) | DATE RECEIVED | APPROVED ☐ YES ☐ NO | CLARIFICATION NEEDED ☐ YES ☐ NO | DATE |

B
23

DEPARTMENT OF CORRECTIONS

STATE OF CALIFORNIA
**CRIME / INCIDENT REPORT**
**PART C- STAFF REPORT**
CDC 837-C (Rev. 09/03)

PAGE 1 OF 2

INCIDENT LOG NUMBER
CEN-FAY-06-09-0308

| NAME: LAST | FIRST | MI | DATE OF INCIDENT | TIME OF INCIDENT |
|---|---|---|---|---|
| LOPEZ | M ███ | A | 9.16.06 | 1305 |

| POST # | POSITION | YEARS OF SERVICE | DATE OF REPORT | LOCATION OF INCIDENT |
|---|---|---|---|---|
| 12415 | A-5 INF. ESCORT | 1 YR. 7 MO. | 9.16.06 | A YARD |

| RDO's | DUTY HOURS | DESCRIPTION OF CRIME / INCIDENT | CCR SECTION / RULE ☐ N/A |
|---|---|---|---|
| M/T | VARY | Attempted Murder | 3005 |

| YOUR ROLE | WITNESSES (PREFACE S-STAFF, V-VISITOR, O-OTHER) | INMATES (PREFACE S-SUSPECT, V-VICTIM, W-WITNESS) |
|---|---|---|
| ☒ PRIMARY | Trujillo (s) | Hernandez (s) |
| ☐ RESPONDER | | LEON (s) |
| ☐ WITNESS | | Miranda (V) |
| ☐ VICTIM | | |
| ☐ CAMERA | | |

| FORCE USED BY YOU | WEAPONS USED BY YOU | | SHOTS FIRED BY YOU |
|---|---|---|---|

FORCE USED BY YOU
☐ WEAPON
☐ PHYSICAL
☒ NONE

FORCE OBSERVED BY YOU
☒ WEAPON
☐ PHYSICAL
☐ NONE

WEAPONS USED BY YOU
☐ MINI-14
☐ 9 MM
☐ 38 CAL
☐ SHOTGUN
☐ 37 MM
☐ 40 MM
☐ HFWRS

CHEM. TYPE:
☐ OC
☐ CN
☐ CS
☐ OTHER:
☐ L8
☐ 40 MULTI
☒ BATON
☐ N/A

SHOTS FIRED BY YOU
TYPE: NO: NO:
37 MM ___ 9 MM ___
L8 ___ 38 CAL ___
40 MM ___ MINI-14 ___
40 MULTI ☒ N/A
SHOTGUN ___

| EVIDENCE COLLECTED BY YOU | EVIDENCE DESCRIPTION | EVIDENCE DISPOSITION | BIO HAZARD | PPE |
|---|---|---|---|---|
| ☒ YES ☐ NO | Video of puncture wounds on victim ☐ N/A | Evidence locker #4 ☐ N/A | ☐ YES ☒ NO | ☐ YES ☒ NO |

| REPORTING STAFF INJURED | DESCRIPTION OF INJURY | LOCATION TREATED (HOSPITAL / CLINIC) | FLUID EXPOSURE | SCIF 3301 / 3067 COMPLETED |
|---|---|---|---|---|
| ☐ YES ☒ NO | ☒ N/A | ☒ N/A | ☐ BODILY ☒ N/A ☐ UNKNOWN ☐ OTHER: | ☐ YES ☒ NO |

NARRATIVE: On 9.16.06 at approximately 1305 HRS while performing my duties as A-5 Infirmary Escort, while escorting Inmate Miranda V638█ A5 136L (an Adseg inmate) back from facility "A" visiting I observed Inmate Hernandez V83124 A3-016U attack Inmate Miranda with an Inmate manufactured weapon. As we reached the volleyball court area on the track, I heard officer Trujillo ordering Inmate Hernandez to get down with negative results. Inmate Hernandez ran around officer Trujillo & myself to reach Inmate Miranda and began to swing what appeared be an Inmate manufactured weapon in his right hand. I observed officer Trujillo strike Inmate Hernandez once in his upper rig

PS 124

☐ CHECK IF NARRATIVE IS CONTINUED ON PART C1

| SIGNATURE OF REPORTING STAFF | TITLE | BADGE # | ID # | DATE |
|---|---|---|---|---|
| ███ | C/O | 68858 | 1712255 | 9.16.06 |

| NAME AND TITLE OF REVIEWER (PRINT / SIGNATURE) | DATE RECEIVED | APPROVED ☐ YES ☐ NO | CLARIFICATION NEEDED ☐ YES ☐ NO | DATE |
|---|---|---|---|---|

DEPARTMENT OF CORRECTIONS

STATE OF CALIFORNIA
**CRIME / INCIDENT REPORT**
**PART C1- SUPPLEMENT**
CDC 837-C1 (Rev. 09/03)

PAGE _2_ OF _2_

INCIDENT LOG NUMBER
CEN-FAY-06-09-0308

NAME: LAST
LOPEZ

FIRST
M▮▮▮▮▮▮▮

MI
A

TYPE OF INFORMATION:
☒ CONTINUATION OF REPORT   ☐ CLARIFICATION OF REPORT   ☐ ADDITIONAL INFORMATION

NARRATIVE: Utilizing a foward spin while giving orders to get down. Inmate Hernandez 2 refused to get down and started running towards the eastern soccer field goal. Officer Trujillo ran behind him giving him a derict order to get down with negative results. Using a forward spin officer Trujillo struck Inmate Hernandez 2 times in the upper right thigh area. Inmate Hernandez then threw the weapon to Inmate Leon F 2737 A3-01L, and complied with officer Trujillos order to get down. Inmate Leon caught the weapon and ran with it toward building A-3 where he threw it towards the roof top. I ordered Inmate Miranda to have a seat on the curb and wait for the MTA to come and evaluate his wounds.

B
Ps. 25

☐ CHECK IF NARRATIVE IS CONTINUED ON ADDITIONAL C1

SIGNATURE OF REPORTING STAFF

TITLE
c/o

BADGE #
68858

ID #
1712255

DATE

NAME AND TITLE OF REVIEWER (PRINT / SIGNATURE)

DATE RECEIVED

APPROVED
☐ YES ☐ NO

CLARIFICATION NEEDED
☐ YES ☐ NO

DATE

STATE OF CALIFORNIA
**CRIME / INCIDENT REPORT**
**PART C- STAFF REPORT**
CDC 837-C (Rev. 09/03)

DEPARTMENT OF CORRECTIONS

PAGE 1 OF 2

| INCIDENT LOG NUMBER |
| --- |
| CEN FAV 06090308 |

NAME: LAST **MARTIN**   FIRST ~~(redacted)~~   M

| DATE OF INCIDENT | TIME OF INCIDENT |
| --- | --- |
| 9 16 06 | 1305 |

POST # 12358   POSITION A YARD #3   YEARS OF SERVICE 7 YR. 2 MO.   DATE OF REPORT 9/16/06   LOCATION OF INCIDENT A YARD

CCR SECTION / RULE 3005 C   ☐ N/A

RDO's W/TH   DUTY HOURS 0600/1400   DESCRIPTION OF CRIME / INCIDENT **ATTEMPTED MURDER**

INMATES (PREFACE S-SUSPECT, V-VICTIM, W-WITNESS)

| | | |
| --- | --- | --- |
| LEON | (S) | F27377 |
| HERNANDEZ | (S) | V83124 |
| MIRANDA | (S) | V63893 |

| YOUR ROLE | WITNESSES (PREFACE S-STAFF, V-VISITOR, O-OTHER) |
| --- | --- |
| ☐ PRIMARY | C/O D. SANCHEZ (S) |
| ☒ RESPONDER | |
| ☐ WITNESS | |
| ☐ VICTIM | |
| ☐ CAMERA | |

**FORCE USED BY YOU**
☐ WEAPON
☐ PHYSICAL
☒ NONE

**FORCE OBSERVED BY YOU**
☐ WEAPON
☐ PHYSICAL
☒ NONE

**WEAPONS USED BY YOU**
☐ MINI-14
☐ 9 MM
☐ 38 CAL
☐ SHOTGUN
☐ 37 MM  ☐ L8
☐ 40 MM  ☐ 40 MULTI
☐ HFWRS  ☐ BATON

**CHEM. TYPE:**
☐ OC
☐ CN
☐ CS
☐ OTHER:
☒ N/A

**SHOTS FIRED BY YOU**

| | TYPE: | NO: | | NO: |
| --- | --- | --- | --- | --- |
| | 37 MM | | 9 MM | |
| | L8 | | 38 CAL | |
| | 40 MM | | MINI-14 | |
| | 40 MULTI | ☒ N/A | | |
| | SHOTGUN | | | |

**EVIDENCE COLLECTED BY YOU**
☐ YES
☒ NO

EVIDENCE DESCRIPTION  ☒ N/A

EVIDENCE DISPOSITION  ☒ N/A

| BIO HAZARD | PPE |
| --- | --- |
| ☐ YES | ☐ YES |
| ☒ NO | ☐ NO |

**REPORTING STAFF INJURED**
☐ YES
☐ NO

DESCRIPTION OF INJURY  ☒ N/A

LOCATION TREATED (HOSPITAL / CLINIC)  ☒ N/A

**FLUID EXPOSURE**
☐ BODILY  ☒ N/A
☐ UNKNOWN
☐ OTHER: _____

| SCIF 3301 / 3067 COMPLETED |
| --- |
| ☐ YES |
| ☒ NO |

NARRATIVE: ON SATURDAY, SEPTEMBER 16, 2006, AT APPROX. 1305 HOURS. WHILE PERFORMING MY DUTIES AS A YARD #3, I RESPONDED TO THE YARD ALARM AND SAW I/M LEON F27377 WHO WAS LATER IDENTIFIED RUNNING ACROSS THE YARD FROM A VOC AREA TO THE FRONT OF A-3. C/O D. SANCHEZ STOPPED I/M LEON AND HANDCUFFED HIM. C/O D. SANCHEZ ASSISTED IN PERFORMING A SEARCH FOR A WEAPON BETWEEN BUILDINGS A3 AND A4. I ESCORTED I/M LEON TO THE A-MTA OFFICE TO HAVE A 7219 DONE ON I/M LEON BY MTA. BELTRAN. I THEN ESCORTED I/M LEON ...

**B**

**PS. 26**

☒ CHECK IF NARRATIVE IS CONTINUED ON PART C1

| SIGNATURE OF REPORTING STAFF | TITLE C/O | BADGE # 60274 | ID # 171217 8 | DATE 9/16/06 |
| --- | --- | --- | --- | --- |

| NAME AND TITLE OF REVIEWER (PRINT / SIGNATURE) | DATE RECEIVED | APPROVED ☐ YES ☐ NO | CLARIFICATION NEEDED ☐ YES ☐ NO | DATE |
| --- | --- | --- | --- | --- |

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS

**CRIME / INCIDENT REPORT**
**PART C1- SUPPLEMENT**
CDC B37-C1 (Rev. 09/03)

PAGE 2 OF 2

INCIDENT LOG NUMBER
CENFAY06090308

NAME: LAST MARTIN    FIRST ▓▓▓▓▓    MI M

TYPE OF INFORMATION:

☒ CONTINUATION OF REPORT    ☐ CLARIFICATION OF REPORT    ☐ ADDITIONAL INFORMATION

NARRATIVE:

A5 ABU.

