FILED

2010 JAN 22 PM 2:25

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY _____ DEPUTY

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| WILLIAM C. MIRANDA,<br><br>        Plaintiff,<br>vs.<br><br>G.J. GIURBINO, et al.,<br><br>        Defendants. | CASE NO. 08-cv-0550 BEN (WMc)<br><br>ORDER ADOPTING IN PART AND DENYING IN PART THE REPORT AND RECOMMENDATION AND GRANTING MOTION TO DISMISS FIRST AMENDED COMPLAINT<br><br>[Docket Nos. 46 and 52.] |
|---|---|

Before this Court is a civil rights Complaint under 42 U.S.C. § 1983 filed by Plaintiff, a state inmate currently incarcerated at Salinas Valley State Prison and proceeding pro se. The operative complaint is the First Amended Complaint ("FAC") filed by Plaintiff on January 7, 2009. (Docket No. 41)

On March 6, 2009, certain defendants filed a Motion to Dismiss the First Amended Complaint. (Docket No. 46.)

On August 17, 2009, Magistrate Judge McCurine entered a Report and Recommendation, recommending that the Court grant the Motion to Dismiss. (Docket No. 52.)

For the reasons set forth below, the Court **ADOPTS IN PART AND DENIES IN PART** the Report and Recommendation. The Court hereby **GRANTS** the Motion to Dismiss and dismisses Defendants Valenzuela, Swift, Reyes, Capellino, Davis, Trujillo, Lopez, Vasquez, Sanchez, Martin, Mendez, Clark, Horne, Granish, Thompson, Sanders, Almager, Paramo and D.C. Johnson

1  (collectively, "Defendants").

## FACTUAL AND PROCEDURAL HISTORY

This action arises from an incident occurring on September 16, 2006 in the main prison yard while Plaintiff, a sensitive-needs inmate, was being escorted from the sensitive-needs yard across the main prison yard, to attend a family visit. At that time, Plaintiff was incarcerated at Centinela State Prison in Imperial, California.

Plaintiff alleges he received death threats from "fellow Hispanic inmate prison gang members" of the 18th Street gang. (Suppl. Br., ¶ 2.) Plaintiff specifically alleges he received these threats earlier on the same day of the incident, when these inmates first saw Plaintiff crossing the main prison yard en route to the sensitive-needs yard. (Suppl. Br., ¶¶ 4-5.) Plaintiff alleges that when he informed prison officers of these threats, the officials failed to take the threats seriously and failed to take additional security measures to ensure Plaintiff's safety. (*Id.*)

Plaintiff alleges that when he was later being escorted back across the yard for his family visit, the same inmates attacked him with a "prison-made, metal shiv." (*Id.*; FAC, pg. 3.) Plaintiff alleges he suffered "numerous puncture and slash cuts, on torso, arm and wrist," as a result of the attack. (Suppl. Br., ¶ 6.) The assailants were subsequently charged with attempted murder, and at least one assailant has pled guilty to attempted murder. (Suppl. Br., ¶ 5 and Ex. B at pgs. 9, 42 and 44.)

On September 23, 2007, Plaintiff filed an Administrative Appeal regarding the incident. According to Plaintiff, the Appeal was dismissed on the grounds the officers followed proper escort policy. (Suppl. Br., ¶ 7.) The Use of Force Committee likewise made no recommendation to amend the escort policy. (*Id.*)

Plaintiff then initiated this action, alleging prison officers and officials violated his Eighth Amendment right by failing to protect Plaintiff from "an attempted murder on his life." (Suppl. Br., ¶ 8.) Plaintiff's grievance lies mainly with the escort policy in effect at the time of the incident. (Objections to Report and Recommendation, ¶ 1.) Plaintiff alleges the escort policy is defective, and Defendants knew or should have known it was defective, because it requires officers to escort a sensitive-needs inmate through the very lion's den that necessitated the inmate's sensitive-needs status in the first place. (*See, e.g.*, Suppl. Br., ¶¶ 4 and 11; Objections to Report and Recommendation, ¶ 13.)