☐ CHECK IF NARRATIVE IS CONTINUED ON ADDITIONAL C1

SIGNATURE OF REPORTING STAFF    TITLE C/O    BADGE # 60274    ID # 1712178    DATE

NAME AND TITLE OF REVIEWER (PRINT / SIGNATURE)    DATE RECEIVED    APPROVED ☐ YES ☐ NO    CLARIFICATION NEEDED ☐ YES ☐ NO    DATE

B
PS, 27

DEPARTMENT OF CORRECTIONS

STATE OF CALIFORNIA
**CRIME / INCIDENT REPORT**
**PART C- STAFF REPORT**
CDC 837-C (Rev. 09/03)

PAGE _____ OF _____

INCIDENT LOG NUMBER
Cen-FAY-06-09-0808

| | | MI | DATE OF INCIDENT | TIME OF INCIDENT |
|---|---|---|---|---|
| NAME: LAST Vega | FIRST | | 9-16-06 | 1305 |

| POST # 12382 | POSITION A4 Control c/o | YEARS OF SERVICE 6 YR. 9 MO. | DATE OF REPORT 9-16-06 | LOCATION OF INCIDENT A yard- |
|---|---|---|---|---|

CCR SECTION / RULE  3005    ☐ N/A

| RDO's S/S | DUTY HOURS 06-1400 | DESCRIPTION OF CRIME / INCIDENT Attempted Murder |
|---|---|---|

INMATES (PREFACE S-SUSPECT, V-VICTIM, W-WITNESS)
(s) Leon    F27377
A3-01L

| YOUR ROLE | WITNESSES (PREFACE S-STAFF, V-VISITOR, O-OTHER) |
|---|---|
| ☐ PRIMARY | |
| ☐ RESPONDER | |
| ☒ WITNESS | |
| ☐ VICTIM | |
| ☐ CAMERA | |

SHOTS FIRED BY YOU

| FORCE USED BY YOU | WEAPONS USED BY YOU | | | TYPE: | NO: | | NO: |
|---|---|---|---|---|---|---|---|
| ☐ WEAPON | ☐ MINI-14 | CHEM. TYPE: | | 37 MM | | 9 MM | |
| ☐ PHYSICAL | ☐ 9 MM | ☐ OC | | L8 | | 38 CAL | |
| ☒ NONE | ☐ 38 CAL | ☐ CN | | 40 MM | | MINI-14 | |
| | ☐ SHOTGUN | ☐ CS | | 40 MULTI | | ☒ N/A | |
| FORCE OBSERVED BY YOU | ☐ 37 MM    ☐ L8 | ☐ OTHER: | | | | | |
| ☐ WEAPON | ☐ 40 MM    ☐ 40 MULTI | ☒ N/A | | SHOTGUN | | | |
| ☐ PHYSICAL | ☐ HFWRS    ☐ BATON | | | | | | |
| ☒ NONE | | | | | | | |

| EVIDENCE COLLECTED BY YOU | EVIDENCE DESCRIPTION | EVIDENCE DISPOSITION | | BIO HAZARD | PPE |
|---|---|---|---|---|---|
| ☐ YES | | ☐ N/A | | ☐ YES    ☒ NO | ☐ YES    ☒ NO |
| ☒ NO | ☒ N/A | | | | |

| REPORTING STAFF INJURED | DESCRIPTION OF INJURY | LOCATION TREATED (HOSPITAL / CLINIC) | FLUID EXPOSURE | | SCIF 3301 / 3067 COMPLETED |
|---|---|---|---|---|---|
| ☐ YES | | | ☐ BODILY    ☐ N/A | | ☐ YES |
| ☒ NO | ☒ N/A | ☒ N/A | ☐ UNKNOWN    ☒ OTHER: ___ | | ☒ NO |

NARRATIVE:  On 9-16-06 at approximately 1305 hours, I was performing
my duties as A4 Control officer, I was releasing Inmates for chapel
services when I heard "get down" outside in the yard. I ran to the
window when I saw an Inmate later identified as I/m Leon F27377.
A3-01L running from the volleyball area towards the direction of
Facility A Building 3. I then yelled "get down" two times and
I/m Leon continued running upon arriving at the health ___
court I/m Leon stopped and I observed him go thru ___
throwing motion with force and threw an object over the
A yard perimeter fence in between buildg A3 and A4.

☐ CHECK IF NARRATIVE IS CONTINUED ON PART C1

| SIGNATURE OF REPORTING STAFF | TITLE c/o | BADGE # 61351 | ID # 171466 | DATE 9-16-06 |
|---|---|---|---|---|

NAME AND TITLE OF REVIEWER (PRINT / SIGNATURE) | DATE RECEIVED | APPROVED ☐ YES ☐ NO | CLARIFICATION NEEDED ☐ YES ☐ NO | DATE

DEPARTMENT OF CORRECTIONS

STATE OF CALIFORNIA
**CRIME / INCIDENT REPORT**
**PART C1- SUPPLEMENT**
CDC 837-C1 (Rev. 09/03)

PAGE _____ OF _____

INCIDENT LOG NUMBER
Gen-Fcy-06-09-0308
MI

NAME: LAST Vega,   FIRST ▮▮▮▮▮

TYPE OF INFORMATION:
☒ CONTINUATION OF REPORT   ☐ CLARIFICATION OF REPORT   ☐ ADDITIONAL INFORMATION

NARRATIVE: then continues to run towards building A3 at which this time I lost site of him.

☐ CHECK IF NARRATIVE IS CONTINUED ON ADDITIONAL C1

SIGNATURE OF REPORTING STAFF

NAME AND TITLE OF REVIEWER (PRINT / SIGNATURE)

| TITLE C/o | BADGE # 61351 | ID # 171466 | DATE 9-16-0 |
|-----------|---------------|-------------|-------------|
| DATE RECEIVED | APPROVED ☐ YES ☐ NO | CLARIFICATION NEEDED ☐ YES ☐ NO | |

B
Ps. 29

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION

# CRIME / INCIDENT REPORT
## PART C- STAFF REPORT
CDCR 837-C (Rev. 07/05)

PAGE __L__ OF __l__

INCIDENT LOG NUMBER: CEN-FAY-06-09-0308

| NAME: LAST | FIRST | MI |
|---|---|---|
| BARRON | M⬛ | E |

| | INCIDENT DATE | INCIDENT TIME |
|---|---|---|
| | 09/16/06 | 1305 |

| POST # | POSITION RN | YEARS OF SERVICE 9 Years 5 Months | DATE OF REPORT 09/16/06 | LOCATION OF INCIDENT A-yard |

CCR SECTION / RULE ☐

| RDO's S/M | DUTY HOURS 06-14 | DESCRIPTION OF CRIME / INCIDENT: ATTEMPTED MURDER |

INMATES (PREFACE S-SUSPECT, V-VICTIM, W-WITNESS)
Miranda CDC # V63893

**YOUR ROLE**
- ☐ PRIMARY
- ☒ RESPONDER
- ☐ WITNESS
- ☐ VICTIM
- ☐ CAMERA

WITNESSES (PREFACE S-STAFF, V-VISITOR, O-OTHER)
C.O. Lopez

**FORCE USED BY YOU**
- ☐ WEAPON
- ☐ PHYSICAL
- ☐ CHEMICAL
- ☒ NONE

**WEAPONS AND SHOTS FIRED BY YOU**
NO:
- ☐ MINI-14
- ☐ 9 MM
- ☐ 38 CAL
- ☐ SHOTGUN

NO: TYPE:
- ☐ 37 MM
- ☐ 40 MM
- ☐ LB
- ☐ 40 MULTI
- ☐ HFWRS
- ☐ BATON

**CHEMICAL AGENTS USED BY YOU**
TYPE:
- ☐ OC
- ☐ CN
- ☐ CS
- ☐ OTHER: ___

**FORCE OBSERVED BY YOU**
- ☐ WEAPON
- ☐ PHYSICAL
- ☐ CHEMICAL
- ☒ NONE

☒ N/A

☒ N/A

| **EVIDENCE COLLECTED BY YOU** | EVIDENCE DESCRIPTION | EVIDENCE DISPOSITION | BIO HAZARD | PPE |
|---|---|---|---|---|
| ☐ YES ☒ NO | ☒ N/A | ☒ N/A | ☐ YES ☒ NO | ☐ YES ☒ NO |

| **REPORTING STAFF INJURED** | DESCRIPTION OF INJURY | LOCATION TREATED (HOSPITAL / CLINIC) | FLUID EXPOSURE | SCIF 3301 / 3067 COMPLETED |
|---|---|---|---|---|
| ☐ YES ☒ NO | ☒ N/A | ☒ N/A | ☐ BODILY ☒ N/A ☐ UNKNOWN ☐ OTHER: ___ | ☐ YES ☒ NO |

**NARRATIVE:**
On 09/16/06 at approx. 1307 Hrs. while working in TTA-RN post for Today. Inmate Miranda # V63893 was brought to CH-TTA 1 via electric cart fully A&O X3 He ambulated to the gurney and SAT-down at bottom end V/S taken were stable examination of body done and three superficial abrasions noted. One abrasion in right quadrant no bleeding observed. Another superficial abrasion 1 cm size on upper right arm no bleeding noted And The third abrasion size 3cms on right posterior aspect of wrist with open area 1 cm. very minimal bleeding noted. Inmate denied any discomfort no resp. distress observed lung sounds clear bilaterally, after custody took pictures wounds were cleaned + bandaged and wound to right wrist was steri-stripped. Inmate escorted by custody back to Ad-Seg leg in stable stating via Ambulation.

☐ CHECK IF NARRATIVE IS CONTINUED ON PART C1

| SIGNATURE OF REPORTING STAFF | TITLE | BADGE # | DATE |
|---|---|---|---|
| Mary Barron | RN | ID # 171334 | 9/16/06 |

| NAME AND TITLE OF REVIEWER (PRINT / SIGNATURE) | DATE RECEIVED | APPROVED ☐ YES ☐ NO | CLARIFICATION NEEDED ☐ YES ☐ NO | DATE |

Distribution:  Original: Incident Package    Copy: Reporting Employee    Copy: Reviewing Supervisor

# CENTINELA STATE PRISON

## NOTICE OF UNUSUAL OCCURRENCE

☐ INITIAL REPORT        ☐ CLOSURE

Date: 09/16/06       Time: 1305 HOURS

Location: FACILITY 'A' REC YARD      Report Submitted By: SERGEANT B. CLARK

AOD Notified By: WATCH COMMANDER

Subject: ATTEMPTED MURDER

Staff Involved: LT. G. GRANISH

C/O, J. TRUJILLO

FACILITY "A" MTA

Inmates Involved: (Principles Only)

| Name: | Number: | Cell Number: | Ethnic: |
|---|---|---|---|
| HERNANDEZ | V83124 | A3-016U | MEX |
| LEON | F27377 | A3-001L | MEX |
| MIRANDA | V63893 | A5-136L | MEX |
| | | | |

Synopsis of Events:

On Saturday, September 16, 2006, at approximately 1305 hours, while C/O, J. Trujillo, ASU S & E, was escorting inmate MIRANDA from 'A' visiting, MIRANDA was attacked and stabbed with an inmate manufactured weapon by inmate HERNANDEZ, V83124, A3-016U. After stabbing inmate MIRANDA, inmate HERNANDEZ, threw the weapon to inmate LEON, F27377, who unsuccessfully attempted to discard the weapon. Officer Trujillo and responding staff were able to subdue both inmates, HERNANDEZ and LEON without further use of force. The inmate manufactured weapon was secured and placed in Central Control as evidence. Inmate MIRANDA was treated and taken to Central Health for further evaluation.

(Synopsis should be briefed and concise. Please limit to fifty (50) words or less when possible.)

Action Taken:
Inmates HERNANDEZ and LEON were placed in mechanical restraints, escorted to Facility 'A' Program Office and re-housed in Ad/Seg.

Evaluation of Situation:
Program suspended for the duration of the day. Cell feeding for all inmates. All Hispanic inmates placed on Modified (No Program) status.

☐ This N.O.U.O. is closed by this report      ☐ This N.O.U.O. requires follow up closur

**B**
**P8.31**

DISTRIBUTION:    Warden
Chief Deputy Warden
Associate Warden - Central Services
Associate Warden - Housing

Associate Warden - Business Services
Correctional Captain
Program Administrators - A,B,C,D
Watch Office

25

DEPARTMENT OF CORRECTIONS

STATE OF CALIFORNIA
CDC 1882-B

# ADMINISTRATIVE SEGREGATION UNIT/SECURITY HOUSING UNIT
## DOUBLE CELL REVIEW

| Name of Inmate (Last, First, MI) | CDC Number | Housing |
|---|---|---|
| LEON, R. | F27377 | C6138L |
| Name of Inmate (Last, First, MI) | CDC Number | Housing |
| HERNANDEZ, H. | V83124 | C6138U |

The above-listed inmates are being processed for occupancy of the same cell.

1. The request is being initiated per:

☐ Administrative assignment by staff.

☐ Request from one ☐ or both ☒ inmates to be assigned to the same cell.

2. During the interview with:

| Staff Witness Printed Name | Signature |
|---|---|
| D. Martin | D. Martin |

☐ Both inmates stated agreement to the cell assignment and signed below to indicate compatibility.

Signature of Inmate _X_____    Signature of Inmate _X_____

☐ Both inmates stated agreement, but one or both refused to sign the acknowledgment of compatibility.

☐ One or both inmates refused the cell assignment.

3. After a review of the inmates' statements and the case factors in each inmate's C-file, it has been determined that:

☐ There is no information available to indicate that the inmates are incompatible.

☐ There is information which leads to the belief that the assignment of these inmates to the same cell is contrary to legitimate penological interests, or may threaten institution security or the safety of others.