Plaintiff filed this lawsuit against (1) Officers Trujillo and Lopez, the escorting officers (the "Escorting Officers"); (2) the Escorting Officers' supervisors; (3) other officers assigned to the yard on the day of the incident; (4) members of the Institutional Classification Committee ("ICC") who classified Plaintiff as a sensitive-needs-yard ("SNY") inmate because of safety concerns;[1] (5) officials who reviewed the incident as part of the prison's Use of Force Committee; (6) officials who were involved in reviewing and responding to Plaintiff's administrative grievance; and (7) the Warden of Centinela State Prison at the time of the incident.

On March 6, 2009, Defendants filed a Motion to Dismiss the First Amended Complaint ("Motion"). (Docket No. 46.)

On July 28, 2009, Plaintiff filed an opposition to the Motion. (Docket No. 49.)

On August 17, 2009, Magistrate Judge William McCurine filed a Report and Recommendation recommending that the Court grant the Motion. (Docket No. 52.)

On September 21, 2009, Plaintiff filed objections to the Report and Recommendation. (Docket No. 55.)

On September 24, 2009, Defendants filed a reply to Plaintiff's objections. (Docket No. 57.)

After conducting a *de novo* review, for the reasons set forth below, the Court **ADOPTS IN PART AND DENIES IN PART** the Report and Recommendation and **GRANTS** Defendants' Motion to Dismiss.

## DISCUSSION

### I. LEGAL STANDARD

"[W]hen determining whether a complaint states a claim, a court must accept as true all allegations of material fact and must construe those facts in the light most favorable to the plaintiff." *Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000) While liberal construction is "particularly important in civil rights cases," *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992), the court may nevertheless not "supply essential elements of the claim that were not initially pled." *Ivey v. Bd. of*

---

[1] In his Opposition to the Motion to Dismiss, Plaintiff states he intended to allege "an UCC action," but "erroneously alleged an ICC Action." (Opp. Mot. to Dismiss [Docket No. 49], pg. 10, fn. 1.) The Court finds that this distinction is not meaningful and does not merit a change in the analysis because the allegations are the same, namely Plaintiff brings suit against the committee members who classified Plaintiff as a sensitive-needs inmate and allegedly failed to take that status into account in the escort policy. (*Id.* at ¶ 25.)

1 *Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

An actionable Section 1983 claim requires the plaintiff to sufficiently plead: (1) that a person acting under color of state law committed the conduct at issue, and (2) that the conduct deprived the plaintiff of some right, privilege, or immunity protected by the Constitution or laws of the United States. *See* 42 U.S.C. § 1983; *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327, 328 (1986); *Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985) (en banc). The second element is at issue here.

Here, Plaintiff alleges he was deprived of his Eighth Amendment right to be free from cruel and unusual punishment when Defendants failed to protect him from an attack by other inmates. (Suppl. Br., ¶ 1.) The Eighth Amendment requires prison officials to provide humane conditions of confinement and to take reasonable measures to keep inmates safe. *Helling v. McKinney*, 509 U.S. 25, 31-33 (1993). However, it does not require ideally safe conditions: "[n]ot every deviation from ideally safe conditions amounts to a constitutional violation." *Hoptowit v. Spellman*, 753 F.2d 779, 784 (9th Cir. 1985). Rather, to allege a violation of the Eighth Amendment, a plaintiff inmate must satisfy an objective requirement and a subjective requirement. *Farmer v. Brennan,*, 834 (1994).

Under the objective requirement, the plaintiff must allege facts sufficient to show "a prison official's act or omission... result[ed] in the denial of the minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834. As long as basic necessities such a adequate food, clothing, shelter, sanitation, medical care and personal safety are provided, no Eighth Amendment violation exists. *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982). Defendants argue Plaintiff fails to satisfy this objective requirement as to Defendants Almager, D.C. Johnson, Horne, Paramo, Mendez, Clark, Granish, Sanders, Thompson, Valenzuela,[2] Swift, Reyes, Camargo[3] and Davis because these defendants did not cause the alleged constitutional deprivation, and Plaintiff cannot allege otherwise.

Under the subjective requirement and the facts of this case, the plaintiff must plead facts showing "deliberate indifference" by the defendant. *Allen v. Sakai*, 48 F.3d 1082, 1087 (9th Cir. 1994).