4. Based on this evaluation, the double cell occupancy request is:    ☑ APPROVED    ☐ DISAPPROVED

| APPROVING AUTHORITY |
|---|
| Signature: |
| Printed Name: |
| Title: |
| DATE: |

DISTRIBUTION:
C-File

B
P8-32

## NOTICE OF RIGHTS PURSUANT TO THE MIRANDA DECISION

Inmate    HERNANDEZ    , CDC#    V83124    , I wish to ask you some
questions because you are suspected of    ATTEMPTED MURDER

and it is my duty to inform you that:

1. You have the right to remain silent.

2. If you give up that right, anything you say can and will be used against you in a court of law.

3. You have the right to talk to an attorney and to have that attorney present with you while you are being questioned.

4. If you cannot afford to hire an attorney, one will be appointed to represent you before any questioning, if you wish one.

5. If you chose to answer any questions, you may stop the interview/questioning at any time.

| 09/16/06 | 1410 | | c/o |
|----------|------|----------|------|
| DATE | TIME | SIGNATURE | TITLE |

1. Do you understand each of these rights that I have read to you?

YES/NO

2. Having been informed of these rights, and having these rights in mind, are you willing to talk to us?

YES/NO

| 09/16/06 | | "Refused to Sign" | V83124 |
|----------|------|----------|------|
| DATE | TIME | SIGNATURE | CDC# |

WITNESSED BY:

| W. Martin | D. MARTIN | c/o | 9/16/06 |
|----------|------|----------|------|
| SIGNATURE | NAME/PRINTED | TITLE | DATE |

| | | | 09/16/06 |
|----------|------|----------|------|
| SIGNATURE | NAME/PRINTED | TITLE | DATE |

INMATE's STATEMENT:    "No Comments"

**B**
**P8.33**

804 TO RECORDS ON: _____ BY: _____

DEPARTMENT OF CORRECTIONS

STATE OF CALIFORNIA
## RULES VIOLATION REPORT

| CDC NUMBER | INMATE'S NAME | | RELEASE/BOARD DATE | INST. | HOUSING NO. | LOG NO. |
|---|---|---|---|---|---|---|
| V83124 | HERNANDEZ | | | CENTINELA | A3-016U | FA-06-09-032 |
| VIOLATED RULE NO(S). | | SPECIFIC ACTS | | LOCATION | DATE | TIME |
| CCR 3005(c) | | ATTEMPTED MURDER | | FAC. A YARD | 09/16/06 | 1305 HOURS |

CIRCUMSTANCES

On Saturday, September 16, 2006, at approximately 1305 hours, while performing my duties as Facility A, A5 S & E, I observed inmate HERNANDEZ, V83124, A3-016U, attack inmate MIRANDA, V63893, A5-136L (An Ad/Seg. Inmate), with an inmate manufactured weapon. I was assisting Office Lopez escort MIRANDA back to building A5 from Facility 'A' visiting. When we reached the volley ball area on the track I heard what appeared to be someone running behind me. I turned around and I saw inmate HERNANDEZ running towards us. I extended my state issued expandable baton while ordering HERNANDEZ to get down with negative results. He ran around myself and Officer Lopez to reach MIRANDA and he started swinging what appeared to be an inmate manufactured weapon in his right hand, towards MIRANDA's head and torso area. I then struck HERNANDEZ once in his upper right arm utilizing a forward strike. I was aiming for his right hand because he was holding the weapon with his right hand. I ordered him to get down again and he refused and started running in a direction towards the eastern soccer field goal.

Continued on Part C

| REPORTING EMPLOYEE (Typed Name and Signature) | DATE | ASSIGNMENT | RDO'S |
|---|---|---|---|
| J. TRUJILLO, Correctional Officer | | A5 S & E | M/TU |
| REVIEWING SUPERVISOR'S SIGNATURE | DATE | ☐ INMATE SEGREGATED PENDING HEARING | |
| B. CLARK, Correctional Sergeant | | N/A | N/A |

| CLASSIFIED | OFFENSE DIVISION: | DATE | | DATE | LOC. | HEARING REFERRED TO |
|---|---|---|---|---|---|---|
| ☐ ADMINISTRATIVE ☐ SERIOUS | | | M | CLASSIFIED BY (Typed Name and Signature) SANDERS, Correctional Captain | | ☐ HO ☐ SHO ☐ SC ☐ FC |

COPIES GIVEN INMATE BEFORE HEARING

---

DEPARTMENT OF CORRECTIONS

STATE OF CALIFORNIA
## NOTICE OF PENDING CDC-115
CDC 804 (Rev 08/00)

**CHIEF DISCIPLINARY OFFICER:** *This form is to be filled in at the time the CDC-115 is typed. The form is then immediately routed to the Records Office.*

**RECORDS OFFICER:** *Attach to the inside top-right of the inmate's Central File. Remove upon filing of finalized CDC-115.*

THE BELOW INDICATED INMATE HAS RECEIVED A RULES VIOLATION REPORT (CDC-115) WHICH IS CURRENTLY BEING PROCESSED

| INMATE NUMBER | NAME | HOUSING | CDC-115 LOG NUMBER |
|---|---|---|---|
| V83124 | HERNANDEZ | A3-016U | FA-06-09-032 |
| DATE OF CDC-115 | VIOLATED RULE NUMBER AND TITLE | | INCIDENT TYPE |
| 09/16/06 | CCR 3005(c) ATTEMPTED MURDER | | SERIOUS |

ISL INFORMATION

| ☐ RECISSION HEARING PENDING | RELEASE DATE | | BOARD DATE |
|---|---|---|---|

DSL INFORMATION

| MINIMUM DATE EPRD | The disciplinary may result in the loss of the below indicated type and amount of credit: | | | | | |
|---|---|---|---|---|---|---|
| | Div. A-1 181-360 ☐ | Div. A-2 151-180 ☐ | Div. B 121-150 ☐ | Div. C 91-120 ☐ | Div. D 61-90 ☐ | Div. E 31-60 ☐ |
| MAXIMUM DSL DATE | | | | | | |

| ☐ D.A. REFERRAL | ☐ RELEASE DATE WITHIN 90 DAYS |
|---|---|

## CDC-115 PENDING

B
0-32
Pg. 34

DEPARTMENT OF CORRECTIONS

PAGE 1 OF 1

STATE OF CALIFORNIA

## RULES VIOLATION REPORT - PART C

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| V83124 | HERNANDEZ | FA-06-09-032 | CENTINELA | 09/16/06 |

☐ SUPPLEMENTAL   ☒ CONTINUATION OF:   ☒ 115 CIRCUMSTANCES   ☐ HEARING   ☐ IE REPORT   ☐ OTHER_____

I ran behind him while continuing to give him orders to get down, I caught up to him while yelling orders to get down with negative results. So I struck him in his right thigh area utilizing a forward strike with negative results. I kept yelling orders to get down which he refused, so I struck him again in his right thigh area, utilizing a forward strike, while still running. He fell to the floor while throwing the weapon to inmate LEON, F27377, A3-001L. Inmate LEON caught the weapon and ran with it towards building A3, where he threw it towards the roof top of A3. I placed inmate HERNANDEZ in restraints while watching inmate LEON's actions. I conducted a clothed body search on HERNANDEZ and then escorted him to 'A' Program Office. I then escorted HERNANDEZ to Facility MTA for medical evaluation. I read inmate HERNANDEZ and inmate LEON their Miranda Rights. Neither inmate had any question or comments. NOTE: When inmate HERNANDEZ fell to the floor I lost my balance and fell on my right knee.

Inmate HERNANDEZ is aware of this report. Inmate HERNANDEZ is not a participant in the Mental Health Services Delivery System at the CCCMS/EOF/MHCB Level of care.

| SIGNATURE OF WRITER | | DATE SIGNED |
|---|---|---|
| J. TRUJILLO, Correctional Officer | | |
| GIVEN BY: (Staff's Signature) | DATE SIGNED | TIME SIGNED |

☐ COPY OF CDC 115-C GIVEN TO INMATE

B

Pg 35

<u>NOTICE OF RIGHTS PURSUANT TO THE MIRANDA DECISION</u>

Inmate  LEON                      , CDC#  F27377          , I wish to ask you some
questions because you are suspected of    ATTEMPTED MURDER

and it is my duty to inform you that:

1.  You have the right to remain silent.

2.  If you give up that right, anything you say can and will
    be used against you in a court of law.

3.  You have the right to talk to an attorney and to have
    that attorney present with you while you are being
    questioned.

4.  If you cannot afford to hire an attorney, one will be
    appointed to represent you before any questioning, if you
    wish one.

5.  If you chose to answer any questions, you may stop the
    interview/questioning at any time.

| 09/16/06 | 14/0 | | C/O |
| --- | --- | --- | --- |
| DATE | TIME | SIGNATURE | TITLE |

1.  Do you understand each of these rights that I have read
    to you?

                                                         YES/NO

2.  Having been informed of these rights, and having these
    rights in mind, are you willing to talk to us?

                                                         YES/NO

                    "Refused To Sign"

| 09/16/06 | | | F27377 |
| --- | --- | --- | --- |
| DATE | TIME | SIGNATURE | CDC# |

WITNESSED BY:

| D. Moore | D. Moore | C/O | 9/16/06 |
| --- | --- | --- | --- |
| SIGNATURE | NAME/PRINTED | TITLE | DATE |

|  |  |  | 09/16/06 |
| --- | --- | --- | --- |
| SIGNATURE | NAME/PRINTED | TITLE | DATE |

INMATE's STATEMENT:        "No Comments"

804 TO RECORDS ON: _____ BY: _____

DEPARTMENT OF CORRECTIONS

STATE OF CALIFORNIA
# RULES VIOLATION REPORT

| | | RELEASE/BOARD DATE | INST. CENTINELA | HOUSING NO. A3-001L | LOG NO. FA-06-09-0 |
|---|---|---|---|---|---|
| CDC NUMBER F27377 | INMATE'S NAME LEON | | | | |
| | | SPECIFIC ACTS ATTEMPTED MURDER | LOCATION FAC. A YARD | DATE 09/16/06 | TIME 1305 HOUR |
| VIOLATED RULE NO(S). CCR 3005(c) | | | | | |

CIRCUMSTANCES
On Saturday, September 16, 2006, at approximately 1305 hours, while performing my duties a
Facility A, A5 S & E, I observed inmate HERNANDEZ, V83124, A3-016U, attack inmate MIRANDA
V63893, A5-136L (An Ad/Seg. Inmate), with an inmate manufactured weapon. I was assisting Offic
Lopez escort MIRANDA back to building A5 from Facility 'A' visiting. When we reached the volle
ball area on the track I heard what appeared to be someone running behind me. I turned aroun
and I saw inmate HERNANDEZ running towards us. I extended my state issued expandable bato
while ordering HERNANDEZ to get down with negative results. He ran around myself and Office
Lopez to reach MIRANDA and he started swinging what appeared to be an inmate manufactured weapo
in his right hand, towards MIRANDA's head and torso area. I then struck HERNANDEZ once i
his upper right arm utilizing a forward strike. I was aiming for his right hand because h
was holding the weapon with his right hand. I ordered him to get down again and he refuse
and started running in a direction towards the eastern soccer field goal.
Continued on Part C

| REPORTING EMPLOYEE (Typed Name and Signature) ► J. TRUJILLO, Correctional Officer | DATE | ASSIGNMENT A5 S & E | RDO'S M/TU |
|---|---|---|---|
| REVIEWING SUPERVISOR'S SIGNATURE ► B. CLARK, Correctional Sergeant | DATE | □ INMATE SEGREGATED PENDING HEARING N/A | N/A |
| | | DATE                             LOC. | HEARING REFERRED TO |
| CLASSIFIED □ ADMINISTRATIVE □ SERIOUS | OFFENSE DIVISION: _____ | DATE | M. SANDERS, Correctional Captain ► | □ HO   □ SHO   □ SC |
| | | COPIES GIVEN INMATE BEFORE HEARING | |
| □ CDC 115 | BY: (STAFF'S SIGNATURE) | DATE | TIME | TITLE OF SUPPLEMENT | |

DEPARTMENT OF CORRECTIC

STATE OF CALIFORNIA
## NOTICE OF PENDING CDC-115
CDC 804 (Rev 08/00)

**CHIEF DISCIPLINARY OFFICER:** *This form is to be filled in at the time the CDC-115 is typed. The form is then immediately route
to the Records Office.*

**RECORDS OFFICER:** *Attach to the inside top-right of the inmate's Central File. Remove upon filing of finalized CDC-115.*