---

[2] Also referred to as Defendant Valencia. (Objections to Report and Recommendation, pg. 6.)

[3] Sued under her former name of Capellino.

"Deliberate indifference" exists when a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Direct causation is required; Section 1983 provides relief only against those defendants who, through their personal involvement or failure to perform legally required duties, caused the deprivation of another's constitutionally protected rights. *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988). Defendants argue Plaintiff fails to satisfy this subjective requirement as to Defendants Trujillo, Lopez, Vasquez, Sanchez and Martin because Plaintiff fails to sufficiently allege, and cannot allege, these defendants acted with deliberate indifference to a substantial risk of serious harm to Plaintiff.

For the reasons set forth below, the Court finds Plaintiff has failed to sufficiently allege a claim for relief under Section 1983 and, based thereon, **GRANTS** Defendants' Motion to Dismiss.

II. **OBJECTIVE PRONG OF THE ALLEGED EIGHTH AMENDMENT VIOLATION**

A. **DEFENDANTS ALMAGER, D.C. JOHNSON, HORNE AND PARAMO, AS MEMBERS OF THE GRIEVANCE COMMITTEE**

Plaintiff sues Defendants Almager, D.C. Johnson, Horne and Paramo (collectively, the "Grievance Committee Defendants") in their capacity as members of the Grievance Committee. (Suppl. Br., ¶ 23.) Plaintiff alleges the Grievance Committee Defendants reviewed the incident but "illegally" found that the response by prison officials to the incident was adequate. (*Id.*; Objections to Report and Recommendation, ¶¶ 26-27.) Plaintiff is apparently dissatisfied with the results of this review.

As the Report and Recommendation correctly notes, a prison official's failure to follow a grievance procedure does not give rise to a Section 1983 civil rights claim. "There is no legitimate claim of entitlement to a [prison] grievance procedure." *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988), *cert. denied*, 488 U.S. 898 (1988). Therefore, Plaintiff has no constitutional claim arising from a possible violation of the California Department of Corrections grievance procedure.

Even if a constitutional claim were possible, Plaintiff has failed to allege, and cannot allege, a direct causal connection between the defendants' conduct, *i.e.*, an after-the-fact review of the

incident, and the injury alleged from the incident. *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978) (noting a Section 1983 claim requires a direct relationship between the alleged injury and the defendant's misconduct). Thus, Plaintiff alleges no claim against the Grievance Committee Defendants upon which relief can be granted.

Accordingly, the Court **GRANTS** the Motion as to Defendants Almager, D.C. Johnson, Horne and Paramo, as members of the Grievance Committee.

### B.  DEFENDANTS PARAMO, SANDERS AND GRANISH, AS MEMBERS OF THE USE OF FORCE COMMITTEE

Plaintiff sues Defendants Paramo, Sanders and Granish (collectively, the "Use of Force Committee Defendants") as members of the Use of Force Committee. Similar to the above, Plaintiff alleges the Use of Force Committee Defendants reviewed the incident but "illegally" found that the response by prison officials to the incident was adequate. (Suppl. Br., ¶¶ 21-22; Objections to Report and Recommendation, ¶ 28.) Plaintiff concedes his allegations against these defendants are the same as those alleged above against the Grievance Committee Defendants. Therefore, for the same reasons stated above, the Court finds Plaintiff has failed to plead an actionable Section 1983 claim against the Use of Force Committee Defendants.

Accordingly, the Court **GRANTS** the Motion as to Defendants Paramo, Sanders and Granish, as members of the Use of Force Committee.

### C.  DEFENDANTS MENDEZ, HORNE, PARAMO, ALMAGER, D.C. JOHNSON, CLARK, GRANISH, SANDERS AND THOMPSON

Defendants Mendez, Horne, Paramo, Almager, D.C. Johnson, Clark, Granish, Sanders and Thompson (collectively, the "Supervisory Defendants") are sued in their supervisory capacity. (FAC, pgs. 2/d-2/f and 4; Suppl. Br., pgs. 8-9.) Plaintiff alleges these defendants "failed to train officers in transporting SNY inmates, disregarded defective (escort) policy, thus failed to protect Plaintiff." (*Id.*) In his Objections to the Report and Recommendation, Plaintiff cites *Monroe v. Pape*, 365 U.S. 167 (1961) and further argues these defendants are liable under "the background of tort liability that makes a man responsible for the natural consequences of his actions." (Objections to Report and Recommendation, ¶ 8.)