THE BELOW INDICATED INMATE HAS RECEIVED A RULES VIOLATION REPORT (CDC-115) WHICH IS CURRENTLY BEING PROCESSED

| | | HOUSING A3-001L | CDC-115 LOG NUM FA-06-09-03 |
|---|---|---|---|
| INMATE NUMBER F27377 | NAME LEON | | INCIDENT TYPE SERIOUS |
| DATE OF CDC-115 09/16/06 | VIOLATED RULE NUMBER AND TITLE CCR 3005(c) ATTEMPTED MURDER | | |

| ISL INFORMATION | BOARD DATE |
|---|---|

□ RECISSION HEARING PENDING    RELEASE DATE

DSL INFORMATION
The disciplinary may result in the loss of the below indicated type and amount of credit:

| | Div. A-1 181-360 | Div. A-2 151-180 | Div. B 121-150 | Div. C 91-120 | Div. D 61-90 | Div. E 31-60 | Div. F 0-30 |
|---|---|---|---|---|---|---|---|
| MINIMUM DATE EPRD | | □ | □ | □ | □ | □ | □ |
| MAXIMUM DSL DATE | □ | | | | | | |

□ RELEASE DATE WITHIN 90 DAYS

☒ D.A. REFERRAL

*(handwritten: B 31 P8)*

# CDC-115 PENDING

DEPARTMENT OF CORRECTIONS
PAGE 1 OF 1

STATE OF CALIFORNIA

## RULES VIOLATION REPORT - PART C

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| F27377 | LEON | FA-06-09-033 | CENTINELA | 09/16/06 |

☐ SUPPLEMENTAL   ☒ CONTINUATION OF:   ☒ 115 CIRCUMSTANCES   ☐ HEARING   ☐ IE REPORT   ☐ OTHER_____

I ran behind him while continuing to give him orders to get down, I caught up to him while yelling orders to get down with negative results. So I struck him in his right thigh area utilizing a forward strike with negative results. I kept yelling orders to get down which he refused, so I struck him again in his right thigh area, utilizing a forward strike, while still running. He fell to the floor while throwing the weapon to inmate LEON, F27377, A3-001L. Inmate LEON caught the weapon and ran with it towards building A3, where he threw it towards the roof top of A3. I placed inmate HERNANDEZ in restraints while watching inmate LEON's actions. I conducted a clothed body search on HERNANDEZ and then escorted him to 'A' Program Office. I then escorted HERNANDEZ to Facility MTA for medical evaluation. I read inmate HERNANDEZ and inmate LEON their Miranda Rights. Neither inmate had any question or comments. NOTE: When inmate HERNANDEZ fell to the floor I lost my balance and fell on my right knee.

Inmate HERNANDEZ is aware of this report. Inmate HERNANDEZ is not a participant in the Mental Health Services Delivery System at the CCCMS/EOP/MHCB Level of care.

| SIGNATURE OF WRITER | | DATE SIGNED |
|---|---|---|
| J. TRUJILLO, Correctional Officer | | 38 |
| GIVEN BY: (Staff's Signature) | DATE SIGNED | TIME SIGNED |

☐ COPY OF CDC 115-C GIVEN TO INMATE

CALIFORNIA

**VIOLATION REPORT - PART C**

DEPARTMENT OF CORRECTIONS
PAGE 1 OF 1

| CDC NUMBER | INMATE'S NAME | | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|---|
| 27377 | LEON | | FA-06-09-033 | CENTINELA | 09/16/06 |

| ☒ SUPPLEMENTAL | ☐ CONTINUATION OF: | ☒ 115 CIRCUMSTANCES | ☐ HEARING | ☐ IE REPORT | ☐ OTHER |
|---|---|---|---|---|---|

On 09/16/06, at approximately 1305 hours, while performing my duties as A5 Infirmary escort, while escorting inmate MIRANDA, V63893, A5-136L (An Ad/Seg., Inmate) back from Facility 'A' Visiting, I observed inmate HERNANDEZ, V83124, A3-016U, attack inmate MIRANDA with an inmate manufactured weapon. As we reached the volleyball court area on the track, I heard Officer Trujillo, ordering inmate HERNANDEZ to get down with negative results. Inmate HERNANDEZ ran around Officer Trujillo and myself to reach inmate MIRANDA and began to swing what appeared to be an inmate manufactured weapon in his right hand. I observed Officer Trujillo strike inmate HERNANDEZ once in his upper right arm utilizing a forward spin while giving orders to get down. Inmate HERNANDEZ refused to get down and started running towards the eastern soccer field goal. Officer Trujillo ran behind him giving him a direct order to get down with negative results. Using a forward spin Officer Trujillo struck inmate HERNANDEZ two (2) times in the upper right thigh area. Inmate HERNANDEZ then threw the weapon to inmate LEON, F27377, A3-001L, and complied with Officer Trujillo's order to get down. Inmate LEON caught the weapon and ran with it towards building A3, where he threw it towards the roof top. I ordered inmate MIRANDA to have a seat on the curb and wait for the MTA to come and evaluate his wounds.

| | SIGNATURE OF WRITER | DATE SIGNED |
|---|---|---|
| | M. LOPEZ, Correctional Officer | 7-18-06 |
| ☒ COPY OF CDC 115-C GIVEN TO INMATE | GIVEN BY: (Staff's Signature) | DATE SIGNED 9/20/06 | TIME SIGNED 0508 |

CDC 115-C (5/95)

OSP 99 25082

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

PAGE 1 OF 1

## VIOLATION REPORT - PART C

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| F27377 | LEON | FA-06-09-033 | CENTINELA | 09/16/06 |

☐ SUPPLEMENTAL    ☐ CONTINUATION OF:    ☐ 115 CIRCUMSTANCES    ☐ HEARING    ☐ IE REPORT    ☐ OTHER _____

On 09/16/06, at approximately 1305 hours, while assigned as A5 Control Booth Officer I heard the yard put down by radio. I proceeded to the back window and observed an inmate running across the yard fro the vicinity of work change in the direction of buildings A3 and A4 with yard staff also running and ordering him to stop and get down. The inmate disregarded the orders and kept running. Once in the vicinity of the handball courts nearest the track I observed the inmate throw an object over the fence between buildings A3 and A4. Once the inmate did that he got down. Responding staff took him into custody.

| SIGNATURE OF WRITER | DATE SIGNED |
|---|---|
| M. TOWNSEND, Correctional Officer | 9-16 |
| GIVEN BY: (Staff's Signature) | DATE SIGNED | TIME SIGNED |
| | 9/20/06 | 0755 |

☑ COPY OF CDC 115-C GIVEN TO INMATE

**B** 40

CDC 115-C (5/95)

OSP 99 25082

CALIFORNIA                                 DEPARTMENT OF CORRECTIONS

**VIOLATION REPORT - PART C**                 PAGE 1 OF 1

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| 7377 | LEON | FA-06-09-03?? | CENTINELA | 09/16/06 |

| ☐ SUPPLEMENTAL | ☐ CONTINUATION OF: | ☒ 115 CIRCUMSTANCES | ☐ HEARING | ☐ IE REPORT | ☐ OTHER_____ |

On September 16, 2006, at approximately 1305 hours, while performing my duties as A5 Floor Officer #2, I heard a personal alarm on A-Yard over the radio. It was announced that a weapon was thrown over the fence between building #3 and #4. I was instructed by Sergeant Mendez to go look behind those buildings. After searching between the buildings I found and retrieved an inmate manufactured weapon. The weapon was between building #3 and #4 next to the curb just past the generators. I took photo copies with the weapon and ruler. I then placed the weapon in evidence locker #7 in Central Control. The weapon is approximately 6" inches long and 1 quarter inch in diameter, made of round metal stock, sharpened to a point at one end with a handle at the other end of the weapon fashioned by torn bed sheets.

| | SIGNATURE OF WRITER /CS | DATE SIGNED 9-18-06 |
|---|---|---|
| | T. HATCH, Correctional Officer | |



| ☒ COPY OF CDC 115-C GIVEN TO INMATE | GIVEN BY: (Staff's Signature) | DATE SIGNED 9/20/06 | TIME SIGNED |
|---|---|---|---|



CDC 115-C (5/95)                                          OSP 99 25082

TO RECORDS ON: _____ BY: _____

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

# RULES VIOLATION REPORT

| CDC NUMBER | INMATE'S NAME | RELEASE/BOARD DATE | INST. | HOUSING NO. | LOG NO. |
|---|---|---|---|---|---|
| D1377 | LEON | 00-13-07 | CENTINELA FAC. A | A5-001L | FA-06-09-035 |

| VIOLATED RULE NO(S). | SPECIFIC ACTS | LOCATION | DATE | TIME |
|---|---|---|---|---|
| CCR 3005(c) | ATTEMPTED MURDER | YARD | 09/16/06 | 1305 HOURS |

CIRCUMSTANCES
On Saturday, September 16, 2006, at approximately 1305 hours, while performing my duties as Facility A, A5 S & E, I observed inmate HERNANDEZ, V83124, A3-016U, attack inmate MIRANDA, V63893, A5-136L (An Ad/Seg. Inmate), with an inmate manufactured weapon. I was assisting Office Lopez escort MIRANDA back to building A5 from Facility 'A' visiting. When we reached the volley ball area on the track I heard what appeared to be someone running behind me. I turned around and I saw inmate HERNANDEZ running towards us. I extended my state issued expandable baton while ordering HERNANDEZ to get down with negative results. He ran around myself and Officer Lopez to reach MIRANDA and he started swinging what appeared to be an inmate manufactured weapon in his right hand, towards MIRANDA's head and torso area. I struck HERNANDEZ once in his upper right arm utilizing a forward strike. I was aiming for his right hand because he was holding the weapon with his right hand. I ordered him to get down again and he refused and started running in a direction towards the eastern soccer field goal.
Continued on Part C

| REPORTING EMPLOYEE (Typed Name and Signature) | DATE 9-18-06 | ASSIGNMENT A5 S & E | RDO'S M/TU |
|---|---|---|---|
| J. TRUJILLO, Correctional Officer | | | |

| REVIEWING SUPERVISOR'S SIGNATURE | DATE | ☐ INMATE SEGREGATED PENDING HEARING | |
|---|---|---|---|
| B. CLARK, Correctional Sergeant | | N/A | N/A |
| | | DATE | LOC. |

| CLASSIFIED | OFFENSE DIVISION: | DATE | CLASSIFIED BY (Typed Name and Signature) | HEARING REFERRED TO |
|---|---|---|---|---|
| ☐ ADMINISTRATIVE | A-1 | 9-19-06 | ____ nal Captain | ☐ HO ☐ SHO ☐ SC ☐ FC |
| ☒ SERIOUS | | | | |

COPIES GIVEN INMATE BEFORE HEARING

| ☒ CDC 115 | BY: (STAFF'S SIGNATURE) | DATE 9/20/06 | TIME 0950 | TITLE OF SUPPLEMENT | | |
|---|---|---|---|---|---|---|
| ☐ INCIDENT REPORT LOG NUMBER: CDFA 06 09 003 | BY: (STAFF'S SIGNATURE) | DATE 9/20/06 | TIME 0950 | BY: (STAFF'S SIGNATURE) | DATE 9/20/06 | TIME 0950 |

HEARING This hearing convened on 09/23/06, at approximately 1850 hours, I introduced myself to inmate LEON as the Senior Hearing Officer. This inmate is not a participant in the Mental Health Services Delivery System at the CCCMS/EOP/MHCB level of care. Inmate LEON stated that his health was good. Inmate LEON acknowledged receipt of this (see attached CDC-115-A; CDC-115 PartC; Investigative Employee Report; 837 Crime Incident Report).

These reports as well as the disciplinary charge of ATTEMPTED MURDER were reviewed with inmate LEON at this hearing. Inmate LEON stated that he understood all documentation and was prepared to begin.

DUE PROCESS: This disciplinary was served to inmate LEON within 15 days of discovery and the hearing was held within thirty days of service. Time constraints have been met. There are no due process issues.

DISTRICT ATTORNEY: This matter was referred for felony prosecution. Inmate LEON did not request this hearing be postponed pending outcome of the referral.
Continued on part C

| REFERRED TO ☐ CLASSIFICATION ☐ BPT/NAEA | | | |
|---|---|---|---|
| ACTION BY: (TYPED NAME) CALDWELL, Correctional Lieutenant | SIGNATURE | DATE 9-15 | TIME |
| REVIEWED BY: (SIGNATURE) SANDERS, Captain | DATE 9/26/06 | CHIEF DISCIPLINARY OFFICER'S SIGNATURE D. PARAMO, AW, Complex I | DATE 10/6/06 TIME |
| ☐ COPY OF CDC 115 GIVEN INMATE AFTER HEARING | BY: (STAFF'S SIGNATURE) | | 11/14/06 TIME 3:02 |

CDC 115 (7/88)

FORNIA                                                    DEPARTMENT OF CORRECTIONS
VIOLATION REPORT - PART C                                 PAGE ___ OF ___

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| 7377 | LEON | FA-06-09-032 | CENTINELA | 09/16/06 |

☐ SUPPLEMENTAL   ☒ CONTINUATION OF:   ☒ 115 CIRCUMSTANCES   ☐ HEARING   ☐ IE REPORT   ☐ OTHER_____

I ran behind him while continuing to give him orders to get down, I caught up to him while yelling orders to get down with negative results. So I struck him in his right thigh area utilizing a forward strike with negative results. I kept yelling orders to get down which he refused, so I struck him again in his right thigh area, utilizing a forward strike, while still running. He fell to the floor while throwing the weapon to inmate LEON, F27377, A3-001L. Inmate LEON caught the weapon and ran with it towards building A3, where he threw it towards the roof top of A3. I placed inmate HERNANDEZ in restraints while watching inmate LEON's actions. I conducted a clothed body search on HERNANDEZ and then escorted him to 'A' Program Office. I then escorted HERNANDEZ to Facility MTA for medical evaluation. I read inmate HERNANDEZ and inmate LEON their Miranda Rights. Neither inmate had any question or comments. NOTE: When inmate HERNANDEZ fell to the floor I lost my balance and fell on my right knee.