As noted, an actionable claim under Section 1983 requires a plaintiff to show he or she was deprived of "some right, privilege, or immunity protected by the Constitution or laws of the United States." 42 U.S.C. § 1983. A person deprives another "of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson*, 588 F.2d at 743.

However, there is no respondent superior liability under Section 1983. *Palmer v. Sanderson*, 9 F.3d 1433, 1437-38 (9th Cir. 1993). Therefore, to allege liability against individuals acting in a supervisory role, such as the Supervisory Defendants in this case, Plaintiff must allege personal acts by these defendants which have a direct causal connection to the constitutional violation at issue. *Sanders v. Kennedy*, 794 F.2d 478, 483 (9th Cir. 1986); *Paine v. City of Lompoc*, 265 F.3d 975, 984 (9th Cir. 2001). Plaintiff fails to satisfy this requirement.

Here, the only allegation of personal involvement by the Supervisory Defendants is the allegation that these defendants should have known the danger to Plaintiff and should have advised the escorting staff to use an alternate route. (Suppl. Br., ¶ 20.) This allegation is not sufficient to state a claim for relief against the Supervisory Defendants because it does not allege any personal, affirmative act taken by these defendants that directly caused harm to Plaintiff. *See Sanchez v. Pereira-Castillo*, ---F.3d---, No. 08-1748, 2009 WL 4936397, at *13 (1st Cir. December 23, 2009) (holding that conclusory allegations that officials failed to ensure bodily integrity with reckless disregard were insufficient to state a section 1983 claim of supervisory liability).

Plaintiff's reliance on *Monroe v. Pape*, 365 U.S. 167 (1961) is misplaced. As noted by Defendants, the Supreme Court overruled *Monroe* several years ago in *Monell v. Dept. of Social Services of the City of New York*, 436 U.S. 658, 690-92 (1978), in which the Supreme Court expressly held a section 1983 claim cannot be based on respondent superior liability. For this same reason, Plaintiff's reliance on pre-*Monell* case law lacks merit.

Plaintiff also cites case law stating that, where supervisors have a legal duty to prevent officers under their direction from committing the alleged misconduct, those supervisors are proper defendants. (Objections to Report and Recommendation, pg. 5.) Even if this general proposition is true, however,

the Court finds that Plaintiff's cases are factually inapposite as, even in those cases, the plaintiff had shown that the supervisory defendants directly participated in the alleged constitutional deprivation. *See, e.g., Wright v. McMann,* 460 F.2d 126, 134 (2nd Cir. 1972). Here, however, no such direct causal connection is shown. *See Sanchez,* 2009 WL 4936397, at *13 (holding conclusory allegations that officials failed to ensure bodily integrity with reckless disregard were insufficient to state a section 1983 claim of supervisory liability).

Therefore, the Court **GRANTS** the Motion as to Defendants Mendez, Horne, Paramo, Almager, D.C. Johnson, Clark, Granish, Sanders and Thompson.

### D. DEFENDANTS VALENZUELA, SWIFT, REYES, CAMARGO AND DAVIS

Plaintiff sues Defendants Valenzuela,[4] Swift, Reyes, Camargo[5] and Davis (collectively, the "ICC Defendants") in their capacity as members of the Institutional Classification Committee ("ICC"). The ICC classifies inmates and, more specifically, classified Plaintiff as a sensitive-needs-yard ("SNY") inmate based on his relationship with other inmates who belonged to the 18th Street Gang. (Suppl. Br., ¶ 11 and Ex. A.) Plaintiff does not contest his SNY classification. (Objections to Report and Recommendation, ¶ 17.) Rather, Plaintiff alleges these defendants "chose to ignore the risk of serious harm to Plaintiff [an SNY inmate] when escorted under this policy" and "made a conscious decision not to review this policy." (FAC, pg. 3.) Plaintiff further alleges these defendants "should have alerted ASU officers that Plaintiff had sworn enemies on 'A' Yard, and that he should not be exposed to the main-line population." (Suppl. Br., ¶ 11.)