Inmate HERNANDEZ is aware of this report. Inmate HERNANDEZ is not a participant in the Mental Health Services Delivery System at the CCCMS/EOP/MHCB Level of care.

| | | | |
|---|---|---|---|
| SIGNATURE OF WRITER | | DATE SIGNED | |
| J. TRUJILLO, Correctional Officer | | 9-18-06 | |
| GIVEN BY: (Staff's Signature) | | DATE SIGNED | TIME SIGNED |
| ☒ COPY OF CDC 115-C GIVEN TO INMATE | | 9/20/06 | 0955 |

**B**

**43**

CDC 115-C (5/95)                                        OSP 99 25082

...FORNIA                                                                    DEPARTMENT OF CORRECTIONS
.. VIOLATION REPORT - PART C                                                 PAGE ___1___ OF ___3___

| DOC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| 27377 | LEON | FA-06-09-03?? | CENTINELA | 09/23/06 |

| ☐ SUPPLEMENTAL | ☒ CONTINUATION OF: | ☐ 115 CIRCUMSTANCES | ☒ HEARING | ☐ IE REPORT | ☐ OTHER_____ |

**STAFF ASSISTANT:** Was not assigned. Inmate LEON is not illiterate (claims GED GPL), can read and write, is English speaking, the issue is not complex, he is not a participant in the Mental Health Services Delivery System, and did not require a confidential relationship in preparing his defense.

**INVESTIGATIVE EMPLOYEE:** Was assigned, the issue is not complex, his housing status did preclude his gathering of evidence, additional information was not necessary for a fair hearing. Inmate LEON received a copy of the I.E. Report an had no objection to the report.

**PLEA:** Inmate LEON plead **GUILTY**, and gave the following testimony as his defense:" I'm guilty as charged". Inmate LEON told this S.H.O. with C/O F. SOTO also present for security purposes only.

**WITNESSES:** Inmate LEON did not request any witnesses to include the R.E. C/O TRUJILLO.

**FINDINGS:** Inmate LEON was found **GUILTY** as charged of violating California Code of Regulations, 3005(c), a Division "A-1" Offense; the specific charge of ATTEMPTED MURDER. The preponderance of evidence submitted and considered in reaching this finding does substantiates the charge and supports the factors in aggravation.

This finding is based on the following:
.    The Rules Violation Report written by Correctional Officer J. TRUJILLO stating; On Saturday, September 16, 2006, at approximately 1305 hours, while performing my duties as Facility A, A5 S & E, I observed inmate HERNANDEZ, V83124, A3-016U, attack inmate MIRANDA, V63893, A5-136L (An Ad/Seg. Inmate), with an inmate manufactured weapon. I was assisting Office Lopez escort MIRANDA back to building A5 from Facility 'A' visiting. When we reached the volley ball area on the track I heard what appeared to be someone running behind me. I turned around and I saw inmate HERNANDEZ running towards us. I extended my state issued expandable baton while ordering HERNANDEZ to get down with negative results. He ran around myself and Officer Lopez to reach MIRANDA and he started swinging what appeared to be an inmate manufactured weapon in his right hand, towards MIRANDA's head and torso area. I then struck HERNANDEZ once in his upper right arm utilizing a forward strike. I was aiming for his right hand because he was holding the weapon with his right hand. I ordered him to get down again and he refused and started running in a direction towards the eastern soccer field goal. I ran behind him while continuing to give him orders to get down, I caught up to him while yelling orders to get down with negative results. So I struck him in his right thigh area utilizing a forward strike with negative results. I kept yelling orders to get down which he refused, so I struck him again in his right thigh area, utilizing a forward strike, while still running. He fell to the floor while throwing the weapon to inmate LEON, F27377, A3-001L. Inmate LEON caught the weapon and ran with it towards building A3, where he threw it towards the roof top of A3. I placed inmate HERNANDEZ in restraints while watching inmate LEON's actions.
                              Continued on Part C

| SIGNATURE OF WRITER | | DATE SIGNED |
|---|---|---|
| F. CALDWELL  Lieutenant | | |
| COPY OF CDC 115-C GIVEN TO INMATE | GIVEN BY: (Staff's Signature) | DATE SIGNED | TIME SIGNED |

DC 115-C (5/95)                                                              OSP 99 25082

ORNIA
VIOLATION REPORT - PART C

DEPARTMENT OF CORRECTIONS
PAGE 2 OF 3

| DC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| F27377 | LEON | FA-06-09-033 | CENTINELA | |

SUPPLEMENTAL [X] CONTINUATION OF: [ ] 115 CIRCUMSTANCES [X] HEARING [ ] IE REPORT [ ] OTHER

I conducted a clothed body search on HERNANDEZ and then escorted him to 'A' Program Office. I then escorted HERNANDEZ to Facility MTA for medical evaluation. I read inmate HERNANDEZ and inmate LEON their Miranda Rights. Neither inmate had any question or comments. NOTE: When inmate HERNANDEZ fell to the floor I lost my balance and fell on my right knee..

B. The Investigative Employee Report which states: On 09/21/06, I informed inmate LEON that I was assigned as the Investigative Employee. I explained to inmate LEON that my function was to gather information, question staff and inmates, screen witnesses, and/or complete and submit a written report to the Senior Hearing Officer. Inmate LEON stated that he understood my position as the Investigative Employee and DID NOT have any objections to my assignment.

INMATE STATEMENT: LEON, F27377; No comment.

REPORTING EMPLOYEE'S STATEMENT: C/O J. Trujillo: "I was assisting C/O Lopez escorting inmate Miranda from A-visiting, during the escort I observed inmate LEON attack inmate Miranda with an inmate manufactured weapon. I utilized my expandable baton to stop the attack after inmate LEON fell on the ground he threw the weapon to inmate Leon, inmate Leon caught it and run towards building #3. Inmate Leon threw the weapon towards the roof top. I also placed handcuffs on inmate LEON."

C. The Supplemental Report written by Correctional Officer T. HATCH, stating: "On September 16, 2006, at approximately 1305 hours, while performing my duties as A5 Floor Officer #2, I heard a personal alarm on A-Yard over the radio. It was announced that a weapon was thrown over the fence between building #3 and #4. I was instructed by Sergeant Mendez to go look behind those buildings. After searching between the buildings I found and retrieved an inmate manufactured weapon. The weapon was between building #3 and #4 next to the curb just past the generators. I took photo copies with the weapon and ruler. I then placed the weapon in evidence locker #7 in Central Control. The weapon is approximately 6" inches long and 1 quarter inch in diameter, made of round metal stock, sharpened to a point at one end with a handle at the other end of the weapon fashioned by torn bed sheets.

D. Inmate LEON's admission of guilt / statement made at the hearing including; "I plead guilty as charged." Inmate LEON told this SHO with C/O, F. Soto also present for security purposes only.

Continued on Part C

| SIGNATURE OF WRITER | DATE SIGNED |
|---|---|
| F. CALDWELL, Correctional Lieutenant | |
| COPY OF CDC 115-C GIVEN TO INMATE | GIVEN BY: (Staff's Signature) | DATE SIGNED | TIME SIGNED |

DC 115-C (5/95)

OSP 99 25082

CORNIA

**VIOLATION REPORT - PART C**

DEPARTMENT OF CORRECTIONS
PAGE 3 OF 3

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| F27377 | LEON | FA-06-09-033 | CENTINELA | 09/29/06 |

☐ SUPPLEMENTAL  ☒ CONTINUATION OF:  ☐ 115 CIRCUMSTANCES  ☒ HEARING  ☐ IE REPORT  ☐ OTHER

SHO NOTES: The SHO notes after a review of all the evidence, the RVR authored by C/O, J. Trujillo does not include a thorough description of the weapon used in this incident. However after careful consideration of all the reports submitted the SHO finds that C/O, T. Hatch sufficiently describes the weapon used in his supplemental report. Therefore the SHO has determined to use C/O, Hatch's supplemental report as evidence to support the findings of guilt in this case.

DISPOSITION:
- Assessed: Three Hundred and Sixty (360) days forfeiture of behavioral credits consistent with a Division A-1 Offense (Refer CCR §3323).
- Referred to ICC for program review.

Inmate LEON, F27377, does not consider inmate MIRANDA, V63893, an enemy.

Inmate LEON was informed that he would receive a final copy upon review by the Chief Disciplinary Officer.

Inmate LEON was advised of his rights to appeal the findings of this hearing and that the first level of appeal has been eliminated on disciplinary issues.

Inmate LEON was informed that a division A-1 offenses has no credit restoration.

F. CALDWELL, Correctional Lieutenant

| SIGNATURE OF WRITER | DATE SIGNED |
|---|---|
| F. CALDWELL, Correctional Lieutenant | |

| | GIVEN BY: (Staff's Signature) | DATE SIGNED | TIME SIGNED |
|---|---|---|---|
| ☐ COPY OF CDC 115-C GIVEN TO INMATE | | | |

DC 115-C (5/95)

OSP 99 25082

CALIFORNIA ... DEPARTMENT OF CORRECTIONS AND REHABILITATION

**L REPORT OF INJURY**
**USUAL OCCURRENCE**

| | | | | | | DATE 9/16/06 |
|---|---|---|---|---|---|---|
| INSTITUTION insp | FACILITY/UNIT H yard | REASON FOR REPORT (circle) USE OF FORCE | INJURY UNUSUAL OCCURRENCE | ON THE JOB INJURY PRE AD/SEG ADMISSION | | |

| | NAME | | | CDC NUMBER | HOUSING LOC. | NEW HOUSING LOC. |
|---|---|---|---|---|---|---|
| SECTION FOR ATE ONLY | LAST Hernandez, | FIRST H. | | V-83124 | A3-D16Q | N/A |
| IS SECTION FOR STAFF ONLY | NAME LAST | FIRST | | BADGE # | RANK/CLASS | ASSIGNMENT/RDOs |
| THIS SECTION FOR VISITOR ONLY | NAME LAST | FIRST | MIDDLE | DOB | | OCCUPATION |
| | HOME ADDRESS | CITY | STATE | ZIP | | HOME PHONE |

| PLACE OF OCCURRENCE H yard | DATE/TIME OF OCCURRENCE 9/16/06 1250 | NAME OF WITNESS(ES) N/A | | | | |
|---|---|---|---|---|---|---|
| TIME NOTIFIED 1251 | TIME SEEN 1315 | ESCORTED BY Trujillo / Martin | MODE OF ARRIVAL AMBULATORY   LITTER   WHEELCHAIR   ON SITE | | AGE H | RACE 21 | SEX M |

BRIEF STATEMENT IN SUBJECT'S WORDS OF THE CIRCUMSTANCES OF THE INJURY OR UNUSUAL OCCURRENCE
" No comment."



| INJURIES FOUND? (YES)/ NO | |
|---|---|
| Abrasion/Scratch | 1 |
| Active Bleeding | 2 |
| Broken Bone | 3 |
| Bruise/Discolored Area | 4 |
| Burn | 5 |
| Dislocation | 6 |
| Dried Blood | 7 |
| Fresh Tattoo | 8 |
| Cut/Laceration/Slash | 9 |
| O.C. Spray Area | 10 |
| Pain | 11 |
| Protrusion | 12 |
| Puncture | 13 |
| Reddened Area | 14 |
| Skin Flap | 15 |
| Swollen Area | 16 |
| Other | 17 |
| | 18 |
| | 19 |

| | |
|---|---|
| O.C. SPRAY EXPOSURE? | YES (NO) |
| DECONTAMINATED? | YES (NO) |
| Self-decontamination instructions given? | YES (NO) |
| Refused decontamination? | YES (NO) |
| Q 15 min. checks | |
| Staff issued exposure packet? | YES (NO) |

| RN NOTIFIED/TIME N/A | PHYSICIAN NOTIFIED/TIME N/A |
|---|---|

| TIME/DISPOSITION 1325. Returned to custody staff. | REPORT COMPLETED BY/TITLE (PRINT AND SIGN) Bertrand, J.   MTA. | BADGE # 5807 | RDOs T/l |
|---|---|---|---|