Similar to the Court's finding that an after-the-fact review of the incident does not allege a direct causal connection for purposes of Section 1983 liability, here too, the Court finds that the act of classifying Plaintiff as an SNY inmate (and, thus, being aware of Plaintiff's SNY status) is too tenuously linked to Plaintiff's subsequent injury during escort to allege a constitutional deprivation for purposes of Section 1983. From the classification and knowledge of Plaintiff's SNY status alone,

---

[4] Also referred to as Defendant Valencia. (Objections to Report and Recommendation, pg. 6.)

[5] Sued under her former name of Capellino.

1  Plaintiff has not, and cannot, allege a direct causal connection between the ICC Defendants' conduct
2  and the incident.
3        The Court further finds Plaintiff has not satisfied the subjective prong with respect to these
4  defendants. As noted, the subjective prong requires that Plaintiff plead sufficient factual allegations
5  showing the ICC Defendants acted with "deliberate indifference." *Allen v. Sakai*, 48 F.3d 1082, 1087
6  (9th Cir. 1994). Deliberate indifference exists when a prison official "knows of and disregards an
7  excessive risk to inmate health and safety; the official must be both aware of facts from which the
8  inference could be drawn that a substantial risk of serious harm exists, and he must also draw the
9  inference." *Farmer*, 511 U.S. at 837. "Mere negligence on the part of the prison official is not
10 sufficient to establish liability, but rather, the official's conduct must have been wanton." *Id.* at 835.
11       Here, Plaintiff alleges the ICC Defendants knew of Plaintiff's SNY status and should have
12 cautioned the escorting staff of his status, "[m]uch as a parent would advise or remind a teacher of a
13 student's lethal allergy to peanuts." (Opposition to Motion to Dismiss, ¶ 25.) Plaintiff's generalized
14 allegation that the ICC Defendants knew of Plaintiff's status is not sufficient to state an actionable
15 claim under section 1983 because, even if taken as true, it fails to establish how the ICC Defendants
16 were deliberately indifferent to a risk of harm to Plaintiff. Plaintiff fails to allege, and most likely
17 cannot allege, the ICC Defendants had the authority to review the SNY escort policy or order the
18 escorting staff to ignore the policy in favor of adopting an alternate route to the SNY yard. Therefore,
19 the Court finds Plaintiff also fails to satisfy the subjective prong with respect to the ICC Defendants.
20 Accordingly, the Court **GRANTS** the Motion as the Defendants Valenzuela, Swift, Reyes, Camargo
21 and Davis.

22 **III.  SUBJECTIVE PRONG OF THE ALLEGED EIGHTH AMENDMENT VIOLATION**
23
24     **A.  DEFENDANTS TRUJILLO AND LOPEZ**
25       Plaintiff sues Defendants Trujillo and Lopez (together, the "Escorting Officers") as the
26 escorting officers of Plaintiff at the time of the incident. Plaintiff alleges he informed the Escorting
27 Officers of the specific threats he received, but the officers made light of the situation and, despite
28 having knowledge of the specific threats, escorted Plaintiff back through the same yard where the

threats were carried out later that day. (Suppl. Br., ¶ 12.) Plaintiff also alleges the Escorting Officers ignored Plaintiff's SNY status and ignored the availability of an alternate route that would have taken Plaintiff safely to and from the SNY yard. (*Id.*)

### 1.  *Section 1983 Claim*

To plead an Eighth Amendment violation under Section 1983, Plaintiff must allege the Escorting Officers knew of and disregarded an excessive risk to inmate health and safety. *Farmer*, 511 U.S. at 837. Knowledge of a risk to an inmate's safety itself is not sufficient. *Id.* Here, Plaintiff alleges the Escorting Officers had knowledge of the potential risk, but does not allege the Escorting Officers deliberately disregarded that risk. Indeed, it is reasonable to expect that most inmates receive threats of some sort while in custody. The fact that the threats in this case were carried out and resulted in harm to Plaintiff does not mean the Escorting Officers acted with deliberate indifference at the time the threats were presented. *Id.* at 844 ("prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted."). Hindsight should not be confused with foresight.