(Medical data is to be included in progress note or emergency care record filed in UHR)

CDCR 7219 (Rev. 11/05)   DISTRIBUTION:   ORIGINAL - Custody   CANARY - Inmate/Employee   PINK - Health and Safety / RTW Coordinator (only work related injury)

STATE OF CALIFORNIA

**MEDICAL REPORT OF INJURY
OR UNUSUAL OCCURRENCE**

DEPARTMENT OF CORRECTIONS AND REHABILITATION

| NAME OF INSTITUTION | FACILITY/UNIT | REASON FOR REPORT *(circle)* | INJURY | ON THE JOB INJURY | DATE |
|---|---|---|---|---|---|
| CASP | A yard | USE OF FORCE | (UNUSUAL OCCURRENCE) | PRE AD/SEG ADMISSION | 9/16/06 |

| THIS SECTION FOR INMATE ONLY | NAME    LAST  Leon, | FIRST  R. | CDC NUMBER  F-27377 | HOUSING LOC.  A3-01L | NEW HOUSING LOC.  N/A. |
|---|---|---|---|---|---|
| THIS SECTION FOR STAFF ONLY | NAME    LAST | FIRST | BADGE # | RANK/CLASS | ASSIGNMENT/RDOs |
| THIS SECTION FOR VISITOR ONLY | NAME    LAST | FIRST  MIDDLE | DOB | | OCCUPATION |
| | HOME ADDRESS  CITY | STATE | ZIP | | HOME PHONE |

| PLACE OF OCCURRENCE  A yard | DATE/TIME OF OCCURRENCE  9/16/06 1250 | NAME OF WITNESS(ES)  N/A. | | | | | |
|---|---|---|---|---|---|---|---|
| TIME NOTIFIED  1251 | TIME SEEN  1328 | ESCORTED BY  C/o Martin | MODE OF ARRIVAL *(circle)*  (AMBULATORY)  LITTER  WHEELCHAIR  ON SITE | AGE  21 | RACE  B | SEX  M. |

BRIEF STATEMENT IN SUBJECT'S WORDS OF THE CIRCUMSTANCES OF THE INJURY OR UNUSUAL OCCURRENCE

"No comment."

| INJURIES FOUND?  YES (NO) | |
|---|---|
| Abrasion/Scratch | 1 |
| Active Bleeding | 2 |
| Broken Bone | 3 |
| Bruise/Discolored Area | 4 |
| Burn | 5 |
| Dislocation | 6 |
| Dried Blood | 7 |
| Fresh Tattoo | 8 |
| Cut/Laceration/Slash | 9 |
| O.C. Spray Area | 10 |
| Pain | 11 |
| Protrusion | 12 |
| Puncture | 13 |
| Reddened Area | 14 |
| Skin Flap | 15 |
| Swollen Area | 16 |
| Other | 17 |
| | 18 |
| | 19 |

| | |
|---|---|
| O.C. SPRAY EXPOSURE? | YES / (NO) |
| DECONTAMINATED? | YES / (NO) |
| Self-decontamination instructions given? | YES / (NO) |
| Refused decontamination? | YES / (NO) |
| Q 15 min. checks | |
| Staff issued exposure packet? | YES / (NO) |

| RN NOTIFIED/TIME  N/A. | PHYSICIAN NOTIFIED/TIME  N/A. |
|---|---|

| TIME/DISPOSITION  1335; returned to custody staff. | REPORT COMPLETED BY/TITLE  (PRINT AND SIGN)  Beffrey, J. | BADGE #  8418 | RDOs |
|---|---|---|---|

*(Medical data is to be included in progress note or emergency care record filed in UHR)*

**CDCR 7219 (Rev. 11/05)    DISTRIBUTION:  ORIGINAL - Custody    CANARY - Inmate/Employee    PINK - Health and Safety / RTW Coordinator (only work related injury)**

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION

**MEDICAL REPORT OF INJURY**
**OR UNUSUAL OCCURRENCE**

| INSTITUTION | FACILITY/UNIT | REASON FOR REPORT (circle) | | ON THE JOB INJURY | DATE |
|---|---|---|---|---|---|
| Censp. | A yard | INJURY   USE OF FORCE   (UNUSUAL OCCURRENCE) | | PRE AD/SEG ADMISSION | 9/16/06 |

| THIS SECTION FOR INMATE ONLY | NAME | LAST Miranda | FIRST | CDC NUMBER V-63893 | HOUSING LOC. A5-136 | NEW HOUSING LOC. N/A |
|---|---|---|---|---|---|---|
| THIS SECTION FOR STAFF ONLY | NAME | LAST | FIRST | BADGE # | RANK/CLASS | ASSIGNMENT/RDOs |
| THIS SECTION FOR VISITOR ONLY | NAME | LAST | FIRST   MIDDLE | DOB | OCCUPATION | |
| | HOME ADDRESS | | CITY | STATE | ZIP | HOME PHONE |

| PLACE OF OCCURRENCE A yard | DATE/TIME OF OCCURRENCE 9/16/06  1250 | NAME OF WITNESS(ES) N/A | | | | |
|---|---|---|---|---|---|---|
| TIME NOTIFIED 1251 | TIME SEEN 1253 | ESCORTED BY Lopez | MODE OF ARRIVAL (circle)   (AMBULATORY)   LITTER   ON SITE | WHEELCHAIR | AGE | RACE H | SEX M |

BRIEF STATEMENT IN SUBJECT'S WORDS OF THE CIRCUMSTANCES OF THE INJURY OR UNUSUAL OCCURRENCE

"I don't know why they attacked me."

| INJURIES FOUND? | YES | NO | |
|---|---|---|---|
| Abrasion/Scratch | | | 1 |
| Active Bleeding | | | 2 |
| Broken Bone | | | 3 |
| Bruise/Discolored Area | | | 4 |
| Burn | | | 5 |
| Dislocation | | | 6 |
| Dried Blood | | | 7 |
| Fresh Tattoo | | | 8 |
| Cut/Laceration/Slash | | | (9) |
| O.C. Spray Area | | | 10 |
| Pain | | | 11 |
| Protrusion | | | 12 |
| Puncture | | | (13) |
| Reddened Area | | | 14 |
| Skin Flap | | | 15 |
| Swollen Area | | | 16 |
| Other | | | 17 |
| | | | 18 |
| | | | 19 |

| O.C. SPRAY EXPOSURE? | YES | (NO) |
|---|---|---|
| DECONTAMINATED? | YES | (NO) |
| Self-decontamination instructions given? | YES | (NO) |
| Refused decontamination? | YES | (NO) |
| Q 15 min. checks | | |
| Staff issued exposure packet? | YES | (NO) |



#9

| RN NOTIFIED/TIME 1300- Barron RN | PHYSICIAN NOTIFIED/TIME N/A |
|---|---|
| TIME/DISPOSITION 1305- TTA Central Health with c/o Escort Lopez. | |

| REPORT COMPLETED BY/TITLE (PRINT AND SIGN) Beltran, J.   MTA | BADGE # | RDOs T/u |
|---|---|---|

(Medical data is to be included in progress note or emergency care record filed in UHR)

CDCR 7219 (Rev. 11/05)   DISTRIBUTION:   ORIGINAL - Custody   CANARY - Inmate/Employee   PINK - Health and Safety / PEHU Coordinator (only work related injury)

ALCON 1 AUBURN MAINE 2 MADE IN U.S.A. 3

A - YARD



B
Pg. 50

# EXHIBIT C

## TREAT AS ORIGINAL CDC 602 FORM

**INMATE/PAROLEE**
**APPEAL FORM**
CDC 602 (12/87)

Location: Institution/Parole Region

(SATF)

1. Cen A

2. _____

Log No. EO-976

1. _____

2. _____

Category 9

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classifica committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the suppor documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be ta for using the appeals procedure responsibly.

NAME ② MIRANDA William ① NUMBER V 63893 ASSIGNMENT _____ UNIT/ROOM NUMBE A5-112

**A. Describe Problem:** This 602 is against C.D.C. C.D.C Fail To Provide me Protection From My Enemies. On Saturday September 16, 2006, I was escorted by officer Lopez To visiti I requested officer Lopez Three Time, I said Please Do Not walk me through G.P. Ya Because I have Lot of Enemies and. I AM (SNY) - officer Lopez ignore my request While we was coming ~~at this~~ Back From visiting To A5 CASU5, I was Stabbed N.4 me Times In The G.P yard, While I was in chains. From That Day on I am Having Nightmare I AM Having Mental and Motional Problems. I can Not sleep. officer Lopez know it very well That I have Enemies why He ignore my request - I Believe C.D.C set me up For

If you need more space, attach one additional sheet. ~~INC~~

murde

**B. Action Requested:** This is a Notice To C.D.C., That I will Take This case To Court For Legal Action Against C.D.C. and For Compensation, Unless, C.D.C Explain me why They Fail To Protect me From My Enemies - Please Note Incident Log Number CEN-FAY-06-09-0308

Inmate/Parolee Signature: *Miranda William*

Date Submitted: 9/23/06

**C. INFORMAL LEVEL** (Date Received: _____ )

Staff Response:

BY-PASS

Staff Signature: _____

Date Returned to Inmate: _____

**D. FORMAL LEVEL**
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

BY-PASS

Signature: _____

Note: Property/Funds appeals must be accompanied by a completed
Board of Control form BC-1E, Inmate Claim

Date Submitted: _____

06 SEP 26 AM 9:56

CSP--CENTINELA
INMATE APPEALS

CSP--CENTINELA
INMATE APPEALS

06 OCT

INMATE APPEALS BRANCH

2007 DEC

CSP-CENTINELA
INMATE APPEALS

EXPLANATION OF Protection

First Level    ☐ Granted    ☐ P. Granted    ☒ Denied    ☒ Other    Due Date: NOV 16 2006
OCT 03 2006

E. REVIEWER'S ACTION (Complete within 15 working days): Date assigned:

Interviewed by: SGT C. HORNE

Inmate Miranda we took every effort to protect you. The yard Observation officer was notified of your escort, the track was cleared, yard staff were notified and by your own admission C/O J. Trujillo placed himself in harms way and possibly saved your life. I would definitely consider that protecting you.

x Miranda Wilson

Staff Signature: C. Horn    Title: Sgt, ASU overflow    Date Completed: 10/6/06
Division Head Approved: DCrauo    Title: AW    Returned Date to Inmate: 10/26/06
Signature:

F. If dissatisfied, explain reasons for requesting a Second-Level Review, and submit to Institution or Parole Region Appeals Coordinator within 15 days of receipt of response.    OCT 26 2006

( see attached )

Date Submitted: 1-18-07
Signature: Miranda Wilson

Second Level    ☐ Granted    ☐ P. Granted    ☐ Denied    ☐ Other    Due Date: FEB 27 2007
JAN 02 2007

G. REVIEWER'S ACTION (Complete within 10 working days): Date assigned:
☐ See Attached Letter

Signature: Joesin, A9PA    Date Completed:
Warden/Superintendent Signature: DCrauo, CDW(A)    Date Returned to Inmate:

H. If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response.

( see attached )

Date Submitted:
Signature:

For the Director's Review, submit all documents to: Director of Corrections
P.O. Box 942883
Sacramento, CA 94283-0001
Attn: Chief, Inmate Appeals

DIRECTOR'S ACTION: ☐ Granted    ☐ P. Granted    ☒ Denied    ☐ Other
☒ See Attached Letter    Date: MAY 5 2007

CDC 602 (12/87)

**INMATE/PAROLEE**
**APPEAL FORM**
CDC 602 (12/-87)

Location: Institution/Parole Region
(SATF)
1. _Cen A_     1. _06-976_     Category _9_
2. _____     2. _____

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classificat... committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate... member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the suppor... documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be ta...

| NAME ② MIRANDA William ① | NUMBER V 63893 | ASSIGNMENT | UNIT/ROOM NUMBER A5 - 112 |
|---|---|---|---|

A. Describe Problem: THIS 602 IS AGAINST C.D.C - C.D.C Fail To Provide Me PRoTection From My ENEMIES. ON SATURDAY SEPTEMBER 16, 2006, I WAS ESCoRTED BY OFFICER LoPez To VISITI... I REQUESTED OFFICER LoPez THREE TIME, I Said Please Do NoT WALK Me THRough G.P. YAR... BECAUSE I HAVE Lot oF ENEMIES and. I AM (SNY) - OFFICER LoPez IGNoRE My RoQuEST While We WAS coming AT this BACK From VISITING To A5 CASUS, I WAS STABBED NAIMEE TIMES IN THe G.P. YARD, While I WAS IN CHAINS. FRom THAT DAY oN I AM HAVING NIGHTMARE... I AM HAVING MENTAL AND MotINAL PRoBlems, I CAN NoT Sleep. OFFICER LoPez KNEW it VERY Well THAT I have ENEMIES why He IGNoRE My Request. I Believe C.D.C SeT Me UP FoR

If you need more space, attach one additional sheet. [N...]
                                                                                                    murde...