The incident and staff reports submitted by Plaintiff support this conclusion. Defendant Trujillo's report states,

> I heard what appeared to be someone running behind me. I turned around and I saw Inmate Hernandez running toward us. I extended my state issued expandable baton while ordering Hernandez to get down with negative results. He ran around myself and Officer Lopez to reach Miranda... I then struck Hernandez... (Suppl. Br., Ex. B., at pgs. 19-20.)

Defendant Lopez's report also states,

> I heard Officer Trujillo ordering Inmate Hernandez to get down with negative results. Inmate Hernandez ran around Officer Trujillo and myself to reach Inmate Miranda... I observed Officer Trujillo strike Inmate Hernandez... (Suppl. Br., Ex. B., at pgs. 24-25.)

Plaintiff does not dispute the accuracy of these reports. A prison official may avoid liability "by presenting evidence of a reasonable albeit unsuccessful, response to the risk." *Farmer*, 511 U.S at 834. As noted, mere negligence is not sufficient to establish liability; rather, the official's conduct must have been wanton." *Id.* at 835. Here, Plaintiff's allegations do not sufficiently raise an inference

that the Escorting Officers acted with deliberate indifference, disregarded a substantial risk of serious harm or failed to take reasonable measures to abate it. *Id.* at 847. Rather, as Plaintiff acknowledges, the Escorting Officers followed the applicable escort policy and the incident reports show the officers responded immediately to the attack, protecting Plaintiff. (FAC, ¶ 5; Suppl. Br., pg. 6 and Ex. B.)

Nevertheless, the Court is cognizant that knowledge of a specific, serious threat, such as that allegedly possessed by the Escorting Officers, may create an inference of liability enabling a Section 1983 claim to survive dismissal at this early stage of the case. *Farmer*, 511 U.S. at 843; *Smith v. Brenoettsy*, 158 F.3d 908, 912 (5th Cir. 1998). Even if Plaintiff sufficiently alleges facts constituting an actionable Section 1983 claim against the Escorting Officers, however, the Court finds these officers are entitled to qualified immunity, as set forth below. For this additional and independent reason, the Court finds dismissal of these defendants proper.

2. *Qualified Immunity*

Qualified immunity is an affirmative defense. *Groten v. California*, 251 F.3d 844, 851 (9th Cir. 2001). Qualified immunity protects "government officials... from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 475 U.S. 800, 818 (1982). Qualified immunity should be determined "at the earliest possible stage in litigation," so that the costs and expenses of trial are avoided where the defense is dispositive. *Pearson v. Callahan*, 129 S.Ct. 808, 815, 818 (2009).

The Report and Recommendation correctly notes qualified immunity is generally not amenable to a Rule 12(b)(6) motion because, in many instances, the defense requires reference to matters outside the complaint. (Report and Recommendation, pg. 12 (citing *Morley v. Walker*, 175 F.3d 756, 761 (9th Cir. 1999)).) Based thereon, the Report and Recommendation recommended that, at least at this stage of the case, Defendants' motion to dismiss based on qualified immunity be denied without prejudice. (Report and Recommendation, pg. 12.) This Court disagrees.

Where, as the Court finds here, a court can determine the issue based on the complaint itself, qualified immunity may be determined under a Rule 12(b)(6) Motion. *Groten v. California*, 251 F.3d 844, 851 (9th Cir. 2001) ("Rule 12(b)(6) dismissal is not appropriate unless [the court] can determine,

based on the complaint itself, that qualified immunity applies.") Here, Plaintiff's First Amended Complaint includes several reports, briefs and other documents from which the Court finds it is able to determine the issue of qualified immunity at this stage of the case.