B. Action Requested: THIS IS a NoTICE To C.D.C, THAT I WILL TAKE THIS CASE To COURT FoR LegAL ACTIoN AGAINST C.D.C and FoR COMPENSATIoN... UNLESS, C.D.C Explain Me why THEY FAIL To PRoTECT Me FRom MY ENEMIES - Please NoTE INCIDENT LoG NUMBER CEN-FAY-06-09-0308

Inmate/Parolee Signature _Miranda William_                         Date Submitted: _9/23/06_

C. INFORMAL LEVEL (Date Received: _____ )
Staff Response:

**BY-PASS**

Staff Signature: _____                          Date Returned to Inmate: _____

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

**BY-PASS**

Signature: _____                                  Date Submitted: _____

Note: Property/Funds appeals must be accompanied by a completed
Board of Control form BC-1E Inmate Claim                    CDC Appeal Number: _____

06 SEP 26 AM 9:56
06 OCT 10
CSP--CENTINELA
INMATE APPEALS

CSP--CENTINELA
INMATE APPEALS

MAR 17 2007
INMATE APPEALS BRANCH

JUL 07 2007 PM 12:18
CSP--CENTINELA
INMATE APPEALS

Inmate Appeals Coordinator                                    December 6, 2006
Centinela State Prison
P.O. Box 901
Imperial, CA 92251-0901

Re:    Inmate Appeal
       MIRANDA, V-63893
       Log# CEN-A-06-976, Category (9)


On 10/17/06, while housed at A-5 AD/SEG, I received instructions to resubmit my
appeal for a Second Level Review, with original documents attached. Before being
transferred to Corcoran State Prison on 10/26/06, I did submit through the institutional
mail all the information you requested. I kept a copy of original CDC-602 for
myself with the formal response on it.

I am now at Corcoran State Prison (SATF), and have not received any response from
this office. Please let me know the status of my appeal. My address is:
                  William C. Miranda
                  CDC# V-63893,  E2 #145
                  Corcoran State Prison (SATF)
                  P.O. Box 5242
                  Corcoran, CA 93212-5242


Respectfully submitted,



_____
William C. Miranda



# INMATE/PAROLEE APPEAL FORM
CDC 602 (12/87)

| | Location: Institution/Parole Region | Log No. | Category |
|---|---|---|---|
| | 1. _CEN-x_ | 1. _07_ | _15_ |
| | 2. _____ | 2. _____ | |

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|---|---|---|---|
| MIRANDA | V-63893 | Corcoran State Prison (SATF) | E2/145 |

**A. Describe Problem:** _____ ( please see attached )

*RECEIVED MAR 14 2007 INMATE APPEALS BRANCH*

_Attachment_

If you need more space, attach one additional sheet.

**B. Action Requested:** _____ ( please see attached )

Inmate/Parolee Signature: _Miranda Williams_          Date Submitted: _12-28-06_

**C. INFORMAL LEVEL** (Date Received: _1-3-07_ )

Staff Response: _Granted in that a copy of your original appeal is attached for you to complete section 'F' and re-submit to CEN for a 2nd Level of review._

Staff Signature: _J. Olsen_          Date Returned to Inmate: _1-4-07_

**D. FORMAL LEVEL**
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

Signature: _____          Date Submitted: _____

Note: Property/Funds appeals must be accompanied by a completed Board of Control form BC-1E, Inmate Claim

CDC Appeal Number: _____

_Pg. 5_

MIRANDA     CDC# V-63893     Corcoran State Prison (SATF)

## DISCRIPTION OF PROBLEM

On 09/16/06, I was stabbed numerous times while in full restraints, and under escort. I had warned C/O Lopez that I had enemies on the main line, and feared for my life. He deliberately ignored my pleas, placing both himself and me in danger for our lives (refer to incident Log Number: CEN-FAY-06-09-0308).

On 09/23/06, I submitted a CDC-602, requesting an explanation as to why there was a deliberate indifference to my pleas for protection (refer to CDC-602 Log Number: CEN-A-06-976).

On 10/06/06, Sergeant C. Horne, interviewed me, but he did not offer any answers, and he <u>did</u> deny my appeal on 10/26/06.

I resubmitted my original appeal for a SECOND LEVEL APPEAL "before" being transferred from Centinela to Corcoran on 10/26/06.

On 12/06/06, after having not heard from Centinela for over (30) days, I wrote a letter requesting an answer from the **SECOND LEVEL REVIEW**, but was denied. Instead, the Inmate Appeals Coordinator replied to my request for a <u>SECOND LEVEL REVIEW</u>, by resubmitting the First Level Answer.

## ACTION REQUESTED:

SECOND LEVEL REVIEW to original CDC-602, Log Number: CEN-A-06-976. Sergeant Horne states that , "...we took every effort to protect you." First of all, that's not true. Only one 'effort' was required: to circumvent A-Yard's main-line population, as I was being escorted from Visiting to AD-SEG. A conscious disregard for my life was deliberately chosen when the prison officials ignored my pleas of impending danger. Now, I want to know **(1)** Why were my pleas for protection ignored by prison officials? **(2)** Why was I (a protective custody inmate) escorted in full restraints through a main-line yard from which I had recently sought asylum? **(3)** Is it CDC policy or Centinela policy to escort protective custody inmates through main-line yards while in full restraints? **(4)** Isn't it obvious, through the decades of CDC experience, that an officer escort cannot guarantee the safety of another inmate? Especially a protective custody (PC) inmate on a main-line yard!

12-28-06
DATE

_Miranda William_
William C. Miranda


pg. 6

MIRANDA          CDC# V-63893          Log# :CEN·A-06-00976

**REQUEST FOR SECOND LEVEL REVIEW:**

The "Action Requested" on original CDC-602, was an explanation for the negligent
action, and/or policy, which exposed me to mortal danger, and physical assault.
Sergeant Horne denied my appeal stating, "...we took every effort to protect
you."

First of all, that's not true.  Only one 'effort' was required:  to circumvent
A-Yard's main-line population, as I was being escorted from Visiting to AD-SEG.
A conscious disregard for my life was deliberately chosen when the prison
officials ignored my pleas of impending danger.  Now, I want to know:

**(1)** Why were my pleas for protection ignored by prison officials?

**(2)** Why was I (a protective custody inmate) escorted in full restraints through
a main-line yard from which I had recently sought asylum?

**(3)** Is it CDC policy or Centinela policy to escort protective custody inmates
through main-line yards while in full restraints?

**(4)** Isn't it obvious, through the decades of CDC experience, that an officer
escort cannot guarantee the safety of another inmate?  (How much less a PC
inmate in a main-line yard?)

These questions remain unanswered.  Sergeant Horne denied a satisfactory explanation,
and now I'm requesting one.

1-12-07
_____
Date

*Miranda William*
William C. Miranda



MIRANDA        CDC# V-63893        LOG#  CEN A-06-00976

REASONS FOR REQUESTING A DIRECTOR'S LEVEL REVIEW:

1.  The Second Level Review, returned by V.M. Almager, Acting Warden, did **NOT** address all the questions submitted for review.  He did answer questions #2 and #3, that the dangerous policy of escorting SNY inmates, while in full restraints through a main-line yard, is CDCR's responsibility, per the AD-SEG Unit O.P. #(4)OO6, <u>Escort Procedures</u>, pg. 5.

Questions #1 and #4, were not answered.  Instead, the Acting Warden DENIED me an answer.  If there truly was an investigation, these questions should have been presented to those responsible for my being attacked and stabbed.  Furthermore, a responsible investigation would have discovered the danger inherent in this policy, and action initiated to amend it.

2.  In the Acting Warden's answer, it appears that nobody is at fault for the stabbing attack on myself while in the custody of prison officials.  Instead, I am to assume that the prison policy & procedures allows for these things to happen, and there are no plans to amend or revise this policy.  If this is the answer from the Second Level Review, then I am not satisfied.  Had a similar incident occurred to Staff, it is certain that any policy & procedures governing at the time, would have been revised with scrutiny and amended to prevent future attacks.

As it stands, I am still an SNY inmate, serving an eighteen (18) year sentence under the custody of CDCR.  As such, I remain vulnerable to this dangerous policy.


02-28-07
Date

_Miranda William_
William C. Miranda


Pg. 8

State of California                                    Department of Corrections and Rehabilitation

# Memorandum

**Date**    :    October 24, 2006

**To**      :    INMATE MIRANDA
                 V63893 / A5-112

**Subject:**    APPEAL LOG NO CEN-A-06-00976
               FIRST LEVEL RESPONSE

    **Appeal Decision:**    **PARTIALLY GRANTED**

    **Appeal Issue:**    Living Conditions

    **Appeal Response:**  Your appeal, the attachments, and the California Code of Regulations (CCR) Title 15, have been reviewed.

You contend that while you are being escorted from your building to visiting that you do not feel safe walking through the General Population on this yard.

You were interviewed on Friday, October 6, 2006, by Correctional Sergeant C. Horne, in regards to your appeal issue. During your interview you informed the Correctional Sergeant that you were not being provided protection while being escorted.

Every effort was made by escorting staff to protect you during the incident.  Staff's actions prior and during the incident were within current policies and procedures. The Incident will be reviewed by the Use of Force Committee and recommendations, if any, to address existing procedures will be presented for consideration at that time.

Based on the aforementioned, your appeal is **Partially Granted** at the First Level.

If you are dissatisfied with this decision, you may appeal to the Second Level following the instruction on your appeal form.

C. HORNE
Correctional Sergeant-A5 ASU
Centinela State Prison

D. PARAMO
Associate Warden Complex-I
Centinela State Prison

cc: Inmate Appeals
C-Files

State of California                          Department of Corrections and Rehabilitation

# Memorandum

Date:      February 9, 2007

To:        MIRANDA, V-63893
           Substance Abuse Treatment Facility

Subject: SECOND LEVEL APPEAL RESPONSE
                    LOG NO.:      CEN-A-06-00976

APPEAL DECISION:            DENIED

APPEAL ISSUE:       LIVING CONDITIONS

Appellant contends that his life was endangered when he was escorted through the General Population; even after informing staff he had enemies on that yard.

Appellant requests on appeal to he be compensated for staff's failure to protect him from his enemies.

INTERVIEWED BY:  C. Horne, Correctional Sergeant, at the First Level of Review

REGULATIONS:  The rules governing this issue are:

> **California Code of Regulations, Title 15, Section (CCR) 3001. Subject to Regulations.**
>       Regardless of commitment circumstances, every person confined or residing in facilities of the department is subject to the rules and regulations of the director, and to the procedures established by the warden, superintendent, or parole region administrator responsible for the operation of that facility. Persons on parole or civil addict outpatient status are subject to such director's rules, regulations and parole region procedures as may be applicable to such persons.

> **CCR 3270. General Policy.**
>       The primary objectives of the correctional institutions are to protect the public by safely keeping person committed to the custody of the Director of Corrections, and to afford such persons with every reasonable opportunity and encouragement to participate in rehabilitative activities. Consistent effort will be made to insure the security of the institution and the effectiveness of the treatment programs within the framework of security and safety. Each employee must be trained to understand how physical facilities, degree of custody classification, personnel, and operative procedure affect the maintenance of inmate custody and security. The requirement of custodial security and of staff, inmate and public safety must take precedence over all other considerations in the operation of all the programs and activities of the institutions of the department.



Pg-10

MIRANDA, V-63893
Appeal Log No. CEN-A-06-00976
Page 2

### CCR 3287. Cell, Property and Body Inspections.

(a) Insofar as possible, a cell, room, or dormitory bed area and locker will be thoroughly inspected immediately upon its vacancy and again, if there is a significant time lapse, before another inmate is assigned to the same cell, room or dormitory bed and locker. Such inspections are required and must be recorded for segregation, isolation and security housing unit cells. The purpose of such inspections is to fix responsibility or the absence of responsibility for security and safety hazards and serious contraband found in the cell, room or dormitory area.

(1) Occupied cells, rooms and dormitory areas, including fixtures and lockers, and any personal and state-issued property of the occupant will be inspected on an infrequent and unscheduled basis. More frequent inspections will be conducted in specialized housing units, depending upon the security requirements of the unit and the risk an individual inmate presents to that security.

(2) Cell and property inspections are necessary in order to detect and control serious contraband and to maintain institution security. Such inspections will not be used as a punitive measure nor to harass an inmate. Every reasonable precaution will be taken to avoid damage to personal property and to leave the inmate's quarters and property in good order upon completion of the inspection.