Qualified immunity is not available where it would be clear to a reasonable officer that his or her conduct was unlawful under the specific factual circumstances he or she confronted. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). However, officers are generally entitled to act in reliance on a statute or ordinance, unless that statute or ordinance is "patently violative of fundamental constitutional principles." *Dittman v. California*, 191 F.3d 1020, 1027 (1999). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Here, Plaintiff concedes the Escorting Officers followed applicable escort policy. (FAC, pg. 3; Suppl. Br., ¶ 12.) Indeed, several reports attached to Plaintiff's First Amended Complaint show the Escorting Officers followed the Administrative Segregation Unit's escort operations procedures on the day of the incident. (Suppl. Br., Ex. B.) Plaintiff's grievance, instead, lies with the escort policy itself.

However, similar to when a public official is immunized for relying on a statute or ordinance, the Court finds that, here too, the Escorting Officers are immunized for relying, in good faith, on the escort policy. Under the circumstances alleged by Plaintiff, the Court finds that the Escorting Officers were not "plainly incompetent or [] knowingly violate[d] the law." *Malley*, 475 U.S. at 341. As such, the Court finds that Plaintiff's Section 1983 claims, even if sufficiently alleged as against the Escorting Officers, are barred by qualified immunity.

Accordingly, the Court **GRANTS** the Motion as to Defendants Trujillo and Lopez.

### B. DEFENDANTS SANCHEZ, VASQUEZ AND MARTIN

Plaintiff sues Defendants Sanchez, Vasquez and Martin (collectively, the "Yard Officer Defendants") as the yard officers assigned to Facility A on the day of the incident. (Suppl. Br., ¶¶ 13-19.) The Report and Recommendation recommends dismissing these defendants either based on Plaintiff's allegation that the officers were not aware of an escort in progress and, therefore, could not have been deliberately indifferent to his safety, or because the allegations and documents attached to

the Complaint show the officers responded reasonably to the attack. (Report and Recommendation, pgs 9-11.) The Court agrees.

With respect to Defendant Sanchez, Plaintiff alleges Defendant Sanchez was assigned search and escort duty and, as such, was responsible for Plaintiff's escort on the day of the incident. Plaintiff alleges Defendant Sanchez, however, was not "even minutely aware" of the escort in progress. (Suppl. Br., ¶ 14 and Ex. B at 15; *see also* Objections to Report and Recommendation, ¶ 29.) Mere negligence is not enough to state an actionable claim under Section 1983; rather, the alleged misconduct must show deliberate, wanton indifference to establish liability. *Farmer*, 511 U.S. at 835. Here, an allegation that an officer was not aware of the escort, even if, as Plaintiff alleges, the officer should have been aware of the escort, does give a sufficient inference that the officer, therefore, acted with deliberate indifference to Plaintiff's safety. As noted, liability under Section 1983 may be avoided, as it is here, by demonstrating lack of knowledge. *Id.* at 837. Additionally, Plaintiff does not allege, and most likely cannot allege, that, once becoming aware of the attack, Defendant Sanchez failed to respond reasonably. "[O]fficials who act reasonably cannot be found liable under the Cruel and Unusual Punishment Clause." *Id.* at 845.

As such, the Court finds Plaintiff fails to state a claim for relief against Defendant Sanchez and **GRANTS** the Motion as to Defendant Sanchez.

Plaintiff asserts the same allegations against Defendants Vasquez and Martin as he does against Defendant Sanchez. (Suppl. Br., ¶¶ 13 and 15; Objections to Report and Recommendation, ¶ 29.) Therefore, for the same reasons stated above with respect to Defendant Sanchez, the Court **GRANTS** the Motion as to Defendants Vasquez and Martin.

## CONCLUSION

For the reasons stated above, the Court **ADOPTS IN PART AND DENIES IN PART** the Report and Recommendation. The Court **GRANTS** Defendants' Motion to Dismiss and dismisses Defendants Valenzuela, Swift, Reyes, Capellino, Davis, Trujillo, Lopez, Vasquez, Sanchez, Martin,

///

///

///

1 | Mendez, Clark, Horne, Granish, Thompson, Sanders, Almager, Paramo and D.C. Johnson.

**IT IS SO ORDERED**.

Date: January 22, 2010

Hon. Roger T. Benitez
United States District Court