(3) An inmate's presence is not required during routine inspections of living quarters and property when the inmate is not or would not otherwise be present. During special inspections or searches initiated because the inmate is suspected of having a specific item or items of contraband in his or her quarters or property, the inmate should be permitted to observe the search when it is reasonably possible and safe to do so.

(4) The inmate will be given a written notice for any item(s) of personal and authorized state-issued property removed from his or her quarters during an inspection and the disposition made of such property. The notice will also list any contraband picked up or any breach of security noted during the inspection, and the follow-up action intended by the inspecting officer.

(b) An inmate is subject to an inspection of his or her person, either clothed or unclothed, when there is a substantial reason to believe the inmate may have unauthorized or dangerous items concealed on his or her person, or that he or she may have been involved in an altercation of any kind. Such inspections may also be a routine requirement for inmate movement into or out of high security risk areas. Random or spot-check inspections of inmates may also be authorized by the institution head to prevent possession and movement of unauthorized or dangerous items and substances into, out of, or within the institution. Visual daily inspections of inmates shall be made to ensure compliance with departmental grooming standards. All such inspections shall be conducted in a professional manner which avoids embarrassment or indignity to the inmate. Whenever possible, unclothed body inspections of inmates shall be conducted outside the view of others.

(1) Correctional employees, other than qualified medical staff, shall not conduct unclothed body inspections of inmates of the opposite sex except under emergency conditions with life or death consequences. Routine inspections of clothed inmates of either sex may be performed by employees of either sex.

(2) Any inspection of body cavities, other than visual or metal detector inspections, will be conducted in a medical setting under the



pg. 11

MIRANDA, V-63893
Appeal Log No. CEN-A-06-00976
Page 3

direct supervision of a physician. Any physical intrusion into body cavities must be performed by a physician, and then only after all less obtrusive methods have failed to bring the inspection to a conclusion.

(c) Inspections of inmate cell or living areas, property, work areas, and body shall be conducted on an unannounced, random basis as directed by the institution head. Such inspections shall be conducted no more frequently than necessary to control contraband, recover missing or stolen property, or maintain proper security of the institution.

(d) A written record shall be maintained of the disposition of contraband and stolen or missing property confiscated as the result of cell, property, or body inspections.

**CCR 3380. Chief Executive Officer.**

(a) The warden or superintendent of an institution of the department is the chief executive officer of that institution, and is responsible for the custody, treatment, training and discipline of all inmates under his or her charge.

(c) Subject to the approval of the Director of Corrections, wardens, superintendents and parole region administrators will establish such operational plans and procedures as are required by the director for implementation of regulations and as may otherwise be required for their respective operations. Such procedures will apply only to the inmates, parolees and personnel under the administrator.

(d) Copies of institution and parole region operational plans and procedures requiring the director's review and approval will be submitted to central office on a scheduled basis. A copy of each currently approved plan will be maintained in the department's policy documentation files. Operational procedures which do not require the director's review and approval do not need to be submitted to central office unless requested. In compliance with the Public Records Act, departmental regulations and procedures, as well as institution and parole region operational plans and procedures of a nonconfidential nature, will be made available for public examination at any administrative office of the department where such information is maintained.

Appellant contends that the Department of Corrections and Rehabilitation (CDCR) failed to protect him from his enemies. He states that, on September 16, 2006, he was being escorted to Visiting through Facility "A". He states that he tried to explain to the officer that he should not go through the general population yard because of his enemies and because he was currently classified as SNY (Sensitive Needs Yard). Upon returning from Visiting, en route to A-5, appellant was "jumped" and stabbed numerous times by inmates on Facility "A" yard while still in chains.

Consequently, since that incident, he has had nightmares, mental and emotional problems, and cannot sleep.

Appellant alleges that CDC failed to protect him from his enemies and exposed him to mortal danger and physical assault.

At the First Level of Review, appellant was interviewed by C. Horne, Correctional Sergeant, at which time he was informed that every effort was made by escorting staff. Staff were within current policies and procedures and the incident was reviewed in full by the Use of Force Committee. Recommendations, if any, were presented and addressed for consideration at that time. His appeal was partially granted in that a complete and thorough review of the incident was conducted.

C

Pg. 12

MIRANDA, V-63893
Appeal Log No. CEN-A-06-00976
Page 4


The purpose of the Use of Force Committee is to provide a method of review and analysis for al incident reports involving possible use of force. This review process is to address any training needs, policy issues, and compliance actions at this institution. Centinela continues to strive to ensure correctional professionalism at every level.

Appellant should be reminded that as per the current Administrative Segregation Unit Operational Procedure, # (4)006, Escort Procedures, page 5:

    2.   Outside ASU Housing Unit Destination
         a.   Individual Escorts

              All inmate movement outside the building will be under direct escort by at least one (1) custody staff member.

              Upon removal from his cell, the inmate will then be escorted to a holding cell where he will relinquish all his clothing and property on his person to staff. The inmate will be subjected to an unclothed body search and a search of his clothing and any property before being handcuffed and/or waist chained and escorted out of ASU.

              When inmates are escorted through the general population, the escorting officer will verbally inform surrounding inmates of the escort and direct them away from the area. Prior to the departure of any escort from ASU, the Facility "A" Yard Observation Post and the Facility "A" Yard Officer will be informed via inter-institutional radio or telephone. This is to ensure the walkway is clear of general population inmates from Building 5 to the Facility "A" gate. Staff must remain alert to potential violence during the escorts. Inmates are not permitted to speak to GP inmates other than a casual greeting.

This Operational Procedure has been in affect since 1999, with the purpose of establishing a specific security and operational guideline for the Administrative Segregation Housing Unit (ASU). The objective is to provide a safe and secure housing unit for inmates.

Based on the information and documentation submitted, it is determined that everything possible was done to keep appellant safe during this incident. All areas of the policy were followed and staff intervened to the best of their ability during the incident in order to prevent further injury to appellant, even placing their own safety in jeopardy.

DECISION: The appeal is denied.

The appellant is advised that this issue may be submitted for a Director's Level of Review if desired.


V. M. ALMAGER
Warden (A)
Centinela State Prison

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION
INMATE APPEALS BRANCH
P. O. BOX 942883
SACRAMENTO, CA 94283-0001

# DIRECTOR'S LEVEL APPEAL DECISION

Date:  **MAY 2 5 2007**

In re:  Miranda, V-63893
California Substance Abuse Treatment Facility and
    State Prison at Corcoran
P.O. Box 7100
Corcoran, CA 93212-7100

IAB Case No.: 0611585          Local Log No.: CEN 06-976

This matter was reviewed on behalf of the Director of the California Department of Corrections and Rehabilitation (CDCR) by Appeals Examiner P. Enriquez, Facility Captain. All submitted documentation and supporting arguments of the parties have been considered.

**I   APPELLANT'S ARGUMENT:** It is the appellant's position that CDCR staff failed to protect him from his enemies. He states that on September 16, 2006, he informed Correctional Officer (CO) Lopez not to escort him back from visiting to the Administrative Segregation Unit (ASU) through the inmate general population facility as he had enemies. He contends that CO Lopez ignored his request and he was stabbed numerous times while he was in "chains." He states he now has nightmares, mental and emotional problems and he cannot sleep. He believes the CDCR "set me up for murder." He states this is a notice to the CDCR that he will take this case to court for legal action and for compensation unless the CDCR explains why they failed to protect him from his enemies.

At the Director's Level of Review he claims that his appeal was not addressed because two questions he presented at the Second Level of Review (SLR) did not receive a response. He also claims that his attackers should have been interviewed. This was not a part of the original appeal nor was it presented to the institution for response. The new issues and requested actions are not addressed in this response as it is not appropriate to expand the appeal beyond the initial problem and the initially requested action.

**II   SECOND LEVEL'S DECISION:** The reviewer found that staff who escorted the appellant were in compliance with the existing policies and procedures when the incident occurred. The incident was to be reviewed in full by the Use of Force Committee. Recommendations were to be presented and addressed for consideration at that time. Training needs, policy issues and compliance actions at the Calipatria State Prison would be addressed if necessary. The appellant was referred to Centinela State Prison (CEN) Operational Procedure #(4)006 that provides direction to ASU staff on escorting inmates outside the ASU, which had been in affect since 1999. The appeal was denied by the SLR.

**III   DIRECTOR'S LEVEL DECISION:** Appeal is denied.

    **A.   FINDINGS:** The institution has shown that CO Lopez was in compliance with the CEN ASU escort policy when the appellant was being escorted to the ASU through the Facility "A" yard. The appellant's allegations of attempted murder by the CDCR staff are presented without evidence or documentation to substantiate his allegations. The appellant was advised that the Use Force Committee would review the incident and make any recommendation that would assist staff in ensuring the safety of the public, staff and inmates and maintain the security of the institution.

    It is noted that the appellant failed to fill out Section "H" and failed to sign the form. The appellant is advised that a response was provided to him as courtesy, but the next time the appeal will be screened out and returned to him to be completed appropriately.

    **B.   BASIS FOR THE DECISION:**
California Code of Regulations, Title 15, Section: 3268.1, 3268.2, 3270, 3278

    **C.   ORDER:** No changes or modifications are required by the institution.

MIRANDA, V-63893
CASE NO. 0611585
PAGE 2


This decision exhausts the administrative remedy available to the appellant within CDCR.


N. GRANNIS, Chief
Inmate Appeals Branch

cc:     Warden, SATF
        Appeals Coordinator, SATF
        Appeals Coordinator, CEN



JS44
(Rev. 07/89)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE SECOND PAGE OF THIS FORM.)

2154   1983

FILING FEE PAID

Yes ____  No ✓

IFP MOTION FILED

Yes ____  No ____

COPIES SENT TO ____

Court ____

2008 MAR 24 PM 4:15

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY _____ DEPUTY

**I (a) PLAINTIFFS**

William C. Miranda

DEFENDANTS

Giurbino, etal.

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF**   Kings

(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT ____
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

William C. Miranda
PO Box 5242
Corcoran, CA 93212
V-63893

ATTORNEYS (IF KNOWN)

**'08 CV 0550 BEN WMc**

**II. BASIS OF JURISDICTION (PLACE AN x IN ONE BOX ONLY)**

☐ 1 U.S. Government Plaintiff

☒ 3 Federal Question
(U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☐ 4 Diversity (Indicate Citizenship of Parties in Item III

**III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN X IN ONE BOX**
(For Diversity Cases Only)   **FOR PLAINTIFF AND ONE BOX FOR DEFENDANT**

| | PT | DEF | | RT | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. CAUSE OF ACTION (CITE THE US CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY).**

### 42 U.S.C. 1983

**V. NATURE OF SUIT (PLACE AN X IN ONE BOX ONLY)**

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| | PERSONAL INJURY | PERSONAL INJURY | | | |
| ☐ 110 Insurance | | | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reappointment |
| ☐ Marine | ☐ 310 Airplane | ☐ 362 Personal Injury-Medical Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ Miller Act | ☐ 315 Airplane Product Liability | | ☐ 625 Drug Related Seizure of Property 21 USC881 | PROPERTY RIGHTS | ☐ 430 Banks and Banking |
| ☐ Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 365 Personal Injury - Product Liability | | ☐ 820 Copyrights | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment &Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 RR & Truck | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | | ☐ 650 Airline Regs | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | PERSONAL PROPERTY | ☐ 660 Occupational Safety/Health | SOCIAL SECURITY | |
| | | ☐ 370 Other Fraud | ☐ 690 Other | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veterans Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities Exchange |
| ☐ 160 Stockholders Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | LABOR | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC |
| ☐ Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| REAL PROPERTY | CIVIL RIGHTS | PRISONER PETITIONS | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | FEDERAL TAX SUITS | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 740 Railway Labor Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | | ☐ 790 Other Labor Litigation | ☐ 871 IRS - Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 530 General | ☐ 791 Empl. Ret. Inc. | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Tort to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ Security Act | | ☐ 950 Constitutionality of State |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☒ 550 Civil Rights | | | |

**VI. ORIGIN (PLACE AN X IN ONE BOX ONLY)**

☒ 1 Original Proceeding  ☐ 2 Removal from State Court  ☐ 3 Remanded from Appelate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ 6 Multidistrict Litigation  ☐ 7 Appeal to District Judge from Magistrate Judgment

**VII. REQUESTED IN COMPLAINT:**  ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.r.c.p. 23   DEMAND $ ____   Check YES only if demanded in complaint:  JURY DEMAND: ☐ YES ☐ NO

**VIII. RELATED CASE(S) IF ANY (See Instructions):**   JUDGE ____   Docket Number ____

DATE   March 24, 2008   SIGNATURE OF ATTORNEY OF RECORD

CR